UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PDC MILFORD POWER, LLC<br><br>    **Plaintiff,**<br><br>v.<br><br>MILFORD HOLDINGS, LLC, KBC BANK N.V., AUSTRALIA and NEW ZEALAND BANKING GROUP LIMITED, BNP PARIBAS, NIB CAPITAL BANK N.V., TEACHERS INSURANCE and ANNUITY ASSOCIATION OF AMERICA, WestLB AG, SUMITOMO MITSUI BANKING CORPORATION, TRUST COMPANY OF THE WEST and EXPORT DEVELOPMENT CANADA<br>    **Defendants** | 04 10857 NG<br><br>MAGISTRATE JUDGE _____<br><br>Civil Action No.<br><br>FILING FEE PAID:<br>RECEIPT # 55603<br>AMOUNT $ 150.00<br>BY DPTY CLK _____<br>DATE 4/30/04 |

## VERIFIED COMPLAINT AND JURY DEMAND

### INTRODUCTION

This is an action for injunctive relief and damages against a group of banks and a holding company created by those banks for the wrongful attempt to foreclose on the 5% membership interest of Plaintiff PDC Milford Power LLC in Milford Power Company, LLC, a Connecticut based power plant. The banks were lenders for development and construction on the Project for the creation of the power plant. Their actions over the past year or more have been marked by a concerted effort to improperly take control of the power plant to the great financial disadvantage of the plaintiff. More recently, after acquiring a 95% interest in the plant, the group of banks has used improper tactics in

breach of their legal obligations as lenders and in breach of their fiduciary duties as the 95% member, in an effort to muscle the plaintiff out of its interest in the Company.

## PARTIES

1. Plaintiff PDC Milford Power LLC is a Massachusetts LLC that holds a 5% membership interest in Milford Power Company, LLC (the "Project Company").

2. Defendant Milford Holdings, LLC (Milford Holdings) is a Delaware LLC which currently owns 95% of the membership interest in the Project Company.

3. Defendant KBC Bank N.V., New York Branch, a New York Branch of KBC Bank N.V. (KBC) is a Belgian banking corporation. KBC is the agent and collateral agent for all of the Lenders. KBC operates in the United States out of offices located at 125 West 55th Street, New York, NY 10019. It does business in Massachusetts.

4. Defendant Australia and New Zealand Banking Group Limited (ANZ) is incorporated under the laws of Australia. ANZ operates in the United States out of offices at 1177 Avenue of the Americas, New York, NY 10036. It does business in Massachusetts.

5. Defendant BNP Paribas (Paribas) is a France banking corporation. Paribas operates in the United States out of offices at 787 Seventh Avenue, New York, NY 10019. It does business in Massachusetts.

6. Defendant NIB Capital Bank N.V. (NIB) is a Netherland banking corporation.

7. Defendant Teachers Insurance and Annuity Association of America (TIAA) is a New York Corporation. TIAA operates out of various locations, including 730 Third Avenue, 4th Floor, New York, NY 10017.

8. Defendant WestLB AG (WestLB) is a joint stock company incorporated under the laws of the Federal Republic of Germany. WestLB operates in the United States out of offices at 1211 Avenue of the Americas, New York, NY 10036. It does business in Massachusetts.

9. Defendant Sumitomo Mitsui Banking Corporation (SMBC) is a Japanese corporation.

10. Defendant Trust Company of the West (TCW), as trustee of trust between Boilermaker-Blacksmith National Pension Trust and TCW is a California based corporation. TCW operates out of various locations, including 200 Park Avenue, 22nd Floor, New York, NY 10166. It does business in Massachusetts.

11. Defendant Export Development Canada (EDC) is an Ottawa, Ontario corporation (a.k.a. Export Development Corporation—EDC).

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332, because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Venue in this district is proper, pursuant to Title 28, U.S. Code, Section (a)(2), (c) and (d).

## RELEVANT FACTS

13. Milford Power Company, LLC ("MPC" or the "Project Company") is a Delaware limited liability company, which exists pursuant to the March 1999 Amended

and Restated Limited Liability Company Agreement of Milford Power Company, LLC (the "Project Company Agreement"). At its inception the shareholders of MPC were El Paso Milford Power I Company, LLC and El Paso Merchant Energy North America Company (the El Paso Entities). The El Paso entities made the financial contributions necessary for the creation and initial development of MPC. PDC Milford received its 5% interest in the Project Company in recognition of the development work done to create the business opportunity now owned by MPC. A copy of the Project Company Agreement is attached hereto as Exhibit A.

14. KBC, ANZ, Paribas, NIB, TIAA, WestLB, SMBC, TCW and EDC hold rights as participating banks under a Credit Agreement ("the Credit Agreement") signed on or about March 25, 1999. These participating banks are collectively referred to herein as "the Lender defendants."

15. The Credit Agreement provided funds to MPC for the purpose of financing acquisition, development, construction, installation and equipping of a project consisting of an approximately 540 megawatt (net) gas-fired combined cycle merchant power plant and associated equipment to be located in Milford, Connecticut ("the Project").

16. Under the terms of the Credit Agreement, the shareholders of MPC pledged their shares in MPC as collateral for the loan.

17. At the time of the closing on the Credit Agreement, the shareholders of MPC executed the Project Company Agreement ("the MPC LLC Agreement"), which governs the operation of MPC. Among the provisions of the MPC LLC Agreement is Paragraph 5.2(a), which establishes certain actions that MPC cannot take "without

obtaining the unanimous approval of the Members." Among the actions requiring unanimous consent of the Member shareholders are:

> (i) "sell, lease, exchange or otherwise dispose of all or substantially all of the Company's property and assets in a single transaction or series of related transactions;"
>
> (v) cause the Company to repurchase Units of Membership Interest or, except as set forth herein, issue additional Units of Membership Interest;
>
> (vi) cause the Company to accept the resignation of a Member; or
>
> (viii) "cause the Company to enter into the Financing Agreements with the Lenders or any refinancing of such agreements that would have an adverse impact on the net present value of the future cash flows of the Company or any of its Members, discounted at 12% per annum or any other material adverse impact to the Company or any of its Members."

18.   Also at the time of the closing on the Credit Agreement, El Paso Gas Marketing Company, one of the El Paso entities, entered into a Subordination Agreement with the Lenders, whereby it agreed that during the life of the Senior Obligations under the Credit Agreement, it would provide fuel on a partially deferred payment arrangement. Under the partially deferred payment arrangement, El Paso Gas Marketing Company was required to accept up to a 25% discount on its charges for fuel necessary for the operation of the Plant, subject to later payment of the balance due, on a schedule that subordinated the right to such payments to the payments due under the Credit Agreement. This partially deferred payment arrangement was a substantial benefit to the expected

profitability of MPC. It was also a significant inducement to the Lenders in agreeing to the Credit Agreement.

19. At various times during 2003, the Lender defendants sent notices of default to MPC. Thereafter, the Lenders began exercising increasing amounts of control over the management and operations of MPC by exerting pressure on the El Paso entities.

20. On at least one occasion in 2003, the Lenders promised to work with MPC to achieve a comprehensive restructuring of MPC's debt.

21. Thereafter, the Lender defendants failed on their commitment to MPC to achieve such a comprehensive restructuring. Instead, the Lender defendants combined in an effort to take control of MPC by restructuring the lending relationship to their own advantage and to the disadvantage of MPC and of plaintiff PDC.

22. On or about September 10, 2003 the El Paso entities and the Lender defendants entered into a Restructuring Agreement under which the Lenders agreed to release the El Paso entities from their obligations under the Credit Agreement, and other obligations owed by the El Paso entities to MPC, in return for a payment to the Lender defendants and voluntary transfer of the El Paso 95% interest in MPC to the Lender defendants.

23. Among the obligations of the El Paso entities that the Lender defendants released as part of the Restructuring Agreement was the obligation of El Paso Gas Marketing Company to provide fuel for MPC under the partially deferred payment arrangement provided by the Subordination Agreement.

24. Plaintiff PDC objected to the release by the lenders of El Paso Gas Marketing Company from the terms of the Subordination Agreement.

25. On information and belief, the Lender defendants were fully compensated under the Credit Agreement as a result of the Restructuring Agreement and thus the terms of the Credit Agreement are fully satisfied.

26. On information and belief, the release of El Paso Gas Marketing Company from the terms of the Subordination Agreement served to the advantage of the Lender defendants in acquiring the 95% interest in MPC and to the disadvantage of the near term financial condition of MPC, reducing MPC's ability to honor any continuing obligations under the Credit Agreement.

27. The release also served to impair the Collateral for the loan and reduce the value of the 5% share of MPC owned by PDC.

28. On or about October 8, 2003 the Lender defendants formed MH LLC, a limited liability company under the Delaware Limited Liability Company Act, as a vehicle for the Lenders to take and hold the 95% interest in MPC.

29. On or about November 21, 2003, the El Paso entities agreed to assign their 95% interest in MPC to the Lender defendants in return for a full release of all further obligations under the Credit Agreement. The assignment was contingent upon the approval of the Federal Energy Regulatory Commission ("FERC"). Plaintiff PDC consented to the assignment. Without the consent of PDC, the assignment would not have been permissible under the Amended and Restated Limited Liability Company Agreement that governed the operation of MPC.

30. On or about November 21, 2003 the Lender defendants applied to FERC for approval of the assignment of the 95% El Paso interest in MPC. The application was filed pursuant to Section 203 of the Federal Power Act. It sought expedited

consideration, requesting a two week notice period for comments on the Application, rather than the normal sixty (60) day period. This expedited consideration was requested in order to ensure certain benefits, including financial benefits, to the Lender defendants, through MH LLC, their investment vehicle.

31. On information and belief, if PDC had objected to the assignment, it would have jeopardized the requested expedited consideration of the FERC Application, and possibly the FERC Application itself, to the financial detriment of the Lender defendants.

32. In support of their request for expedited consideration of the Application, the Lender defendants advised FERC that they did not intend to be long term owners of the MPC power project. They indicated that they had an interest in selling their "membership interest in [MPC] to an unrelated buyer before the end of 2004."

33. On or about December 18, 2003 FERC allowed the Application for approval of the assignment of the 95% interest in MPC to MH LLC. In doing so, it noted that the 5% PDC interest was unaffected by the transaction.

34. As FERC approval approached, MH LLC began to exercise further power and control over MPC. For instance, on or about December 15, 2003 MH LLC caused a notice to issue to PDC that after approval of the transfer, it intended to cause MPC to enter several agreements, including the Release of the El Paso entities, an Administrative Services Agreement with one of the El Paso entities and a Management Services Agreement, with CPV, The Class B member of MH LLC. MH LLC sought no input from PDC on these corporate decisions.

35. Thereafter, MPC entered into the agreements that were the subject of the December 15, 2003 notice.

36. The Management Services Agreement purports to place control of MPC and the Plant under CPV Milford LLC. In fact, on information and belief, as the contract is terminable by the Project owner, MPC, on sixty (60) days notice without cause, MH LLC as the 95% owner of MPC is in actual control of the operations of MPC. As the only members of MH LLC with voting power, the Lender defendants control the operation of MH LLC.

37. ISO New England is the not-for-profit corporation responsible for the day-to-day reliable operation of New England's bulk electric generation and transmission system. In January 2004, ISO New England began the process of seeking a change in the pricing system for power. The change, as proposed by ISO New England is called Locational Capacity Pricing.

38. It is expected that Locational Capacity pricing will be approved by FERC within two months.

39. Locational Capacity Pricing will vary pricing of New England power based on capacity within various zones in the New England states. The zone where MPC is located, Connecticut, will most benefit from this pricing change.

40. Implementation is likely to increase dramatically the profit potential of MPC, when it is implemented later in 2004.

41. On January 29, 2004 MH LLC, acting as the 95% interest holders of MPC, passed a resolution directing that MPC apply to become a participant in the New England Power Pool. MH LLC sought no input from PDC on this corporate decision.

42. On January 30, 2004 Defendant KBC, acting as Collateral Agent for the Lender defendants issued a notice through its legal counsel of its intention to "sell all of the right, title and interest of PDC Milford Power LLC ("PDC") on March 1, 2004. A copy of the Notice is attached to this Complaint as Exhibit B.

43. Leading up to and since acquiring their shares in MPC in December 2003, the Lender defendants have acted in concert, both in their lending capacity and in their control of the management of MPC, to the advantage of the Lender defendants and the detriment of both MPC and the plaintiff. Among those actions that demonstrate the concerted action of the Lender defendants are:

   a. Settlement with the El Paso entities on terms most favorable to the Lender defendants, while releasing El Paso Gas Marketing Company of their obligations to MPC under the fuel subordination agreement;
   b. Execution of a Management Services Agreement with CPV Milford LLC, which leaves the Lender defendants in de facto control of MPC, because of the ability to terminate the contract without any cause on a mere sixty (60) days notice;
   c. Preparing to foreclose on the 5% interest of the plaintiffs, as a means of securing 100% control of MPC.

44. The conduct of the Lender defendants and MH LLC establish that it is their clear intention to sell MPC at the earliest opportunity for maximum benefit to the Lenders without any regard for the rights of the plaintiff PDC or the best interest of MPC or the energy consuming public.

### COUNT I (BREACH OF DUTY AGAINST THE LENDER DEFENDANTS AND MH LLC)

45. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46. The Lender defendants, which combine as 95% shareholders of MPC through the vehicle of the holding company, MH LLC, owe PDC a duty of loyalty and good faith and must treat PDC fairly and without oppression.

47. The conduct of the Lender defendants, coupled with that of defendant MH LLC, has placed the interests of the Lender defendants ahead of the interests of PDC, the 5% shareholder of MPC, and ahead of the interests of MPC.

48. Such conduct by the Lender defendant and by defendant MH LLC constitutes a breach of fiduciary duty to PDC.

49. PDC has suffered damages due to the conduct of the Lender defendants and MH LLC.

### COUNT II (BREACH OF DUTY AGAINST THE LENDER DEFENDANTS AND MH LLC)

50. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

51. The Lender defendants, which combine as 95% shareholders of MPC through the vehicle of the holding company, MH LLC, control the management of PDC through their de facto control of CPV Milford LLC.

52. In their control of the management of MPC, the Lender defendants and MH LLC owe PDC a duty of loyalty and good faith and must treat PDC fairly and without oppression.

53. The conduct of the Lender defendants, coupled with that of defendant MH LLC, in the management of MPC has placed the interests of the Lender defendants ahead of the interests of PDC, the 5% shareholder of MPC, and ahead of the interests of MPC.

54. Such conduct by the Lender defendant and by defendant MH LLC constitutes a breach of fiduciary duty to PDC.

55. PDC has suffered damages due to the conduct of the Lender defendants and MH LLC.

### COUNT III (BREACH OF CONTRACT AGAINST THE LENDER DEFENDANTS AND MH LLC)

56. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57. The Lender defendants, which combine as 95% shareholders of MPC through the vehicle of the holding company, MH LLC, are the successors in interest to the rights and obligations of the El Paso entities under the MPC LLC Agreement.

58. The Lender defendants, using the vehicle of MH LLC also control the operations of PDC.

59. The conduct of the Lender defendants, coupled with that of defendant MH LLC, constitutes a breach of the MPC LLC Agreement with PDC.

60. Such conduct by the Lender defendants and by defendant MH LLC constitutes a breach of contract.

61. PDC has suffered damages due to this breach by the Lender defendants and MH LLC.

### COUNT IV (LENDER LIABILITY AGAINST THE LENDER DEFENDANTS)

62. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

63. The Lender defendants by their conduct intentionally interfered with contractual rights of MPC, thus impairing the value of the plaintiff's shares in MPC, all as part of their conspiracy to gain complete control of MPC.

64. PDC has suffered damages due to this conduct of the Lender defendants.

### COUNT V (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST THE LENDER DEFENDANTS)

65. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66. The Lender defendants, using the vehicle of MH LLC also control the operations of PDC.

67. The Lender defendants by their conduct breached the covenant of good faith and fair dealing that they owed both to MPC and PDC.

68. PDC has suffered damages due to this conduct of the Lender defendants.

### COUNT VI (CORPORATE FREEZE-OUT AGAINST THE LENDER DEFENDANTS)

69. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70. The Lender defendants hold the majority of shares in MPC, a small, closely held limited liability corporation.

71. The Lender defendants owe a fiduciary duty to MPC and to the minority shareholders, PDC.

72. The conduct of the Lender defendants in attempting to take over 100% of the shares of MPC in order to sell it to a third party is designed to use MPC to engage in a

transaction to the advantage of the Lender defendants in violation of their fiduciary duty to MPC and PDC.

73. The conduct of the Lender defendants in attempting to foreclose on the 5% interest of PDC in MPC and take over 100% of the shares of MPC in order to sell it to a third party is an improper insider transaction designed to freeze out the minority shareholder, PDC.

74. If allowed to proceed, the conduct of the Lender defendants will cause damage and irreparable harm to PDC.

### COUNT VII (EQUITABLE SUBORDINATION AGAINST THE LENDER DEFENDANTS)

75. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 as if fully set forth herein.

76. The conduct of the Lender defendants requires that their claims and interests be equitably subordinated to those of the plaintiff PDC, pursuant to Title 11, U.S. Code, Section 510.

### COUNT VIII-(ACCORD AND SATISFACTION)

77. The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78. The obligations of plaintiff to the Lender defendants, as pledgor under the Credit Agreement, have been fully satisfied and discharged, as a result of the Restructuring Agreement.

79. Thus, the Lender defendants have no further rights against the plaintiff under the Credit Agreement.

## PRAYERS FOR RELIEF

**WHEREFORE**, PDC Milford Power LLC prays that this Court enter judgment on its behalf against the defendants and award it the following relief:

1. A temporary restraining order prohibiting the sale at foreclosure of plaintiff's shares, representing a 5% interest in Milford Power Company, LLC;

2. A permanent injunction prohibiting the sale at foreclosure of plaintiff's shares, representing a 5% interest in Milford Power Company, LLC;

3. Compensatory and punitive damages in amounts to be determined;

4. Costs, interest and attorneys' fees; and

5. A declaration pursuant to Title 11, U.S. Code, Section 510 equitably subordinating the claims and interests of the Lender defendants to those of the plaintiff PDC.

6. A declaration that the rights of the Lender defendants under the Credit Agreement have been discharged by operation of the Restructuring Agreement with the El Paso entities.

7. Any other relief this Court deems just and proper.

April 28, 2004

## JURY DEMAND

The Plaintiff demands trial by jury on all claims so triable.

## VERIFICATION

I Douglas Corbett, Manager of PDC Milford Power Company LLC, hereby certify under the pains and penalties of perjury that the statements contained in this Verified Complaint are true to the best of my knowledge, information and belief.

_____
Douglas Corbett

> Respectfully submitted,
> PDC Milford Power Company, LLC
> By its attorneys,
>
> _____
> Gary C. Crossen (BBO #106580)
> Rebecca Tepper (BBO #567934)
> Stephen G. DeLisle (BBO #650941)
> Rubin and Rudman LLP
> 50 Rowes Wharf
> Boston, MA 02110
> (617) 330-7000