# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PDC MILFORD POWER, LLC | ) | **04 10857 NG** |
| Plaintiff, | ) | MAGISTRATE JUDGE _____ |
| | ) | |
| v. | ) | Civil Action No. |
| MILFORD HOLDINGS, LLC, KBC | ) | |
| BANK N.V., AUSTRALIA and | ) | FILING FEE PAID: |
| NEW ZEALAND BANKING | ) | RECEIPT # _____ |
| GROUP LIMITED, BNP PARIBAS, | ) | AMOUNT $ _____ |
| NIB CAPITAL BANK N.V., | ) | BY DPTY CLK _____ |
| TEACHERS INSURANCE and | ) | DATE _____ |
| ANNUITY ASSOCIATION OF | ) | |
| AMERICA, WestLB AG, | ) | |
| SUMITOMO MITSUI BANKING | ) | |
| CORPORATION, TRUST | ) | |
| COMPANY OF THE WEST and | ) | |
| EXPORT DEVELOPMENT | ) | |
| CANADA | ) | |
| Defendants | ) | |

## VERIFIED COMPLAINT AND JURY DEMAND

### INTRODUCTION

This is an action for injunctive relief and damages against a group of banks and a

holding company created by those banks for the wrongful attempt to foreclose on the 5%

membership interest of Plaintiff PDC Milford Power LLC in Milford Power Company,

LLC, a Connecticut based power plant. The banks were lenders for development and

construction on the Project for the creation of the power plant. Their actions over the

past year or more have been marked by a concerted effort to improperly take control of

the power plant to the great financial disadvantage of the plaintiff. More recently, after

acquiring a 95% interest in the plant, the group of banks has used improper tactics in

breach of their legal obligations as lenders and in breach of their fiduciary duties as the 95% member, in an effort to muscle the plaintiff out of its interest in the Company.

## PARTIES

1.    Plaintiff PDC Milford Power LLC is a Massachusetts LLC that holds a 5% membership interest in Milford Power Company, LLC (the "Project Company").

2.    Defendant Milford Holdings, LLC (Milford Holdings) is a Delaware LLC which currently owns 95% of the membership interest in the Project Company.

3.    Defendant KBC Bank N.V., New York Branch, a New York Branch of KBC Bank N.V. (KBC) is a Belgian banking corporation. KBC is the agent and collateral agent for all of the Lenders. KBC operates in the United States out of offices located at 125 West 55th Street, New York, NY 10019. It does business in Massachusetts.

4.    Defendant Australia and New Zealand Banking Group Limited (ANZ) is incorporated under the laws of Australia. ANZ operates in the United States out of offices at 1177 Avenue of the Americas, New York, NY 10036. It does business in Massachusetts.

5.    Defendant BNP Paribas (Paribas) is a France banking corporation. Paribas operates in the United States out of offices at 787 Seventh Avenue, New York, NY 10019. It does business in Massachusetts.

6.    Defendant NIB Capital Bank N.V. (NIB) is a Netherland banking corporation.

7.      Defendant Teachers Insurance and Annuity Association of America (TIAA) is a New York Corporation. TIAA operates out of various locations, including 730 Third Avenue, 4th Floor, New York, NY 10017.

8.      Defendant WestLB AG (WestLB) is a joint stock company incorporated under the laws of the Federal Republic of Germany. WestLB operates in the United States out of offices at 1211 Avenue of the Americas, New York, NY 10036. It does business in Massachusetts.

9.      Defendant Sumitomo Mitsui Banking Corporation (SMBC) is a Japanese corporation.

10.     Defendant Trust Company of the West (TCW), as trustee of trust between Boilermaker-Blacksmith National Pension Trust and TCW is a California based corporation. TCW operates out of various locations, including 200 Park Avenue, 22nd Floor, New York, NY 10166. It does business in Massachusetts.

11.     Defendant Export Development Canada (EDC) is an Ottawa, Ontario corporation (a.k.a. Export Development Corporation—EDC).

## JURISDICTION

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332, because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Venue in this district is proper, pursuant to Title 28, U.S. Code, Section (a)(2), (c) and (d).

## RELEVANT FACTS

13.     Milford Power Company, LLC ("MPC" or the Project Company") is a Delaware limited liability company, which exists pursuant to the March 1999 Amended

and Restated Limited Liability Company Agreement of Milford Power Company, LLC

(the "Project Company Agreement"). At its inception the shareholders of MPC were El

Paso Milford Power I Company, LLC and El Paso Merchant Energy North America

Company (the El Paso Entities). The El Paso entities made the financial contributions

necessary for the creation and initial development of MPC. PDC Milford received its 5%

interest in the Project Company in recognition of the development work done to create

the business opportunity now owned by MPC. A copy of the Project Company

Agreement is attached hereto as Exhibit A.

14.    KBC, ANZ, Paribas, NIB, TIAA, WestLB, SMBC, TCW and EDC hold

rights as participating banks under a Credit Agreement ("the Credit Agreement") signed

on or about March 25, 1999. These participating banks are collectively referred to herein

as "the Lender defendants."

15.    The Credit Agreement provided funds to MPC for the purpose of

financing acquisition, development, construction, installation and equipping of a project

consisting of an approximately 540 megawatt (net) gas-fired combined cycle merchant

power plant and associated equipment to be located in Milford, Connecticut ("the

Project").

16.    Under the terms of the Credit Agreement, the shareholders of MPC

pledged their shares in MPC as collateral for the loan.

17.    At the time of the closing on the Credit Agreement, the shareholders of

MPC executed the Project Company Agreement ("the MPC LLC Agreement"), which

governs the operation of MPC. Among the provisions of the MPC LLC Agreement is

Paragraph 5.2(a), which establishes certain actions that MPC cannot take "without

obtaining the unanimous approval of the Members." Among the actions requiring unanimous consent of the Member shareholders are:

> (i) "sell, lease, exchange or otherwise dispose of all or substantially all of the Company's property and assets in a single transaction or series of related transactions;"
>
> (v) cause the Company to repurchase Units of Membership Interest or, except as set forth herein, issue additional Units of Membership Interest;
>
> (vi) cause the Company to accept the resignation of a Member; or
>
> (viii) "cause the Company to enter into the Financing Agreements with the Lenders or any refinancing of such agreements that would have an adverse impact on the net present value of the future cash flows of the Company or any of its Members, discounted at 12% per annum or any other material adverse impact to the Company or any of its Members."

18.    Also at the time of the closing on the Credit Agreement, El Paso Gas Marketing Company, one of the El Paso entities, entered into a Subordination Agreement with the Lenders, whereby it agreed that during the life of the Senior Obligations under the Credit Agreement, it would provide fuel on a partially deferred payment arrangement. Under the partially deferred payment arrangement, El Paso Gas Marketing Company was required to accept up to a 25% discount on its charges for fuel necessary for the operation of the Plant, subject to later payment of the balance due, on a schedule that subordinated the right to such payments to the payments due under the Credit Agreement. This partially deferred payment arrangement was a substantial benefit to the expected

profitability of MPC. It was also a significant inducement to the Lenders in agreeing to the Credit Agreement.

19.    At various times during 2003, the Lender defendants sent notices of default to MPC. Thereafter, the Lenders began exercising increasing amounts of control over the management and operations of MPC by exerting pressure on the El Paso entities.

20.    On at least one occasion in 2003, the Lenders promised to work with MPC to achieve a comprehensive restructuring of MPC's debt.

21.    Thereafter, the Lender defendants failed on their commitment to MPC to achieve such a comprehensive restructuring. Instead, the Lender defendants combined in an effort to take control of MPC by restructuring the lending relationship to their own advantage and to the disadvantage of MPC and of plaintiff PDC.

22.    On or about September 10, 2003 the El Paso entities and the Lender defendants entered into a Restructuring Agreement under which the Lenders agreed to release the El Paso entities from their obligations under the Credit Agreement, and other obligations owed by the El Paso entities to MPC, in return for a payment to the Lender defendants and voluntary transfer of the El Paso 95% interest in MPC to the Lender defendants.

23.    Among the obligations of the El Paso entities that the Lender defendants released as part of the Restructuring Agreement was the obligation of El Paso Gas Marketing Company to provide fuel for MPC under the partially deferred payment arrangement provided by the Subordination Agreement.

24.    Plaintiff PDC objected to the release by the lenders of El Paso Gas Marketing Company from the terms of the Subordination Agreement.

25.    On information and belief, the Lender defendants were fully compensated under the Credit Agreement as a result of the Restructuring Agreement and thus the terms of the Credit Agreement are fully satisfied.

26.    On information and belief, the release of El Paso Gas Marketing Company from the terms of the Subordination Agreement served to the advantage of the Lender defendants in acquiring the 95% interest in MPC and to the disadvantage of the near term financial condition of MPC, reducing MPC's ability to honor any continuing obligations under the Credit Agreement.

27.    The release also served to impair the Collateral for the loan and reduce the value of the 5% share of MPC owned by PDC.

28.    On or about October 8, 2003 the Lender defendants formed MH LLC, a limited liability company under the Delaware Limited Liability Company Act, as a vehicle for the Lenders to take and hold the 95% interest in MPC.

29.    On or about November 21, 2003, the El Paso entities agreed to assign their 95% interest in MPC to the Lender defendants in return for a full release of all further obligations under the Credit Agreement. The assignment was contingent upon the approval of the Federal Energy Regulatory Commission ("FERC"). Plaintiff PDC consented to the assignment. Without the consent of PDC, the assignment would not have been permissible under the Amended and Restated Limited Liability Company Agreement that governed the operation of MPC.

30.    On or about November 21, 2003 the Lender defendants applied to FERC for approval of the assignment of the 95% El Paso interest in MPC. The application was filed pursuant to Section 203 of the Federal Power Act. It sought expedited

consideration, requesting a two week notice period for comments on the Application, rather than the normal sixty (60) day period. This expedited consideration was requested in order to ensure certain benefits, including financial benefits, to the Lender defendants, through MH LLC, their investment vehicle.

31.    On information and belief, if PDC had objected to the assignment, it would have jeopardized the requested expedited consideration of the FERC Application, and possibly the FERC Application itself, to the financial detriment of the Lender defendants.

32.    In support of their request for expedited consideration of the Application, the Lender defendants advised FERC that they did not intend to be long term owners of the MPC power project. They indicated that they had an interest in selling their "membership interest in [MPC] to an unrelated buyer before the end of 2004."

33.    On or about December 18, 2003 FERC allowed the Application for approval of the assignment of the 95% interest in MPC to MH LLC. In doing so, it noted that the 5% PDC interest was unaffected by the transaction.

34.    As FERC approval approached, MH LLC began to exercise further power and control over MPC. For instance, on or about December 15, 2003 MH LLC caused a notice to issue to PDC that after approval of the transfer, it intended to cause MPC to enter several agreements, including the Release of the El Paso entities, an Administrative Services Agreement with one of the El Paso entities and a Management Services Agreement, with CPV, The Class B member of MH LLC. MH LLC sought no input from PDC on these corporate decisions.

35.    Thereafter, MPC entered into the agreements that were the subject of the December 15, 2003 notice.

36.    The Management Services Agreement purports to place control of MPC and the Plant under CPV Milford LLC. In fact, on information and belief, as the contract is terminable by the Project owner, MPC, on sixty (60) days notice without cause, MH LLC as the 95% owner of MPC is in actual control of the operations of MPC. As the only members of MH LLC with voting power, the Lender defendants control the operation of MH LLC.

37.    ISO New England is the not-for-profit corporation responsible for the day-to-day reliable operation of New England's bulk electric generation and transmission system. In January 2004, ISO New England began the process of seeking a change in the pricing system for power. The change, as proposed by ISO New England is called Locational Capacity Pricing.

38.    It is expected that Locational Capacity pricing will be approved by FERC within two months.

39.    Locational Capacity Pricing will vary pricing of New England power based on capacity within various zones in the New England states. The zone where MPC is located, Connecticut, will most benefit from this pricing change.

40.    Implementation is likely to increase dramatically the profit potential of MPC, when it is implemented later in 2004.

41.    On January 29, 2004 MH LLC, acting as the 95% interest holders of MPC, passed a resolution directing that MPC apply to become a participant in the New England Power Pool. MH LLC sought no input from PDC on this corporate decision.

42.    On January 30, 2004 Defendant KBC, acting as Collateral Agent for the

Lender defendants issued a notice through its legal counsel of its intention to "sell all of

the right, title and interest of PDC Milford Power LLC ("PDC") on March 1, 2004. A

copy of the Notice is attached to this Complaint as Exhibit B.

43.    Leading up to and since acquiring their shares in MPC in December 2003,

the Lender defendants have acted in concert, both in their lending capacity and in their

control of the management of MPC, to the advantage of the Lender defendants and the

detriment of both MPC and the plaintiff.  Among those actions that demonstrate the

concerted action of the Lender defendants are:

> a. Settlement with the El Paso entities on terms most favorable to the
>    Lender defendants, while releasing El Paso Gas Marketing
>    Company of their obligations to MPC under the fuel subordination
>    agreement;
> b. Execution of a Management Services Agreement with CPV
>    Milford LLC, which leaves the Lender defendants in de facto
>    control of MPC, because of the ability to terminate the contract
>    without any cause on a mere sixty (60) days notice;
> c. Preparing to foreclose on the 5% interest of the plaintiffs, as a
>    means of securing 100% control of MPC.

44.    The conduct of the Lender defendants and MH LLC establish that it is

their clear intention to sell MPC at the earliest opportunity for maximum benefit to the

Lenders without any regard for the rights of the plaintiff PDC or the best interest of MPC

or the energy consuming public.

## COUNT I (BREACH OF DUTY AGAINST THE LENDER DEFENDANTS AND MH LLC)

45.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1

through 44 as if fully set forth herein.

587252_2                                    10

46.    The Lender defendants, which combine as 95% shareholders of MPC through the vehicle of the holding company, MH LLC, owe PDC a duty of loyalty and good faith and must treat PDC fairly and without oppression.

47.    The conduct of the Lender defendants, coupled with that of defendant MH LLC, has placed the interests of the Lender defendants ahead of the interests of PDC, the 5% shareholder of MPC, and ahead of the interests of MPC.

48.    Such conduct by the Lender defendant and by defendant MH LLC constitutes a breach of fiduciary duty to PDC.

49.    PDC has suffered damages due to the conduct of the Lender defendants and MH LLC.

## COUNT II (BREACH OF DUTY AGAINST THE LENDER DEFENDANTS AND MH LLC)

50.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

51.    The Lender defendants, which combine as 95% shareholders of MPC through the vehicle of the holding company, MH LLC, control the management of PDC through their de facto control of CPV Milford LLC.

52.    In their control of the management of MPC, the Lender defendants and MH LLC owe PDC a duty of loyalty and good faith and must treat PDC fairly and without oppression.

53.    The conduct of the Lender defendants, coupled with that of defendant MH LLC, in the management of MPC has placed the interests of the Lender defendants ahead of the interests of PDC, the 5% shareholder of MPC, and ahead of the interests of MPC.

54.    Such conduct by the Lender defendant and by defendant MH LLC constitutes a breach of fiduciary duty to PDC.

55.    PDC has suffered damages due to the conduct of the Lender defendants and MH LLC.

## COUNT III (BREACH OF CONTRACT AGAINST THE LENDER DEFENDANTS AND MH LLC)

56.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57.    The Lender defendants, which combine as 95% shareholders of MPC through the vehicle of the holding company, MH LLC, are the successors in interest to the rights and obligations of the El Paso entities under the MPC LLC Agreement.

58.    The Lender defendants, using the vehicle of MH LLC also control the operations of PDC.

59.    The conduct of the Lender defendants, coupled with that of defendant MH LLC, constitutes a breach of the MPC LLC Agreement with PDC.

60.    Such conduct by the Lender defendants and by defendant MH LLC constitutes a breach of contract.

61.    PDC has suffered damages due to this breach by the Lender defendants and MH LLC.

## COUNT IV (LENDER LIABILITY AGAINST THE LENDER DEFENDANTS)

62.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 61 as if fully set forth herein.

63.    The Lender defendants by their conduct intentionally interfered with contractual rights of MPC, thus impairing the value of the plaintiff's shares in MPC, all as part of their conspiracy to gain complete control of MPC.

64.    PDC has suffered damages due to this conduct of the Lender defendants.

### COUNT V (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST THE LENDER DEFENDANTS)

65.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66.    The Lender defendants, using the vehicle of MH LLC also control the operations of PDC.

67.    The Lender defendants by their conduct breached the covenant of good faith and fair dealing that they owed both to MPC and PDC.

68.    PDC has suffered damages due to this conduct of the Lender defendants.

### COUNT VI (CORPORATE FREEZE-OUT AGAINST THE LENDER DEFENDANTS)

69.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70.    The Lender defendants hold the majority of shares in MPC, a small, closely held limited liability corporation.

71.    The Lender defendants owe a fiduciary duty to MPC and to the minority shareholders, PDC.

72.    The conduct of the Lender defendants in attempting to take over 100% of the shares of MPC in order to sell it to a third party is designed to use MPC to engage in a

transaction to the advantage of the Lender defendants in violation of their fiduciary duty to MPC and PDC.

73.    The conduct of the Lender defendants in attempting to foreclose on the 5% interest of PDC in MPC and take over 100% of the shares of MPC in order to sell it to a third party is an improper insider transaction designed to freeze out the minority shareholder, PDC.

74.    If allowed to proceed, the conduct of the Lender defendants will cause damage and irreparable harm to PDC.

### COUNT VII (EQUITABLE SUBORDINATION AGAINST THE LENDER DEFENDANTS)

75.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 as if fully set forth herein.

76.    The conduct of the Lender defendants requires that their claims and interests be equitably subordinated to those of the plaintiff PDC, pursuant to Title 11, U.S. Code, Section 510.

### COUNT VIII-(ACCORD AND SATISFACTION)

77.    The plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as if fully set forth herein.

78.    The obligations of plaintiff to the Lender defendants, as pledgor under the Credit Agreement, have been fully satisfied and discharged, as a result of the Restructuring Agreement.

79.    Thus, the Lender defendants have no further rights against the plaintiff under the Credit Agreement.

587252_2                                      14

## PRAYERS FOR RELIEF

**WHEREFORE**, PDC Milford Power LLC prays that this Court enter judgment on its behalf against the defendants and award it the following relief:

1. A temporary restraining order prohibiting the sale at foreclosure of plaintiff's shares, representing a 5% interest in Milford Power Company, LLC;

2. A permanent injunction prohibiting the sale at foreclosure of plaintiff's shares, representing a 5% interest in Milford Power Company, LLC;

3. Compensatory and punitive damages in amounts to be determined;

4. Costs, interest and attorneys' fees; and

5. A declaration pursuant to Title 11, U.S. Code, Section 510 equitably subordinating the claims and interests of the Lender defendants to those of the plaintiff PDC.

6. A declaration that the rights of the Lender defendants under the Credit Agreement have been discharged by operation of the Restructuring Agreement with the El Paso entities.

7. Any other relief this Court deems just and proper.

April 28, 2004

## JURY DEMAND

The Plaintiff demands trial by jury on all claims so triable.

587252_2                              15

## VERIFICATION

I Douglas Corbett, *Manager* of PDC Milford Power Company LLC, hereby certify under the pains and penalties of perjury that the statements contained in this Verified Complaint are true to the best of my knowledge, information and belief.

_____
Douglas Corbett


Respectfully submitted,
PDC Milford Power Company, LLC
By its attorneys,


_____
Gary C. Crossen (BBO #106580)
Rebecca Tepper (BBO #567934)
Stephen G. DeLisle (BBO #650941)
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000

587252_2

16

*Execution Copy*

THE OWNERSHIP INTERESTS EVIDENCED HEREBY (OR BY CERTIFICATES, IF ANY ARE ISSUED) HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES EXCHANGE ACT OF 1933 (15 U.S.C. ∍77a *et seq*.), AS AMENDED (THE "1933 ACT"), OR UNDER THE SECURITIES LAWS OF ANY STATE. SAID INTERESTS MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED AT ANY TIME EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS CONTAINED IN THIS AGREEMENT AND PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE 1933 ACT AND ANY APPLICABLE STATE SECURITIES LAW OR AN EXEMPTION THEREFROM. FURTHER, THE SALE OR OTHER DISPOSITION OF THE OWNERSHIP INTERESTS EVIDENCED HEREBY ARE RESTRICTED, AS SET FORTH IN THIS AGREEMENT AND THE COMPANY HAS THE RIGHT TO REQUIRE AN OPINION OF COUNSEL, IN FORM AND SUBSTANCE SATISFACTORY TO IT, THAT SUCH TRANSFER CAN BE LAWFULLY MADE WITHOUT REGISTRATION OR OTHER COMPLIANCE WITH SUCH STATUTES AND OTHER RULES AND REGULATIONS THEREUNDER.

AMENDED AND RESTATED

LIMITED LIABILITY COMPANY AGREEMENT

OF MILFORD POWER COMPANY, LLC

Dated as of March 25, 1999

By and Among

EL PASO MILFORD POWER I COMPANY

EL PASO MILFORD POWER II COMPANY

AND

PDC MILFORD POWER LLC

ARTICLE  V  MANAGEMENT OF COMPANY ............................................................. -7-
   5.1   Management by Members ....................................................................... -7-
   5.2   Member Decisions ................................................................................ -7-
         (a)   Actions Requiring Unanimous Consent ................................... -7-
         (b)   Actions Requiring Super-Majority in Interest Consent ............... -8-
         (c)   Actions Requiring Majority in Interest Consent ..................... -10-
   5.3   Committees ....................................................................................... -10-
         (a)   Construction Committee ..................................................... -11-
         (b)   Operations Committee ........................................................ -11-
         (c)   Commercial Committee ...................................................... -11-
   5.4   Member Management Agreements .......................................................... -11-
   5.5   Management by Officers ..................................................................... -11-
   5.6   Fuel Manager ..................................................................................... -12-
   5.7   Power Marketer .................................................................................. -12-

ARTICLE VI  CAPITAL CONTRIBUTIONS ............................................................. -12-
   6.1   Capital Account ................................................................................. -13-
   6.2   Capital Contributions .......................................................................... -13-
         (a)   Capital Contributions for the Construction of the Plant ........... -13-
         (b)   Additional Capital Contributions ......................................... -13-
   6.3   Ownership Interest ............................................................................. -14-
         (a)   Initial Ownership Interest ................................................... -14-
         (b)   Revision of Ownership Interests Following the Flip Point ....... -14-
         (c)   Flip Point ........................................................................ -14-
   6.4   Consequences of Default in the Payment of Capital Contributions ............... -15-
         (a)   Mandatory Capital Contributions ......................................... -15-
         (b)   Additional Capital Contributions ......................................... -15-
   6.5   Return of Capital ............................................................................... -16-

ARTICLE VII  ALLOCATIONS AND DISTRIBUTIONS ............................................. -16-
   7.1   Cash Distribution .............................................................................. -16-
   7.2   Allocations of Profits and Losses .......................................................... -16-
   7.3   Curative Amendment .......................................................................... -18-
   7.4   Section 704(c) ................................................................................... -18-
   7.5   Transfers .......................................................................................... -18-
   7.6   Withholdings ..................................................................................... -18-

ARTICLE VIII  ACCOUNTING AND TAXATION ..................................................... -19-
   8.1   Fiscal Year ....................................................................................... -19-
   8.2   Location of Records; Inspection ........................................................... -19-
   8.3   Books of Account .............................................................................. -19-
   8.4   Financial Statements and Reports ......................................................... -20-
   8.5   Taxation ........................................................................................... -20-
   8.6   Tax Returns and Audits ...................................................................... -21-
   8.7   Other Reports ................................................................................... -21-
   8.8   Inspection of Records ......................................................................... -22-
   8.9   Deposit and Withdrawal of Funds ........................................................ -22-

Berkshire.doc
BUSDOCS 728102 1

(d)    Litigation ............................................................................ -34-
(e)    Regulation............................................................................ -34-

**ARTICLE XIV CONFIDENTIALITY OF COMPANY AFFAIRS**.................................... -34-
14.1    Disclosure of Confidential Information...................................... -34-
14.2    Use    ................................................................................... -34-
14.3    Procedures .............................................................................. -34-
14.4    Survival................................................................................... -35-
14.5    Remedies ................................................................................ -35-

**ARTICLE XV  MISCELLANEOUS** ............................................................... -35-
15.1    Entirety of Agreement .............................................................. -35-
15.2    Notices ................................................................................... -35-
15.3    Further Assurances................................................................... -36-
15.4    APPLICABLE LAW AND CHOICE OF FORUM ....................................... -37-
15.5    Counterparts ............................................................................ -37-
15.6    Laws and Regulatory Bodies ..................................................... -37-
15.7    Force Majeure.......................................................................... -37-
15.8    Notice of Litigation ................................................................. -37-
15.9    Severability ............................................................................. -37-
15.10   Third-Party Beneficiaries ......................................................... -37-
15.11   Remedies ................................................................................ -37-
15.12   Non-Waiver of Rights ............................................................... -37-

**EXHIBIT A** ............................................................................................. -1-

**ARTICLE 1    DEFINITIONS AND INTERPRETATIONS**................................... -1-
1.1    Definitions ............................................................................... -1-
1.2    Interpretations .......................................................................... -4-

**EXHIBIT B -** Member Management Agreements.................................... -1-

**EXHIBIT C –** Form of Certificate........................................................ -1-

under the name "Milford Power Company, LLC."

(b)    Member's Rights and Liabilities - The rights, privileges, liabilities and obligations of the Members shall be as provided in this Agreement to the extent permitted under the Act. it being understood that the Members intend to govern all of their rights and obligations in accordance with the terms set forth in this Agreement.

(c)    Qualification in Other Jurisdictions - Prior to transacting business in Connecticut or any jurisdiction other than the State of Delaware, the Company shall qualify to do business in Connecticut and any such other jurisdiction if such a procedure is required and provided by statute or regulation in such other jurisdiction. The Members (or where appropriate, an officer of the Company) shall execute and deliver such certificates and documents and perform such acts consistent with the terms of this Agreement as may be necessary to comply with the requirements of the assumed or fictitious name statutes and any other applicable law for the qualification and operation of a limited liability company in each jurisdiction in which the Company will conduct business.

2.2    Name - The name of the Company shall be MILFORD POWER COMPANY, LLC and all Company business shall be conducted in that name or such other names that comply with applicable law as the Members may select from time to time.

2.3    Offices - The office of the Company required by the Act to be in the State of Delaware shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Members may designate from time to time in the manner provided by law. The registered agent of the Company in the State of Delaware shall be the initial registered agent named in the Certificate of Formation or such other Person(s) as the Members may designate from time to time in the manner provided by law. The principal place of business of the Company shall be at 300 Bic Drive, Milford, Connecticut or such other location as the Members shall designate from time to time. The Company shall maintain its books and records at the principal place of business of the Member Manager assigned responsibility for maintaining such books and records in accordance with the Member Management Agreements in accordance with Section 5.4. The Company may have such other offices as the Members may designate from time to time. Written notice of any change in the Company's principal place of business and the designation of any other offices of the Company shall be given to each Member.

2.4    Term - The Company commenced on December 11, 1998 and shall continue in existence until December 31, 2048, unless the Company is dissolved earlier in accordance with this Agreement or the Act.

2.5    Authorized Number of Units of Membership Interest - Subject to Section 6.4(b)(iii), the aggregate number of Units of Membership Interest that the Company is authorized to issue is 100. The following Units of Membership Interest that the Company issued at the time of the original formation of the Company and on the date of this Agreement are as follows:

| Member | Units of Membership Interest |
| --- | --- |
| El Paso I | 5 |
| El Paso II | 90 |
| PDC | 5 |

2

3.2    <u>Powers of the Company</u> - The purposes of the Company set forth in Section 3.1 may be accomplished by taking any action permitted under the Act that is customary or directly related to the business of the Company.  The Company shall possess and may exercise all powers and privileges necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the Company.

3.3    <u>Other Business Opportunities</u>  - The Members may engage, directly or indirectly, without the consent of any other Member or the Company, in other business ventures of any nature or description, independently or with others, including without limitation, businesses that may be competitive with or the same as or similar to the business of the Company.  Each of the Members waives any rights it might otherwise have to share or participate in such other interests, businesses, opportunities, or ventures and in all income or profits that may be derived therefrom.

3.4    <u>Affiliate Transactions</u> - The Company will not enter into any agreement or arrangement with any Member or Affiliate, unless (a) there has been a full disclosure of the terms of such agreement or arrangement and the affiliation of the Members and (b) the terms of such agreement or arrangement are substantially equivalent to the terms that are available on an arms-length basis.  The Members and the Company expressly agree that, with respect to the Member Management Agreements, the Fuel Purchase Agreement, the Power Marketing Agreement, the Fuel Subordination Agreement and any other agreements or documents contemplated by the Financing Agreements (i) the Members have complied with the disclosure requirements set forth in (a) above and (ii) the terms of such agreements comply with the standard set forth in (b) above.

## ARTICLE IV
## MEMBERSHIP

4.1    <u>Initial Members</u>  - The Members of the Company are El Paso I, El Paso II and PDC, each of which was admitted to the Company as a Member effective on the date of the filing of the Certificate of Formation.  The name and principal office address of each initial Member is set forth in Section 15.2.

4.2    <u>Additional Members</u> - Additional parties may be admitted to the Company as Members and Units of Membership Interest may be issued to those parties and to existing Members on such terms and conditions as may be determined upon approval by all of the Members. In the case of an assignee of a Membership Interest, such assignee shall be admitted as a Member only upon the consent of all the Members in accordance with the provisions of Article IX; provided, however, that any assignment of a Membership Interest (including any associated Ownership Interest) shall be subject to the restrictions set forth in Article IX.

4.3    <u>Withdrawal</u> - Except as provided in Section 11.9, no Member has the right or power to resign or withdraw from the Company as a Member.

4.4    <u>No State-Law Partnership</u> - Except for federal and state tax purposes, the Members do not intend the Company to be a partnership, limited partnership or joint venture.  No Member shall be a partner or joint venturer of any other Member solely on account of this Agreement and the transactions contemplated hereby, for any purpose other than federal and state tax purposes.

4.5    <u>Meetings of Members</u> - The following procedures and rules will apply with regard to the

4

the determination of the Members entitled to notice of or to vote at such meeting, including any adjournment thereof.

4.6   Voting List - At least ten (10) days before each meeting of the Members, the Chairman shall make a complete list of the Members entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order, with the address of and the Units of Membership Interests (and associated Ownership Interests) held by each. For ten (10) days prior to such meeting, the list shall be kept on file at the registered office or principal place of business of the Company and shall be subject to inspection by any Member at any time during normal business hours and shall be produced in writing upon the request of any Member. The list shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any Member during the whole time of the meeting. The original membership records shall be prima-facie evidence as to who are the Members entitled to examine such list or transfer records or to vote at any meeting of Members. Failure to comply with the requirements of this Section shall not affect the validity of any action taken at the meeting.

4.7   Proxies - A Member may vote either in person or by proxy executed in writing by the Member. A telegram, telex, cablegram or similar transmission by the Member, or a photographic, photostatic, facsimile or similar reproduction of a writing executed by the Member shall be treated as an execution in writing for purposes of this Section 4.7. Proxies for use at any meeting of Members shall be filed with the Members, before or at the time of the meeting or execution of the written consent, as the case may be. All proxies shall be received and taken charge of and all ballots shall be received and canvassed by the Members, who shall decide all questions touching upon the qualification of voters, the validity of the proxies, and the acceptance or rejection of votes. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable and the proxy is coupled with an interest. Should a proxy designate two or more Persons to act as proxies, unless that instrument shall provide to the contrary, a majority of such Persons present at any meeting at which their powers are to be exercised shall have and may exercise all the powers of voting or giving consents thereby conferred, or if only one be present, then such powers may be exercised by that one; or, if an even number attend and a majority do not agree on any particular issue, the Company shall not be required to recognize such proxy with respect to such issue if such proxy does not specify how the Ownership Interests that are the subject of such proxy are to be voted with respect to such issue.

4.8   Conduct of Meetings - All meetings of the Members shall be presided over by the Chairman of the Company. The nominee of the Member with the largest Ownership Interest shall be designated as the Chairman for so long as it owns the largest Ownership Interest in the Company. The Chairman of any meeting of Members shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him in order; provided that the Chairman shall conduct meetings of the Members in accordance with such rules of procedure as shall be agreed upon by the Members attending such meetings. The Chairman shall not have any additional vote by virtue of his capacity as Chairman.

4.9   Action by Written Consent or Telephone Conference

    (a)   Written Consent - Any action required by or permitted to be taken at any annual or

6

5.2 <u>Member Decisions</u> - All matters requiring the approval or consent of the Members shall require the level of votes by the Members as set forth below:

    (a)     <u>Actions Requiring Unanimous Consent</u> - A Member, committee, management personnel or any other agent, representative or employee of the Company shall not have the power or authority, and may not cause the Company, to do any of the following without obtaining the unanimous approval of the Members:

        (i)     sell, lease, exchange or otherwise dispose of all or substantially all of the Company's property and assets in a single transaction or series of related transactions;

        (ii)     except as described in Section 2.1, cause the Company to be a party to (A) a merger or consolidation, or (B) an exchange or acquisition of the type described in Section 18-209 of the Act;

        (iii)     except as expressly provided in this Agreement, amend or restate the Certificate of Formation or this Agreement;

        (iv)     change, or authorize a transaction, agreement or action of the Company that is unrelated to, the scope or nature of the Company's business purpose as set forth in Section 3.1;

        (v)     cause the Company to repurchase Units of Membership Interest or, except as set forth herein, issue additional Units of Membership Interest;

        (vi)     cause the Company to accept the resignation of a Member;

        (vii)     cause the Company to make an assignment for the benefit of creditors of the Company, file a voluntary petition in bankruptcy, appoint a receiver for the Company or agree to voluntarily dissolve the Company;

        (viii)     cause the Company to enter into the Financing Agreements with the Lenders or any refinancing of such agreements that would have an adverse impact on the net present value of the future cash flows of the Company or any of its Members, discounted at 12% per annum or any other material adverse impact to the Company or any of its Members;

        (ix)     cause the Company to provide a notice to proceed under the EPC Contract;

        (x)     change the location of the principal place of business of the Company to a place outside of the United States; or

        (xi)     any other action that requires the consent of all the Members by the express terms of this Agreement.

    (b)     <u>Actions Requiring Super-Majority in Interest Consent</u> - The approval by a Super-Majority in Interest of the Members or the representatives of the committee to which such

8

(x)     entering into, amending or terminating any contract or commitment to acquire or transfer any asset, the fair market value or aggregate consideration (including assumed actual and contingent liabilities) of which exceeds $2,000,000;

(xi)    approving the distribution of Company property to Members in accordance with Article VII;

(xii)   executing or otherwise entering into, or amending, modifying, or terminating, any agreement with a Member, officer or employee of the Company, an Affiliate of a Member, or a person related by blood or marriage to an Officer or employee of the Company, involving aggregate consideration (including assumed actual and contingent liabilities) or fair market value or actual or contingent liability in excess of $500,000, except that this Section 5.1(c)(xii) shall not apply to the Member Management Agreements, Fuel Purchase Agreement or the Power Marketing Agreement;

(xiii)  (A) filing any claim or lawsuit against any third party in an amount claimed in excess of $500,000, or (B) settling any claim or lawsuit where the fair market value of the settlement amount exceeds $500,000;

(xiv)   incurring any Company indebtedness for borrowed money in excess of $2,000,000;

(xv)    authorizing the acquisition by the Company of the assets of another entity as a going concern in an amount in excess of $2,000,000;

(xvi)   subject to any requirements of the Lenders under the Financing Agreements, establishing any reserves of the Company in excess of $4,000,000;

(xvii)  causing the Company to change its name; or

(xviii) establishing any committee pursuant to Section 5.2, subject to the limitations set forth herein, or delegating any authority to any such committee.

(c)     <u>Majority in Interest</u> - The approval by a Majority in Interest of the Members or the representatives of the committee to which such matters may be delegated shall be required for all other matters not set forth in Sections 5.2(a) and (b) above.

5.3     <u>Committees</u> - The Members hereby establish (a) a Construction Committee to provide oversight over the construction of the Plant, (b) an Operations Committee to provide oversight over the operations of the Plant, (c) a Commercial Committee to provide oversight over the key commercial issues and contracts affecting the Company. The Members may, by unanimous consent, establish other committees after the date of execution of this Agreement. Unless otherwise agreed to by the Members, each such committee shall be comprised of one representative of each Member ("Committee Representative"), designated by such Member by written notice to each other Member. Each Member shall have the right to designate one or more alternate Committee Representatives to act in the place of the designated Committee Representative, if such Member's designated Committee Representative is or becomes

10

have such authority and perform such duties as provided in this Agreement or as the Members may. from time to time, delegate to them. The initial officer of the Company shall consist of a general manager. Unless delegated otherwise by the Members and subject to the control of the Members and the Members in accordance with the Member Management Agreement and the contractor under the Service Agreement, the general manager shall have the responsibility for the general supervision of the employees of the Company, the general direction of the operational affairs of the Company (including without limitation the direction of the O&M Contractor) and the responsibility for the day-to-day affairs, business, administration and operations of the Company (including without limitation the discretionary authority to take any action or enter into any transaction. agreement or arrangement on behalf of the Company to be taken or entered into in the ordinary course of business of the Company, except to the extent that such action or transaction is of the type that would otherwise require the approval of the Members, the Committees. the Members pursuant to the Member Management Agreements, the Fuel Manager, the Power Marketer. or any other body or representative established by the Members in accordance with this Agreement. The general manager may sign and execute in the name of the Company (a) all contracts or other instruments authorized by the Members, the Members pursuant to the Member Management Agreements or delegated representatives in accordance with this Agreement or (b) all contracts or instruments in the usual and regular course of business, except in cases when the signing and execution thereof shall be expressly delegated or permitted by the Members or by this Agreement to some other representative. In addition, the general manager shall perform all duties incident to the office of the chief executive officer of a Company and such other duties as from time to time may be assigned to him by the Members. The Members may establish such other officer positions and when establishing such other positions, the Members will expressly state what authority is delegated to such officers. The salaries or other compensation of the officers shall be fixed from time to time by the Members.

5.6    Fuel Marketer - The Company and El Paso Gas Marketing Company ("EPGM") have entered into on the date of execution of this Agreement a Fuel Purchase Agreement, pursuant to which EPGM shall sell natural gas and fuel oil as a source of fuel for the Plant.

5.7    Power Marketer - The Company and El Paso Power Services Company ("EPPS") have entered into on the date of execution of this Agreement a Power Marketing Agreement, pursuant to which EPPS shall manage the purchase, sale and transmission of the electrical output of the Plant (or any futures contract or derivative contract relating to electricity).

## ARTICLE VI
## CAPITAL CONTRIBUTIONS

6.1    Capital Accounts - A "Capital Account" shall be established for each Member, which shall, for avoidance of doubt, be used to allocate distributions to the Members in accordance with Section 704(b) of the Code. In this regard, a Member's Capital Account shall be adjusted and maintained in the following manner:

(a)    To each Member's Capital Account there shall be credited the amount of cash and the value as determined by all of the Members of any asset contributed to the Company by such Member, such Member's distributive share of Profits, any items in the nature of income or gain which are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b) of this

12

third party sources. To the extent that there is a shortfall in the funds available from such third party sources (with such shortfall referred to as the "Additional Capital Contributions"), then the Chairman in accordance with the determination of the Members pursuant to Section 5.2 shall give written notice to the Members stating: (i) the aggregate amount of the Additional Capital Contributions that are required, (ii) the purpose or purposes for which such Additional Capital Contributions are proposed to be used, (iii) the portion of such Additional Capital Contribution that are required to be contributed by each Member based upon each Member's Ownership Interest, and (iv) the date on which the Additional Capital Contribution must be made, which shall be not less than the earlier of (A) ninety (90) days from the giving of such notice or (B) the date the expenditure associated with the Additional Capital Contribution must be incurred to avoid an adverse impact on the Project.

6.3    Ownership Interests - Subject to the provisions of this Agreement, the interests of the Members in the profits, gains and losses of the Company ("Ownership Interests") shall be as follows:

(a)    Initial Ownership Interests - The initial Ownership Interests of the Members in the Company shall be as follows:

| | |
|---|---|
| El Paso I | 5% |
| El Paso II | 90% |
| PDC | 5% |

(b)    Revision of Ownership Interests Following the Flip Point - From and after the occurrence of the Flip Point, the Ownership Interests of the Members shall be as follows:

| | |
|---|---|
| El Paso I | 60% |
| El Paso II | 10% |
| PDC | 30% |

(c)    Flip Point - The Flip Point shall occur at the point which the Discounted Distributions and Allocations equals the Discounted Contributions. For purposes of this section, "Discounted Distributions and Allocations" shall mean the discounted sum of (i) distributions made to El Paso II and its successors pursuant to Section 7.1 or Section 11.7, less (ii) allocations of Profit made to El Paso II and its successors pursuant to Section 7.2(a) (including any amounts that are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b) and specifically excluding any Profit exempt from taxes) multiplied by the Corporate Tax Rate, plus (iii) allocations of Losses made to El Paso II and its successors pursuant to Section 7.2(b) (including any amounts that are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b)) multiplied by the Corporate Tax Rate, with such amounts discounted at a rate of fifteen percent (15%) per annum from the date such amounts are distributed or allocated in accordance with this Agreement back to the date of the initial Capital Contribution by El Paso II or its successors. For avoidance of doubt, "Discounted Distributions and Allocations" shall include distributions and allocations associated with the sale or liquidation of the Company or sale of all or substantially all of the assets of the Company, including without limitation, liquidations pursuant to Section 11.7, up to that portion of such proceeds from such sale or liquidation of the Company or all or substantially all of the assets of the Company that cause the Flip Point to occur. In addition, for purposes of this section, "Discounted Distributions and Allocations" shall

14

Non-Contributing Member of the failure to pay its Unpaid Contribution in accordance with Section 6.2(b);

(ii)    within five (5) days of receipt of a Contribution Notice each Non-Contributing Member shall provide written notice to the Company and each Contributing Member stating whether it intends to pay the Unpaid Contribution. If there is more than one Non-Contributing Member, each Non-Contributing Member shall provide written notice of whether it intends to pay the portion of the Unpaid Contribution equal to the amount of the Unpaid Contribution times a fraction, the numerator of which is the Ownership Interest of the Non-Contributing Member and the denominator of which is the Ownership Interest of all of the Non-Contributing Members in the same manner and form as was required with respect to the relevant Unpaid Amount.

(iii)    if the Non-Contributing Member (A) does not provide written notice that it intends to pay the Unpaid Contribution, (B) provides written notice that it does not intend to pay the Unpaid Contribution or (C) fails to contribute the Unpaid Amount when due, then each Contributing Member shall have the right, but not the obligation, to pay (on a pro rata basis based upon their relative Ownership Interests) all or part of the Unpaid Contribution of the Non-Contributing Member. The Company shall issue additional Units of Membership Interest to the Contributing Members making such additional capital contributions such that the Ownership Interests of each of the Members shall be adjusted in proportion to the aggregate Capital Accounts of all Members after such additional Capital Contributions have been made. In the event that compliance with this Section 6.4(b)(iii) requires the Company to issue Units of Membership Interest in excess of that which the Company is expressly authorized to issue under the terms of this Agreement, the number of Units of Membership Interest shall automatically be amended and increased, without further action by or notice to any party, to the number necessary to allow the Units of Membership Interest of the Contributing Members making such additional Capital Contributions to be increased in accordance with this Section 6.4(b)(iii).

6.5    Return of Capital - No Member shall have any personal liability for the repayment of the Capital Contributions of any other Member. No Member shall be entitled to the withdrawal or return of its Capital Contributions except to the extent, if any, that distributions made pursuant to this Agreement or upon the dissolution of the Company may be considered as such by operation of law, and then only to the extent provided for in this Agreement. Except as otherwise expressly set forth in this Agreement, no Member shall have priority over any other Member either as to the return of capital or as to profits, losses or distributions or be entitled to receive any interest on its Capital Contributions or to receive or demand any property from the Company other than cash.

### ARTICLE VII
### ALLOCATIONS AND DISTRIBUTIONS

7.1    Cash Distribution - Subject to Sections 18-607 and 18-804 of the Act, the Company shall distribute to the Members its available cash on hand (including without limitation available cash from a sale of property of the Company, proceeds available from refinancings and proceeds from

BUSDOCS:728102.1

computed by reference to the Gross Asset Value of the property disposed of in accordance with IRS Regulation Section 1.704-1(b) for the purpose of determining the Members' Capital Accounts, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(v) In lieu of the depreciation, amortization or other cost recovery deductions taken into account in computing such taxable income or loss, for the purpose of determining the Members' Capital Accounts there shall be taken into account Depreciation for such taxable year or other period, computed in accordance with the definition of Depreciation in this Agreement; and

(vi) Notwithstanding any other provision of this definition of Profits and Losses, any items which are specially allocated pursuant to Sections 7.4 or 8.5(b) shall not be taken into account in computing Profits and Losses but shall be taken into account in computing the Members' Capital Accounts.

(d) As used in this Agreement, "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(i) The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by the contributing Member and the other Members;

(ii) The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by all of the Members, as of the following times: (a) the acquisition of any additional interest in the Company in exchange for more than a de minimis Capital Contribution, (b) the distribution by the Company to a Member of more than a de minimis amount of Company assets as consideration for an interest in the Company, and (c) the liquidation of the Company within the meaning of IRS Regulation Section 1.704-1(b)(2)(ii)(g); provided, however, that adjustments pursuant to Clauses (a) and (b) of this Section shall be made only with the consent of all the Members;

(iii) The Gross Asset Value of any Company asset distributed to any Member shall be the gross fair market value of such asset on the date of distribution, as determined by the Company; and

(iv) The Gross Asset Value of Company assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Sections 734(b) or 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to IRS Regulations Section 1.704-1(b)(2)(iv)(m) and Section 6.1.

As used in this Agreement, "Depreciation" means, for each taxable year, or other period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to any asset for such year or other period, except that if the Gross Asset Value of an asset differs form its adjusted basis for federal income tax purposes as the beginning of such year or other period, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax

18

8.1    Fiscal Year - The Fiscal Year of the Company shall be the calendar year. The first Fiscal Year of the Company commenced on December 11, 1998 and shall end on December 31, 1998.

8.2    Location of Records; Inspection - The books, records and accounts for the Company shall be kept and maintained at the principal office of the Member who is responsible for maintaining such books and records pursuant to the Member Management Agreement in accordance with Section 5.4 or at such other place as the Members may determine by a Super-Majority in Interest of the Members. Each Member, at its own expense, shall have the right and power to examine and inspect, or cause to be examined and inspected, at any and all reasonable times, the books, records and accounts of the Company and any tax returns prepared for the Company prior to the filing of such returns.

8.3    Books of Account - The books of account for the Company shall be (a) maintained by a Member pursuant to the Member Management Agreement entered into pursuant to Section 5.4 on an accrual basis in accordance with GAAP and (b) audited annually by a certified public accountant, which shall be PricewaterhouseCoopers or other public accounting firm acceptable to the Lenders for so long as the Company is indebted to Lenders pursuant to the Financing Agreements and, thereafter, such other public accounting firm agreed to by a vote of the Super-Majority in Interest of the Members. A copy of the annual audit shall be provided to all Members. An individual Member may request the auditor to provide it any additional reports that such Member may want generated for its own account and at its own cost.

8.4    Financial Statements and Reports - As soon as practicable following the end of each Fiscal Year and in any event within the time specified below or such other times as may be required by the Lenders, the Company shall cause the Member with responsibilities pursuant to the Member Management Agreements pursuant to Section 5.4, to prepare and deliver to each Member:

(a)    Within forty-five (45) days following the end of each calendar quarter in each Fiscal Year, a report containing information regarding changes to the Capital Accounts of each Member during such Fiscal Year, including (i) the amount of Capital Contributions credited to each Member's Capital Account during such quarter, (ii) any distributions received by a Member during such quarter, and (iii) any items, such as income or loss from the Company's activities, allocated to each Member's Capital Account during such quarter;

(b)    Within sixty (60) days following the end of such Fiscal Year (or such later time as the Members shall permit), a report containing information regarding changes to the Capital Account of each Member during such Fiscal Year, including (i) the amount of Capital Contributions credited to each Member's Capital Account during such Fiscal Year, (ii) any distributions received by a Member during such Fiscal Year under this Agreement, and (iii) any items, such as income or loss from the Company's activities, allocated to each Member's Capital Account during such Fiscal Year under this Agreement; and

(c)    Such other reports and information reasonably requested by any Member having a Ownership Interest of 5% or more for the period prior to the Flip Point or 10% or more for the period on and after the Flip Point.

8.5    Taxation

20

BUSDOCS:728102.1

or liability arising therefrom.

8.6 <u>Tax Returns</u> - The Tax Matters Member shall prepare and file such federal and state partnership income tax returns and reports as may be required to report the operations of the Company. The Tax Matters Member shall use its best efforts in the preparation and filing of such returns; provided, however, that in so doing it shall incur no liability to any Member with regard to such returns in the absence of fraud, gross negligence or willful misconduct. The Tax Matters Member may, in addition to its own tax and accounting staffs and those of its affiliates, employ outside consultants to prepare such returns, the cost of which shall be borne by the Members in proportion to their Ownership Interests. The other Members shall cooperate with the Tax Matters Member in furnishing information necessary to prepare such returns and the Tax Matters Member shall provide the other Members with preliminary copies of such returns for review and approval in advance of their due date (as extended). A copy of all federal and state partnership income tax returns prepared and filed by the Tax Matters Member shall be provided to all Members.

8.7 <u>Other Reports</u> - The Member designated such responsibility pursuant to the Member Management Agreement entered into in accordance with Section 5.4 shall prepare and file all reports prescribed by any other commission or governmental agency having jurisdiction over the business or properties of the Company, the costs of which shall be paid by the Company.

8.8 <u>Inspection of Records</u> - Each Member shall have the right, individually at its own cost and expense, to audit the books and records of the Company; provided, however, the Members agree to coordinate any outside audits so that there will be no more than one such audit in any given Fiscal Year. Additionally, in the event that a governmental or regulatory authority having jurisdiction over a Member requires that such Member audit the Company's books, such Member shall be allowed to audit the Company's books to the extent required by such governmental or regulatory authority. In addition to the above, each Member shall have the right to inspect and copy at its own cost and expense, the books and records of the Company upon reasonable notice, during normal business hours.

8.9 <u>Deposit and Withdrawal of Funds</u> - Funds of the Company not needed, in the opinion of the Members, for the operation of the Company shall be deposited in a segregated account or accounts in the name of the Company that are maintained in one or more national or state banks or other depositories as shall be designated from time to time by the Company. Such funds may be withdrawn by properly authorized representatives as designated from time to time of the Members or pursuant to the Member Management Agreement entered into pursuant to Section 5.4. The Members shall not commingle funds of the Company with any other funds of the Members.

8.10 <u>Record Retention</u> - The Company shall cause all records that are required under this Agreement or under any other agreement entered into pursuant to this Agreement to be retained by the Company for such period of time as required by law, but in no event for less than seven (7) years.

8.11 <u>Company Level Tax Audits</u> - El Paso II is designated as the "Tax Matters Member" which shall have the same meaning as the "Tax Matters Partner" as defined in Section 6231(a)(7) of the Code. The general duties of the Tax Matters Member shall be to inform the other Members of all matters which shall come to its attention in its capacity as Tax Matters Member by giving the other Members notice thereof within 10 days after becoming so informed. In general, the Tax Matters Member shall not take any action contemplated by Sections 6221 through 6233 of the

BUSDOCS:728102.1

(f)  The Tax Matters Member shall not enter into settlement negotiations with respect to the tax treatment of partnership items without first giving reasonable advance notice of such intended action (including any proposal for settlement) to the other Members. The Tax Matters Member shall not bind any other Member to a settlement agreement without obtaining the written concurrence of any such Member who would be bound by such agreement. Unless prohibited, any other Member who enters into a settlement agreement with the Internal Revenue Service or the Secretary of the Treasury with respect to any partnership items shall notify the other Members of such settlement agreement within ninety days from the date of settlement.

(g)  The Tax Matters Member shall have the right to engage legal counsel, certified public accountants, or other assistance without the prior written consent of a majority of the Members with respect to Company level tax audits and contests. Any reasonable item of expense with respect to such matters, including but not limited to fees and expenses for legal counsel, certified public accountants, and other experts which the Tax Matters Member incurs in connection with any Company level audit, assessment, litigation, or other proceedings regarding any "partnership item," shall be borne by the Company.

(h)  The provisions of this Section 8.11, including but not limited to the obligation to pay fees and expenses contained in Section 8.11(g), shall survive the termination of the Company and the termination of any Membership Interest and shall remain binding for a period of time necessary to resolve with the Internal Revenue Service or the Department of Treasury any and all matters regarding the federal income taxation of the Company for the applicable tax year.

(i)  The provisions of this Section 8.11 shall extend to other taxes measured by or computed with respect to income to the extent rules similar to Code Sections 6221 through 6223 are applicable to such taxes (including state and local taxes).

### ARTICLE IX
### TRANSFER OR PLEDGE OF OWNERSHIP INTERESTS

9.1   Transfers or Pledges Generally - Subject to Sections 9.2, 9.3 and 9.4 and any applicable provisions in the Financing Agreements, a Member may not sell, assign, pledge, hypothecate or otherwise transfer all or any part of its Units of Membership Interest or its interest this Agreement to any third party (including, without limitation, an assignment by operation of law), without the prior written consent of the other Members, which shall not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary in this Agreement, it is expressly agreed that any Member may withhold its consent in its sole discretion with regard to any proposed sale, assignment or transfer of another Member's Unit of Membership Interest where the transferring Member proposes to sell, assign or transfer less than a ten percent (10%) Ownership Interest, except in the case of PDC prior to the Flip Point, less than all of its Units of Membership Interest.

9.2   Right of First Offer

(a)  Any Member (the "Transferring Member") that proposes to sell, transfer or assign all or part of its Membership Interest (the portion to be sold or otherwise disposed of referred to

24

entitled to do so (whether upon the other Members' failure to offer to purchase the entire Transferred Interest within 30 days of receipt of a Notice of Proposed Transfer or upon receipt of the last offer by the other Members), such sale shall once again be subject to the procedures set forth in this Section 9.2.

(d)     It is the intent of the Members that the procedures set forth in this Section 9.2 shall also apply to the issuance, sale or other transfer of the stock or other interest in any entity that, directly or indirectly, owns any Units of Membership Interest if such Units of Membership Interest comprise all or substantially all of the assets of such entity. In furtherance of such intent, the Members covenant to take whatever action may be necessary to cause this restriction to be incorporated into their respective constituent documents so as to be enforceable under applicable law and the Members agree that the transfer of shares in such an entity will constitute a transfer of the Units of Membership Interest for which the provisions of this Section shall apply. Notwithstanding any of the provisions of Sections 9.1 and 9.2 above, with regard to (i) transfers of stock or interests in PDC between existing members of PDC or their Affiliates as of the date of this Agreement or (ii) transfers of stock or interests in PDC to third parties that are not competitors of the Company or any of the other Members, PDC shall not be required to obtain the consent of the Members; provided that with regard to (ii) above, PDC shall be required to comply with the duty of first offer set forth in this Section 9.2

9.3     Permitted Transfers - Nothing in Sections 9.1 and 9.2 shall prevent, no consents or approvals of the other Members are required and no rights of first offers apply with regard to the following assignments or transfers:

(a)     an assignment by a Member of its Membership Interest in the Company to an Affiliate of such Member without the other Member's consent, provided that (i) the ultimate parent company of the assigning Member shall continue to own and control 50% or more of the outstanding securities of such Affiliate and (ii) the assigning Member remains personally obligated for its duties and obligations hereunder;

(b)     an assignment, pledge or other transfer creating a security interest to Lenders under the Financing Agreements or, to the extent not in conflict with the Financing Agreements, to any other financial institution or bona fide lender (and any transfer made in foreclosure or other enforcement of such security interest and admission in this Agreement) in all or any portion of a Member's right, title or interest in the Company for the purpose of securing indebtedness for borrowed money by the Company (and not to such Member); and

(c)     an assignment, sale or other transfer of up to 70% of the Membership Interest in the Company owned by El Paso I and/or El Paso II to a third party, subject to any required approvals of the Lenders pursuant to the Financing Agreements.

9.4     Requirements Applicable to All Dispositions and Admissions - In addition to the requirements set forth in Sections 9.1 and 9.2, the following documents must be delivered to the Members and must be satisfactory, in form and substance, to a Majority in Interest of the Members:

(a)     Ratification of this Agreement - An instrument, executed by the Transferring Member and its assignee, containing the assignee's ratification of this Agreement and its confirmation that the representations and warranties contained in this Agreement with

26

"LLC Interest Certificate") substantially in the form attached as Exhibit C, in the name of each Member certifying that the Member named therein is a Member of the Company pursuant to this Agreement. The LLC Interest Certificate shall also include as a part thereof, a form of assignment sufficient, subject to the terms of this Agreement, to effectuate a disposition of such Member's LLC Interest to an assignee. Each LLC Interest Certificate shall bear a legend in substantially the following form: "This certifies that, subject to adjustments as set forth in the Amended and Restated Limited Liability Company Agreement of Milford Power Company, LLC, dated as of _____ __, 1999, as amended, modified and supplemented from time to time (the "LLC Agreement"), _____ is the owner of a fully paid and non-assessable LLC Interest in the Company consisting of a ____% Membership Interest in connection therewith and certain other rights in the Company, all as set forth in the LLC Agreement. This LLC Interest Certificate, including the rights attendant thereto, shall be a security governed by Article 8 of the Uniform Commercial Code in any jurisdiction (a) that has adopted revisions to Article 8 of the Uniform Commercial Code substantially consistent with the 1994 revisions to Article 8 adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and (b) the laws of which may be applicable, from time to time, to the issues of perfection, the effect of perfection or non-perfection and the priority of a security interest in membership interests of the Company."

10.2  Certificate Transfer Book and Members of Record - The clerk of the Company (or, if none, the Chairman) shall maintain or cause to be maintained, among other records, a Unit transfer book containing certificates evidencing the Units of Membership Interest, the stubs in which shall set forth the names and addresses of the holders of all issued Units of Membership Interest of the Company, the number of Units of Membership Interest held by each such holder, the number of certificates representing such Membership Interest, the Ownership Interest held pursuant to each Member's Units of Membership Interest, the date of issue of such certificates, and whether or not such Membership Interest derives from original issue or transfer. The names and addresses of Members as they appear on the Unit transfer book shall be the official list of Members of record of the Company for all purposes except as otherwise provided in this Agreement. The Company shall keep record of Members at its registered office or principal place of business, or at the office of its transfer agent or registrar. The Company shall be entitled to treat the holder of record of any Units of Membership Interest as the owner thereof for all purposes, and shall not be bound to recognize any equitable or other claim to, or interest in, such Units of Membership Interest or any rights deriving from such Units of Membership Interest on the part of any other Person, including, but without limitation, a purchaser, assignee, or transferee, unless and until such other Person becomes the holder of record of such Units of Membership Interest, whether or not the Company shall have either actual or constructive notice of the interest of such other Person.

10.3  Member's Change of Name or Address - Each Member shall promptly notify the Members of the Company, at its principal business office, by written notice sent by certified mail, return receipt requested, of any change in name or address of the Member from that as it appears upon the official list of Members of record of the Company. The secretary of the Company (or, if none, the Chairman) shall enter such changes into all affected Company records, including, but not limited to, the official list of Members of record.

10.4  Transfer of Membership Interests - Units of Membership Interests represented by any certificate of the Company are transferable only on the books of the Company by the holder of record thereof or by his duly authorized attorney or legal representative upon surrender of the certificate for such Units of Membership Interest, properly endorsed or assigned. The Members may make

28

enters an order, judgment or decree appointing, without the consent of said Member, a receiver, custodian or a trustee for such Member, or for all or any part of its property, and such order, judgment or decree shall not be discharged or stayed, or (iii) either Member is otherwise adjudicated a bankrupt;

(c)    Immediately if any Member is ordered by the Securities Exchange Commission under the PUHCA to divest such Member's Units of Membership Interest;

(d)    At the election of any Member (an "Electing Member"), by giving written notice thereof to the other Member (the "Nonelecting Member") if (i) the interest of the Nonelecting Member in the Company is seized, attached or otherwise encumbered by a creditor of the Nonelecting Member and the same is not released from seizure or bonded out within 30 days from the date of notice of such seizure or (ii) El Paso II or its successors shall default in the performance of their obligations to make the Equity Contribution to the Company in accordance with Section 6.2(a), in which case El Paso II or its successors shall be deemed to be a Nonelecting Member.

11.3    <u>Damages</u> - The Members each agree not to voluntarily withdraw from the Company, except as permitted by this Agreement, including Section 11.9. If the Company is dissolved as a consequence of any such withdrawal, the Defaulting Member shall be in breach of this Agreement and shall be liable to each other Member for all damages such other Member may incur as a result thereof.

11.4    <u>Date of Dissolution</u> - The dissolution shall be effective on the day specified in Section 11.1 or the day on which notice of dissolution is given, whichever occurs first, but the Company shall not terminate until its affairs have been wound up and its assets distributed as provided in Section 11.6 or the Electing Member acquires the other Units of Membership Interest in the Company as provided in Section 11.2(d).

11.5    <u>Control After Dissolution</u> - The Electing Member, if the Company is dissolved under Section 11.2(d), or the Member not causing the dissolution if the Company is dissolved under Sections 11.2(a), 11.2(b) or 11.2(c) may either:

(a)    proceed with winding up and liquidating as provided in Sections 11.6 and 11.7, or

(b)    acquire the Units of Membership Interest held by the other Member as provided in Section 11.8

In any event, from the date of dissolution to the date of termination, the Member entitled to make the election under this Section (the "Liquidation Member") shall have sole control of the operations and assets of the Company.

11.6    <u>Dissolution and Winding Up</u> - After the date of dissolution contemplated by Section 11.4, and, if applicable, in the event the Liquidation Member elects to proceed with the winding up and liquidation of the Company as provided in Section 11.7, the Company shall not enter into any contract or undertake any business not then subject to contract or which is not related to the winding up of the Company. Upon dissolution and subsequent winding up, a proper accounting shall be made of the Company's assets, liabilities and operations from the date of the last previous accounting to the date of dissolution. The profits and losses realized subsequent to the date of

30

receive payment of such price.

11.9   Voluntary Withdrawal Rights

(a)   Right to Withdraw - Subject to the provisions of Article XI, a Member (in this Agreement called a "Withdrawing Member") shall have the right to withdraw from the Company at any time after the commencement of commercial operations of the Plant by ten days written notice to the other Members (in this Agreement called a "Withdrawal Notice"). The Withdrawing Member shall assign all its rights and interests in the Company to the remaining Members or their designees and the Withdrawing Member waives any and all rights that it might otherwise have had pursuant to the Act arising from its withdrawal from the Company.   The Withdrawing Member hereby irrevocably appoints the Company its attorney-in-fact, with full authority in its place and stead and its name or otherwise, to take any action and to execute any instrument which the Company may deem necessary or advisable to accomplish such assignment of the Withdrawing Member's rights and interests in the Company to the remaining Members or their designees.  Upon thirty days' prior written notice, the Company may terminate any contracts or agreements with the Withdrawing Member or any of its Affiliates, pursuant to which the Withdrawing Member or its Affiliates provide materials or services to the Company, and the Company shall have no further liability to the Withdrawing Member or its Affiliates under such contracts or agreements, other than the payment of any obligations incurred prior to the date of such termination.

(b)   Reimbursement Rights - In the event of such withdrawal, the Company shall retain all contributions theretofore made by the Withdrawing Member, and such Withdrawing Member shall pay its share of such further obligations and commitments that are due and payable at the time of the giving of the Withdrawal Notice including any obligations attributable to the work performed or actions taken by the Members or any Committee of the Company prior to the date of withdrawal including termination costs.

(c)   Indemnification of Withdrawing Member - The remaining Members shall indemnify and hold harmless the Withdrawing Member:

(i)   For all amounts due and payable in connection with the Company and its business after the date of withdrawal that were not incurred prior to the date of withdrawal; and

(ii)   For all amounts or damages arising out of activities of the non-withdrawing Members or the Company undertaken after the date of withdrawal.

## ARTICLE XII
## LIMITATION OF LIABILITY AND INDEMNIFICATION

12.1   Limitation of Liability - Neither the officers of the Company, the Members, nor their respective shareholders,   officers,   directors,   agents,   employees   and   representatives   ("Member Representatives") shall be liable, responsible or accountable in damages or otherwise to the Company or to each other for any loss suffered by the other or by the Company arising out of any action or omission by such parties, so long as such action or omission (a) was in good faith, (b)

32

company duly organized, validly existing and in good standing under the laws of the state of its organization and has the requisite power and authority (i) to carry on its business as presently conducted and to own or hold under lease its properties, where the failure to have such power and authority would have a material adverse effect on its ability to perform its obligations under this Agreement, and (ii) to enter into and perform its obligations under this Agreement.

(b)    Authorization - The execution, delivery and performance by such Member of this Agreement have been duly authorized by all necessary action on the part of such Member. This Agreement has been duly authorized, executed and delivered by such Member and is a legal, valid and binding obligation of such Member, enforceable against such Member in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, liquidation, moratorium or similar laws affecting creditors' or lessors' rights generally and the application of general equitable principles may limit the availability of certain remedies.

(c)    Effect of this Agreement - Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby nor compliance by such Member with any of the provisions of this Agreement, will:  (i) conflict with or result in a breach of any provision of the constituent documents of such Member; (ii) require the approval or consent of, or filing of registration with, any foreign, federal, state, local or other governmental or regulatory body or the approval or consent of any other Person the failure of which to make or obtain would have a material adverse effect on the ability of such Member to perform its obligations under this Agreement; (iii) violate any provision of any law or regulation or violate, breach or, with the giving of notice or passage of time, constitute an event of default (or give rise to any right of termination, cancellation or acceleration) under any of the terms, conditions or provisions of any note, bond, mortgage, indenture, license, agreement or other instrument or obligation to which such Member is a party, or by which it may be bound, which violation, breach or default (or right of termination, cancellation or acceleration) would have a material adverse effect on the ability of such Member to perform its obligations under this Agreement and the transactions contemplated hereby, except in the case of (ii) and (iii) as to which requisite waivers or consents have been obtained.

(d)    Litigation - There is no action, suit or proceeding pending or, to the knowledge of such Member, threatened against such Member which, if adversely determined could, individually or in the aggregate, materially and adversely affect the ability of such Member to perform its obligations under this Agreement.

(e)    Regulation - No Member nor any of its Affiliates is subject to regulation under (i) the ICA, as amended, or (ii) the PUHCA, as amended.

## ARTICLE XIV
## CONFIDENTIALITY OF COMPANY AFFAIRS

14.1    Disclosure of Confidential Information - Except as in this Agreement provided, each Member shall treat, and cause its Affiliates to treat, as confidential, and shall not disclose to any third party not authorized by the Members to receive confidential information, any confidential information

34

Settlement Agreement, this Agreement reflects the whole and entire agreement among the Members and their Affiliates with respect to the subject matter in this Agreement and supersedes all previous agreements and understandings among the Members and their Affiliates (including the Joint Development Agreement) and the Articles of Association of PDC – El Paso Milford LLC. and may be amended, restated or supplemented only by the written agreement of all Members.

15.2    Notices - Unless otherwise specifically provided in this Agreement, any written notice or other communication given pursuant to this Agreement shall be sufficiently delivered if delivered personally or mailed or if given by telegram, telex, telecopy or similar means of visual data transmission:

(a)    to each of the Members at the address set forth below or at such other address as may be designated from time to time by the Member by written notice to each other Member and to the Company:

if to El Paso I:

El Paso Milford Power I Company
1001 Louisiana Street
Houston, Texas  77002
Telephone: 713-420-6234
Facsimile: 713-420-5487
Attention: Director of Finance & Planning

if to El Paso II:

El Paso Milford Power II Company
1001 Louisiana Street
Houston, Texas  77002
Telephone: 713-420-6234
Facsimile: 713-420-5487
Attention: Director of Finance & Planning

if to PDC:

PDC Milford Power LLC
c/o Power Development Company, LLC
200 High Street, 5th Floor
Boston, Massachusetts 02110
Telephone: 617-747-9100
Facsimile: 617-747-9101
Attention: Michael J. Armitage
          Kevin P. Joyce

with a copy to:

Rubin and Rudman LLP
50 Rowes Wharf

36

BUSDOCS:728102.1

authorities and, in the event of conflict, such laws, rules, orders and regulations of governmental authorities shall control.

15.7    Force Majeure - If either Member is rendered unable, wholly or in part, by force majeure to carry out its obligations under this Agreement, other than the obligation to make money payments, the obligations of such Member, so far as they are affected by such force majeure, shall be suspended during the continuance of such force majeure. The term "force majeure," as used in this Agreement, shall mean an act of God (which does not include a Year 2000 compliance matter), strike, lockout, or other industrial disturbance, act of public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental restraint, unavailability of equipment or supplies and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of such Member. The requirement that any force majeure shall not be reasonably within the control of such Member shall not require settlement of strikes, lockouts, or other labor difficulty by such Member, contrary to its wishes; and all such difficulties shall be handled entirely at the discretion of such Member.

15.8    Notice of Litigation - Either Member that becomes aware of any litigation pending against the Company shall give timely notice of such to the Company and the other Member. Additionally, any Member against which any litigation is filed in its capacity as a Member shall give the other Member and the Company timely notice of such litigation.

15.9    Severability - Any provision of this Agreement prohibited by applicable law shall be invalid to the extent of such prohibition and severed from this Agreement unless it is determined by the Members by unanimous vote that such prohibition invalidates the purpose or intent of this Agreement, in which case the Company shall be dissolved and its business and affairs wound up, liquidated and terminated.

15.10   Third-Party Beneficiaries - The representations, warranties, covenants and obligations of the Members are made for the express benefit of the Members, and parties that are not express signatories to this Agreement are not intended to have, nor shall have, the benefit of, or any right to seek enforcement or recovery under, any of such covenants or obligations.

38

15.11  Remedies - All rights and remedies under this Agreement are cumulative and in addition to other rights or remedies under this Agreement or any applicable law.

15.12  Nonwaiver of Rights - The failure of either Member to enforce any provision of this Agreement or right granted hereby shall not in any way be construed to be a waiver of such provision or right, nor in any way affect the validity of this Agreement or any part thereof, or limit, prevent or impair the right of either Member subsequently to enforce such provisions or exercise such right in accordance with its terms.

IN WITNESS WHEREOF, the Members have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

EL PASO MILFORD POWER I COMPANY

By: _____
Title: Senior Vice President
Randolph L. Wu

EL PASO MILFORD POWER II COMPANY

By: _____
Title: Senior Vice President
Randolph L. Wu

PDC MILFORD POWER, LLC

By: _____
Title: Manager
Michael J. Armitage

39

01/28/04  18:48 FAX 212 765 2          KBC GTFG                                    Ø002

## NOTICE OF DISPOSITION OF COLLATERAL

### BY OVERNIGHT COURIER AND FACSIMILE

TO:    PDC Milford Power LLC
200 High Street
5th Floor
Boston, Massachusetts 02110
Attention: Michael Armitage,
  Manager and Kevin Joyce

-and-

c/o PDC, LLC
12727 Kimberly Lane, Suite 303
Houston, Texas 77024
Attention: Douglas Gorbett,
  Vice President and General
  Manager

-and-

c/o Power Development Company
1900 West Loop South
Houston, Texas 11027
Attention: Mr. Douglas Corbert

-and-

Milford Power Company, LLC
55 Shelland Street
Milford, Connecticut 06460
Attention: General Manager

-and-

200 High Street, 5th Floor
Boston, Massachusetts 02110
Attention: Michael Armitage

FROM:  KBC Bank N.V., New York
  Branch, as collateral agent
125 West 55th Street
New York, New York 10019
212-541-0612

El Paso Milford Power I Company,
  LLC
1001 Louisiana Street
Houston, Texas 77002
Attention:  Director – Treasury

El Paso Merchant Energy North-
  America
1001 Louisiana Street
Houston, Texas 77002

El Paso Gas Market Company
c/o El Paso Energy Corporation
1001 Louisiana Street
Houston, Texas 77002

Transalta Usa Inc.
913 Big Hanaford Road
Centralia, Washington 98531

Comptroller of Public Accounts
111 East 17th Street
Austin, Texas 78774-0100

Milford Holding, LLC
c/o CPV Milford Management, LLC
8403 Colesville Road, Suite 915
Silver Spring, Maryland 20910
Attention: Douglas F. Egan

NY1:\1235295\01\QH5R01\.DOC\66022.0003

Yours faithfully,

KBC BANK N.V., NEW YORK BRANCH,
as Collateral Agent

By: _____
    Name:    SUSAN M. SILVER
    Title:    VICE PRESIDENT
            & TEAM LEADER

By: _____
    Name:    WIM VERBRAEKEN
    Title:    HEAD OF PROJECT FINANCE
            THE AMERICAS

cc:

El Paso Corporation
100 Louisiana Street
Houston, TX 77002
Attention: Director-Treasury

TOTAL P.04

# EXHIBIT 8



# martindale.com
## Lawyer Locator

Careers    Terms of Use | Services | Products | Contact Us | About Us | Site Info | Home    Quick li

### Search the Lawyer Locator

New Search

**Lawyer Locator**
Search Lawyer Locator
◼ By Lawyer
  By Location/Area of Practice
  By Industry/Practice Groups
  By Firm
  By Corporate Law Departments
  By US Government
  By US Law Faculty
Join the Legal Network
Request a Listing
About Lawyer Locator

**Legal Articles**

**Dispute Resolution**

**Experts and Services**

**Legal Personnel**

**Legal Careers**

**Professional Resources**

**Customer Service**





**Add the Lawyer Locator and Article Search to your web site**

More resources...
◼ lawyers.com
◼ Practice Development Center
◼ Counsel to Counsel Forums
◼ corporate.martindale.com
◼ eAttorney
◼ LexisNexis™
◼ LawCommerce.com℠
◼ LawyerLocator.Co.Uk
◼ Anwalt24.de
◼ martindale.co.il

**Thomas L. Atkins**
3 Cerulean Way
Lincoln, Massachusetts
(Middlesex Co.)

Born 1943; Admitted 1975, (Admitted in Maryland; Not admitted in Massachusetts); Towson State University, B.S.; University of Baltimore, J.D.

Devotes all or the greater part of his or her time to the affairs of a single client, or is retired, semi-retired or semi-active, or principally engaged in activities other than the practice of law.

New Search

▲ top

Lawyer Locator | Legal Articles | Dispute Resolution | Experts and Services
Legal Personnel | Legal Careers | Professional Resources | Customer Service

Home | Contact Us | About Us | Site Info | Products | Services
Media Room | Banner Sponsorships

Copyright | Terms & Conditions | Privacy Policy

# EXHIBIT 9

# White Pages



# West Suburban Boston Area

## RESIDENCE LISTINGS

For a complete alphabetical listing of business telephone numbers,
please refer to the BUSINESS LISTINGS section.

## Area Codes 617/857/781/339

| Full Name | Abbreviation | Full Name | Abbreviation | Full Name | Abbreviation | Full Name | Abbreviation |
|---|---|---|---|---|---|---|---|
| Arlington | . . . Arl | East Watertown | . . . E Wat | Newton | . . . New | Waban | . . . Wab |
| Arlington Heights | . . . Arlngtn Hgts | Hanscom Air Force Base | | Newton Centre | . . . Newton Ctr | Waltham | . . . Wal |
| Auburndale | . . . Aubrndle | | . . . Hanscom AFB | Newton Corner | . . . Newton Cor | Watertown | . . . Wat |
| Babson Park | . . . Babson Pk | Lexington | . . . Lex | Newton Highlands | . . . Newton Hlds | Waverley | . . . Wavrly |
| Bedford | . . . Bed | Lincoln | . . . Lcln | Newton Lower Falls | . . . Newtn Lwr Fls | Wellesley | . . . Wel |
| Belmont | . . . Bel | Needham | . . . Need | Newton Upper Falls | . . . Newtn Upr Fls | Wellesley Hills | . . . Wel Hls |
| East Arlington | . . . E Arl | Needham Heights | . . . Needham Hts | Newtonville | . . . Newtnvle | West Newton | . . . W New |
| | | | | | | Weston | . . . Wes |

# A

A Eugene 110 Manet Rd Nee................617 558-0072
A BURKE A J 18 Egerton Rd Arl.................617 646-3787
A CUCCHI John 54 Richgrain Av Wal...781 899-2963
A DEPONTE Joseph
  81 Broadway Arl...............................781 643-7275
A LEVY John 200 Kent Rd Nee...............617 969-1984
A MASUR Larry 133 Bradford Nee...........781 455-8501
A STEARNS Franklin G
  11 Grant Av Nee..............................617 956-8586
AADNANI Rachid
  668 Washington Wel........................781 235-0788
AALERUD Alma 10 Pelham Rd Lex....781 863-1361
  Harold S 33 Huntngtn Wal..............781 894-2274
  Roy 3 Barrymeade Dr Lex................781 862-9465
AALL Chris 890 Washington Wel...........781 239-9613
  Chris 890 Washington Wel...............781 239-9621
  Chris 890 Washington Wel...............781 416-9713
AALTO B P 125 Seminary Av Nee........781 244-4149
  Brian 500 Centre Nee......................617 243-0070
AALYSON Molly 9 Coolidge Rd Bel....617 484-0657
AANENSEN G 443A Maschsts Av Lex...781 274-6836
AARENS M 314 Bedford Lex.................781 863-0349
AARMAR Ousama M
  159 Lexington Nee..........................617 969-7596
AARON A 34 Milton Arl.......................781 643-0506
  Arthur 88 Glenburn Rd Arl...............781 316-8225
  David 160 Oliver Rd Nee.................617 527-5667
  Jeffrey M 780 Boylston Nee.............617 332-8678
  Jerome & Laurie
  66 Wildwood Av Nee......................617 522-6464
  M 31 Trapelo Rd Wal.......................781 899-6995
  Philip 34 Dorothy Rd Nee...............617 964-2312
  Ronald & Marilyn
  50 W Boulevard Rd Nee..................617 244-9268
  Samuel 160 Stanton Av Nee...........617 964-6883
  Steven & Amira
  235 Concord Av Lex.......................781 862-2202
  T & B 5 Hagen Rd Nee.....................617 552-5060
AARONS Jules 46 Kingswd Rd Nee....617 332-3779
AARONSON J 1338 Beacon Nee.........617 795-0243
  Marc 49 Rybury Hilway Nee............781 444-3415

AARONSON Marc
  49 Rybury Hilway Nee.....................781 444-4176
  Phyllis 29 Webster Rd Lex...............781 862-6112
  Rebecca 182 Florence Av Arl..........781 646-5031
AARSET Tim 10 Peacock Farm Rd Lex...781 862-5503
ABACASSIS A 416 Grove Nee..............617 243-0483
ABADIA Alfonso & Cynthia
  9 Columbus Nee.............................617 244-4926
ABADIAN-HEIFETZ Sousan
  10 Chenery Terr Bel.......................617 489-5335
ABADJIEV Svetlin
  36 Jensen Rd Watertown................617 393-0249
  Svetlin 36 Jensen Rd Watertown....617 923-7577
ABADJIEVA I 442 Walnut Nee............617 527-8927
ABADZOGLOU Demos
  35 Oak Av Bel...............................617 484-6722
ABAIR Mark 48 Teel Arl....................781 777-2002
  Peter & Linda 40 Evans Wal...........617 923-2172
ABANUMAY Yazeed 237 Moody Wal...781 209-9058
ABAR Coletta E 193 Sylvia Arl...........781 646-7771
ABARBANEL Jerome
  15 Barrage Rd Nee........................617 558-0102
ABATE A W 11 Cross Bel...................617 489-7688
  Chas J 7 Blubrry Ln Lex..................781 862-4202
  Chas Jr 125 Pleasant Arl................781 646-6689
  John A 227 White Bel.....................617 484-0499
  John A 227 White Bel.....................617 484-0895
  Laura 59 Fiske Wal........................781 899-3345
  T 2 Halsey Av Wellesley.................781 431-7848
  Tony & Anna 2 Halsey Av Wellesley.781 431-6499
ABBADESSA Salvatore J
  131 Woburn Lex............................781 862-4585
ABBAS AH 2 Dolores Av Wal............781 894-0416
ABBATE J 48 Evans Wal...................781 237-4846
ABBATOMARCO Amy
  1273 Washington Nee....................617 796-9810
ABBE Robert 385 Waverley Av Nee...617 332-4008
  Robert 385 Waverley Av Nee..........617 332-4518
  Robert 385 Waverley Av Nee..........617 916-2091
ABBERTON Debra
  25 Fairmont Av Wal.......................781 642-9644
ABBEY Albert 11 High-Rock Terr Nee..617 969-4280
ABBO Manhal 18 Russell Rd Nee......781 235-9747
ABBONDANZIO C & H
  35 Copeland Wal...........................781 647-5351
  E 102 Harvard Wal..........................781 899-4970
  Edw L 213 Prspct Hl Rd Wal...........781 899-6699
  Matthew 397 River Wal...................781 899-7066

ABBONDANZIO Shaun E
  6 Janet Rd Arl...............................781 643-1954
ABBOT Ames 14 Wedgewood Rd Nee..617 969-9758
  Philip & Cathy 16 Vaille Av Lex......781 863-5978
ABBOTT A 44 Winthrop Nee..............617 244-1735
  A 44 Winthrop Nee.........................617 244-3638
  Ann 31 Wellington Arl....................781 646-1775
  Barbara 146 Park Av Arl.................781 646-6514
  Christina 63 Ash...........................781 209-8235
  Diane 69 Highland Terr Nee...........781 559-8071
  Dorothy 403 Webster Nee..............781 444-2212
  E G 589 Highland Av Nee...............781 449-2523
  Freeland 104 Madison Av Arl..........781 646-6734
  Freeland X 1010 Waltham Lex.........781 862-8280
  Henry F 108 Lovett Rd Nee............617 332-0647
  Howard H 865 Central Av Nee.........781 449-7803
  Jane 45 Teel Arl.............................781 641-3437
  John 102 Hunnewell Av Nee...........617 244-4600
  John 28 Manet Rd Nee....................617 916-2845
  John 121 Waltham Nee...................617 527-9226
  John Cope 118 Wilson Rd Bel.........781 275-7095
  John T 118 Wilson Rd Bel...............781 275-7095
  Larry & Cathy 38 Eldred Lex..........781 861-7158
  Margaret 36 Hemlock Arl................781 646-2428
  Maricia 8 Old Farm Rd Nee.............781 237-6575
  Mary E 49 Bway Arl........................781 646-0835
  Mia 2 Haynes Rd Nee.....................617 964-2744
  N J & U 102 Blake Nee....................781 444-6677
  P Newton.....................................617 527-5454
  Paul & Susan 60 Otis Nee..............781 444-8275
  Robert & Julia
  407 Weston Rd Wel........................781 431-6185
  Robert & Leslie
  69 Cherry Brk Rd Wel.....................781 894-2683
  Stephen L 75 Oak Wel.....................781 237-5759
  Walter R 32 Hamilton Rd Arl............781 483-3557
  Walter R 28 Tanager Arl..................781 643-2285
  William Jr 11 Warwick Wal..............781 373-1652
ABBOTT-BATES Joan
  38 Hemlock Arl..............................781 646-5014
ABBOUD Donald C
  20 Fairmont Av Arl........................781 643-4985
  Samir 580 Main Wal.......................781 209-1570
ABBRUZZESE A 63 Tufts Arl..............781 648-0739
ABBY Taylor & Emma
  126 Park Av Arl.............................781 641-9931
ABCUNAS M 251 Cherry Nee............617 244-7904
  Peter T 267 Cherry Nee..................617 969-1956

ABDALIAN Kevork & Endza
  151 Coolidge Av Wat.....................617 923-2145
  Paul 21 Lee Rd Nee.......................781 455-9153
ABDALLA A Arl...............................781 641-3654
ABDALLAH D 172 Adams Waltham....781 894-1398
ABDELAL Ahmed 33 Whitney Rd Nee.781 795-7039
ABDELALI Fadil
  43 Coolidge Hill Rd Wat.................617 924-7369
ABDEL-GHANI M 8 Riverside Wal.......617 923-9536
ABDELGHANY Talal
  83 Palfrey Rd Bel..........................617 484-9754
ABDELLA Raymond & Rita
  30 Maynes Nee.............................781 444-4475
ABDEL-MAKSOUD Hamdy
  30 Maynes Nee.............................617 527-9314
ABDEL-MALAK Monir
  45 Piedmont Av Wal......................781 647-5367
ABDOLMOHAMMADI Mohammad
  107 Marsh.....................................617 489-5422
  Fax 107 Marsh...............................617 489-5523
ABDOU David 54 Jacqueline Rd Wal..781 891-9393
ABDU A 4 Bryant Rd Lex...................781 862-4294
ABDUL Khaleque 81 John Nee..........617 916-1951
ABDUL-HAKEEM Mohammed
  1500 Maschsts Av Arlington...........781 646-9284
ABDULRAZAK Fawzi
  4 Sheldon Rd Wal.........................617 926-5731
ABDUN-NABI Z & M
  49 Westcliff Rd Nee.......................781 235-0478
ABDURKHMANOV Peter
  61 Dale Nee..................................781 449-9621
ABDUS SABOOR N 32 Barnes Wal....781 893-0930
ABE David & Diane 13 Smith Av Lex..781 861-7612
ABED Edward & Ferial
  581 California Nee.........................617 630-5220
ABEDI Hasan 7 Barrymeade Dr Lex...781 860-7002
ABEDIAN N & B 14 Acorn Ln Lcln.......781 259-1494
ABEDON Michael 521 Chestnut Nee..617 964-5279
  Michael Dr 521 Chestnut Nee.........617 527-5356
ABEGG Gerald L 261 Waltham Lex....781 862-0388
ABEGGLEN L
  97 Meadow Brook Rd Wel..............781 891-4737
ABEL Carolyn J 36 Philip Rd Lex......781 861-7085
  D & S 273 Greendale Av Nee..........617 489-0215
  Deborah 42 Chandler Bel...............617 489-0235
  E Lex...........................................781 274-0092
  H A 210 Nahanton Nee..................617 527-0166

ASHJIAN Arpie 30 Putnam Wal......... 617 926-5522
D J 64 Freeman Arl........................... 781 643-1461
Hagop & Arpie 30 Putnam Wal..... 617 926-5522
Nubar 285 Maschisits Av Arl............ 781 643-1264

**ASHKOURI Hisham**
 138 Dalehill Rd Nee..................... 617 332-0028
Hisham 138 Dalehill Rd Nee......... 617 332-2515
Wisam 5 Mccarthy Rd Nee............. 617 965-5479
ASHLAND J L 36 Hawthrne Bel...... 617 484-6742
ASHLEY A E 39 Highlnd Av Lex...... 781 862-0916
Alison 16 Bowdoin Av Wal............. 781 891-9416
Geo & Sandra
 25 Whitney Tavern Rd Wes.......... 781 894-4334
Joan & Fletcher 6 Moon Hil Rd Lex. 781 862-6488
Joseph O 36 Gething Wal.............. 781 891-5581
Melinda 144 Moody Wal................. 781 891-8811
Michele 144 Moody Wal................. 781 642-1154
Rebecca 14 Adams Av Wal............. 617 923-8514
Richard 548 Centre St New............ 617 964-3747
Stanley & Vicki 206 Franklin New.. 617 244-6772
Thos A 4 Dougls Rd Bel................. 617 484-4202
V 206 Franklin New....................... 617 964-6153
ASHMORE Kristi 16 Cedar Wal...... 781 736-9012
Lauri 16 Cedar Wal...................... 781 736-9071
ASHOK Kalidas 70 Broadway Arl.... 781 648-6597
ASHOUR Ayman........................... 617 969-0074
Tareq 3 Wyman Arl....................... 781 648-8883
ASHRAF Raana 6 Page Rd Wes...... 781 642-7268
ASHRAFI F 78 Richardson Rd Bel.... 617 484-5250
**ASHRAFZADEH Mohammad**
 28 Sargent New......................... 617 964-3184
ASHTON A M Bel........................... 617 484-9199
ASHUR Jeffrey A 24 Wicswall New.. 617 965-1445
ASHUTOSH A 17 Lanes End Wes.... 781 790-1881
Sreederia 17 Lanes End Wes......... 781 790-1781
ASHWAY Judy 21 Winthrop Rd Bel.. 617 489-0253
**ASHWORTH Douglas**
 132 Wildwood Dr Nee................. 781 433-9879
Jamie 12 Birch Nee...................... 781 455-0159
Priscilla 73 Charles New................ 617 969-3090
Richard 132 Wildwood Dr Nee....... 781 444-2546
Robt 387 School Wal.................... 617 924-1246
ASIAF Barbara 9 Glenbrook Ln Arl. 781 643-3227
ASIF M 55 Irustan Rd Nee.............. 781 444-9622
ASIMACOS C 35 Spring Valley Rd Bel. 617 484-1612
M 35 Spring Valley Rd Bel............. 617 484-3505
**ASIMAKOPOULOS Demetrios**
 31 Hamilton Rd Bel.................... 617 489-9452
John 73 School Bel....................... 617 484-4229
ASINGER Robert & Barbara........... 617 527-3892
ASKNOF Lynn C 3 Ingleside Rd Lex. 781 862-8908
ASK Jeffrey & Malica
 67 Evergreen Wy Bel................. 617 484-5657
ASKENAZI Manor 33 Lewis Av Arl. 781 643-3497
ASKEW Michael 21 Heltis Terr Linc. 781 863-0758
Todd 191 Sycamore Wal............... 617 489-7857
ASKINS B 18 Varick Rd Nee........... 617 965-1486
ASLAM Amjad 58 Fresco Wal.......... 781 641-0822
ASLANIAN Aram 170 School Wal.... 617 926-6685
Chas M 35 Westmep Rd Bel........... 617 489-1882
Krista 219 Orchard Bel.................. 617 484-4188
ASMAL A C Dr 4 Larkspur Rd Nee.. 781 444-7995
ASMUNDSSON S 4 Feeld Rd Arl..... 781 646-0136
S 4 Feeld Rd Arl.......................... 781 646-0148
ASNER Ita 160 Stanton Av Nee...... 617 965-0498
**ASNES Ann & Dan**
 185 Bellevue Rd Wal.................. 617 926-1248
Daniel 185 Bellevue Rd Watertown. 617 924-3619
ASOYAN Mara 38 Chauncey Wal..... 617 926-4346
ASP Harold 11 Roberts Dr Bed....... 781 275-2883
ASPEL Brian 72 Benjamin Rd Bel.... 617 489-2709
Walter J 662 Lowell Lex................ 781 863-0888
ASPINALL J G 17 Cooke Rd Lex...... 781 862-2705
Keith 160 Dartmonth Nee............. 617 969-2455
ASPINWALL Debra 282 Lindon Nee. 781 449-1580
Mora 5 Whiting Wy Nee................ 781 449-3071
ASPURU Dianne 39 Wnckow Rd Bel. 617 489-5772
**ASQUITH Lawrence**
 77 Florence New....................... 617 332-1642
ASRICAN R 406 River Wal.............. 781 893-5895
ASRIH C 10 Ernest Rd Arl.............. 781 646-8869
C 10 Ernest Rd Arl....................... 781 646-8892
ASSAD S 110 Commnon Wal........... 617 926-4850
ASSARIAN Barbara 5 Lakehll Av Arl. 781 641-3581
Jeanette 127 Oakland Av Arl......... 781 643-5277
Robert 215 Broadway Arlington...... 781 643-9103
Steven H 18 Edmonds Wy Bel....... 617 489-2700
Zachary 5 Lakehll Av Arl............... 781 641-3781
ASSARPOUR F 29 Churchll Av........ 781 316-1612
**ASSEFA Achamyeles**
 632 Summer Arlington............... 781 316-1906
ASSELIN Brian 2 Wrgnta Rd Wal.... 781 373-1115
**Robert & Deanna**
 3 Constitution Dr Linc................ 781 862-4531
ASSIS Rogeria 178 Waverley Av Wal. 617 923-4038
ASSMANN S 159 Waverley Av Wal... 617 924-3376
ASSORTATO Frank P 66 Precint Lex. 781 862-6251
ASSUNCAO C Belmont.................. 617 484-3066
ASTA Dan 101 Winter Lex.............. 781 862-1701
**ASTAPOVEH Richard J**
 18 Newton Bel.......................... 617 484-4491
ASTER Irene 312 Marsh Lex........... 781 235-3812
Richard A 312 Marsh Lex.............. 781 863-0370
ASTERIS Georgios 2 Park Rd Bed.... 617 484-8479

ASTIER A 233 Langley Rd Nee........ 617 969-5713
ASTLEY Russ 52 Leighton Rd Wel... 781 237-1748
Russ 52 Leighton Rd Wel............. 781 416-7016
ASTON D M 91 Clevelnd Nee.......... 617 527-6717
ASTONE Jos J 19 Smith Av Nee...... 617 969-9863
ASTOR John H 8 Kirkland Cir Wel... 781 237-2826
ASTORIAN Evelyn 25 Bradfrd Rd Wal. 617 923-8893
**ASTORINO Richard**
 10 Charles St Av Wal................. 781 899-3403
ASTOURIAN Rachel
 21 Richardson Av Arl................. 781 643-4631
ASTRACHAN Edw & Lillian
 11 Amy Cir Nee......................... 617 928-0981
ASTROM Lars 282 Grove Nee......... 617 916-1840
ASTROVE S R C 1
 15 Swarthmore Rd Wel.............. 781 237-8564
ASTRUE Michael 47 Benton Rd Bel. 617 484-2358
ASTUDILLO A S 19 Rocker Rd Nee.. 617 630-8114
Karyl & Manuel 124 Sycamore Bel. 617 489-1663
**ASUAJE SOLON Ana**
 36 Beverly Rd Nee..................... 617 332-5257
ASWAD Herbert 43 Walker Nee..... 617 332-8351
ASZLING Jennifer G 18 Nourse Arl. 781 643-1621
ATAGO S 975 Maschisits Av Arl...... 781 646-7587
ATAII Syrus 392 Langley Rd Nee.... 617 796-7950
ATALA Mauro & Adriana
 3 Old Colony Ln Arl.................... 781 646-6890
ATALLAH David & Brooke
 61 Arnold Rd Wel...................... 781 239-9740
Peter & Alison 46 Mant Av Nee..... 781 453-9748
ATAMIAN Edw 15 Dexter Av Wal.... 617 924-7409
Elliott L 14 Cory Dr Wes............... 781 899-3448
Garabed 17 Dexter Av Wal............ 617 926-0204
Helen P 129 Mnsar Wal................ 617 924-9247
John R 324 Washington Wel.......... 781 235-4142
L 131 Morse Wal.......................... 617 924-5796
Leon 4 Pheasant Rd Wes.............. 781 899-0599
Malcolm 11 Woodhll Rd Bel........... 617 489-3636
W & Louis 11 Eliot Av New........... 617 332-7688
**ATANASOV Vladimir A**
 39 Twitchell Wel........................ 781 237-7872
ATAR S & A 18 Travis Dr Nee......... 617 558-1154
ATAYA C 123 Gould Nee............... 781 453-9626
F 117 Emerson Gardens Rd Lex..... 781 674-9778
**ATCHINSON Bob & Michelle**
 9 John Benson Rd Lex................ 781 863-0458
**ATCHISON Nicole Rene**
 108 Hagen Rd Nee..................... 617 559-9937
Seitz-Trice 27 Fountain Rd Arl...... 781 641-2588
T 27 Fountain Rd Arl.................... 781 646-7187
**ATCHLEY Barbara P**
 51 Todd Pond Rd Linc................ 781 259-1158
ATEFEE S 275 Main Wel................ 617 923-8098
ATEFI Miremad 183 Lincoln Wal..... 781 647-8831
M 107 Simonds Rd Lex.................. 781 862-9483
ATEMA Ilyse R 15 Knowles Nee...... 617 964-0218
ATEN Mary 28 Clarendon New....... 617 964-0612
ATENASIO N M 661 Lowell Lex....... 781 861-1921
ATHAN Harry 46 Greenwood New... 617 965-8357
S 66 Greenwood New................... 617 795-1682
ATHANAS Stephen T
 291 E Chapel Nee...................... 617 965-3982
ATHANASAS Thomas J
 25 Abbott Nee........................... 617 527-1272
ATHANASIA D 14 Squirrel Rd Wel... 781 431-1014
**ATHANASIADES Efstathios**
 42 Concord Rd Wal..................... 617 926-5521
John 61 Maplewood Wal.............. 617 744-1475
John 61 Maplewood Wal.............. 617 923-8767
**ATHANASIADIS Geo L**
 18 Sanderson Rd Lex................. 781 862-0654
Paul & Danielle 26 Egerton Rd Arl. 781 648-6647
Stavros 20 Westland Rd Wal......... 617 926-7827
**ATHANASIOU Costas & Leslie**
 130 Maco Av Arl........................ 781 648-3902
**ATHANASOPOULIS Geo C**
 510 Belmont Wal....................... 617 926-7237
J Arl........................................ 781 643-4706
**ATHANASOULIS Cristos Dr**
 33 Swarthmore Rd Wal............... 781 237-3521
ATHAS J 79 Drakddridges Wy Wes.. 781 647-5219
Julia 141 Hillside Rd Wal............... 617 924-8365
Ralou 41 Fowl Wal....................... 617 923-1537
ATHELING Anne 229 Claddge Av Wal. 617 923-8211
ATHENA M Bel............................ 617 484-3552
ATHENS Geo 7 Denver Lex............. 781 863-5316
ATHERTON Eric 1245 Maschits Av Arl. 781 648-2581
ATHY Jas M & Marie
 7 Lovewell Rd Wal..................... 781 235-0366
Patk J 351 Lowell Av Nee............. 617 332-7429
Paul F 351 Lowell Av Nee............. 617 244-3107
ATIA Walid 77 Bedford Lex............ 781 674-0431
ATIN Alex 115 Sunnyside Av Arl..... 781 643-6328
ATINEZ Nigogos 91 Crestview Rd Bel. 617 489-3701
**ATINIZIAN Carolyn**
 151 Coolidge Av Wal.................. 617 923-1268
ATIYYAT M 99 Highland Av Wal...... 617 924-7749
Mohammad A 58 Waltham Wal...... 617 923-3506
**ATKIN Barrie**
 206 Bishops Forest Dr Wal......... 781 788-6600
Barrie 255 Bishops Forest Dr Wal.. 781 788-6685
Jeff 44 Fenwick Rd Wes............... 617 393-9840
Michael 104 Temple Newton........ 617 795-2021
Nathan 116 Russell Wal............... 781 398-0164

ATKIN Rawson & Christine
 65 Pilgrim Rd Nee...................... 781 444-7649
Terence 101 Kenrick Rd Nee......... 781 316-0032
**ATKIND Richard & Anne**
 1 Greenwood Av Nee................. 781 449-6343
Rob & Nancy 5 Dover Rd Linc....... 781 863-8008
**ATKINS Andrew 17 York Lex.......** 781 863-8139
Aron & Barbara
 145 Park Av Ext Arl.................... 781 648-1671
B & M 15 Pleasant Nee................ 781 444-9329
Barbara & Jonathan
 19 Fessenden New..................... 617 558-5527
Chas A 471 Albermarie Rd Nee...... 617 244-3460
Dave & Jen 177 Great Plain Av Nee. 781 453-0441
Elisha 44 Junipr Rd Bel................ 617 484-0222
Geo Dr 44 Andrew New................ 617 332-3287
Gerald & Maureen
 203 Lindbergh Av Nee................ 781 449-3660
Gerald P 203 Lindbergh Av Needham. 781 444-3440
Harold W 58 Thessla Arl............... 781 648-4572
Henri B 25 Arncho Rd Wes........... 781 899-0572
John J 8 Upland Field Rd Linc........ 781 259-0727
L 20 Trowbridge Nee................... 617 965-2966
Michael 1 Green Ln Wes............... 781 894-3631
Nicki 15 Otis H New...................... 617 965-3283
Rick 26 Middle Lex....................... 781 863-8611
Thos 57 Golden Ball Rd Wes......... 781 647-9134
Thomas L 3 Cerulean Wy Ldn........ 781 259-4014
Thos L & Sharon A
 3 Cerulean Wy Ldn.................... 781 259-8183
ATKINSON B & A 72 Magnolia Arl.. 781 643-3666
B Chas 45 Hilltop Nee.................. 617 964-0725
Courtney W 94 Birch Hill Rd Bel.... 617 484-0393
ATKINSON D L Dnc cesspl citnr
 48 Mellen Nee........................... 781 444-1204
Res 48 Mellen Nee....................... 781 444-6930
ATKINSON David 44 Mellen Nee..... 781 559-8029
David 45 Priscilla Rd Nee.............. 617 969-5727
David Fax 72 White Oak Rd Wal..... 781 239-0927
David W 44 Mellen Nee................. 781 449-5684
E 24 Appleton Wal....................... 617 924-2490
Frank R 12 Hamilton Rd Wal......... 781 237-1355
Gregory R 97 Newell Av New......... 781 455-1462
Harvey & Lillian
 1010 Waltham Lex...................... 781 674-9434
L 36 Jumper Rd Bel...................... 781 489-2996
M 2 Francis Bel........................... 617 489-6637
Mary H & David
 72 White Oak Rd Wel.................. 781 235-3885
P J 83 Pickering Nee.................... 781 444-4308
Peter & Judith 71 Lake Wal.......... 781 893-2571
Richard D 30 Marsh Rd Nee.......... 781 449-9651
Stephen 62 Oak Av Bel................. 617 484-9454
Stephen & Rebecca
 62 Oak Av Bel............................ 781 484-3612
Tom 14 Crescent Wel................... 781 431-1222
Warren 25 Lillian Rd Lex.............. 781 274-6630
William C 181 South Av Wes......... 781 899-7388
**ATKINSON-FITZGERALD B**
 14 Union Wal.... Brighton Telmo.. 617 924-4410
**ATKINSON-MALLORY S**
 18 Cottage Bel.......................... 617 484-3560
Sharon 18 Cottage Bel................. 617 484-6962
ATLAS Chas R 70 Jones Rd Arl....... 781 643-0864
Michael 21 Lansdowne Rd Arl....... 781 648-5749
N 1010 Waltham Lex.................... 781 861-6906
Stephen 31 Old Winter Lchs......... 781 259-1110
Stephen 31 Old Winter Lchs......... 781 259-7950
ATOJI C 306 Lexington Wal........... 617 924-3518
ATOR Nancy E 28 Boulder Rd Wel.. 781 237-4288
ATRAPS R 125 Lexington New....... 617 964-5507
**ATSKINIODAS Vassilios**
 10 Summit Rd Wal..................... 617 926-0665
**ATTALIADES Ellen**
 20A Railroad Av Bed.................. 781 271-0732
Ellen 20A Railroad Av Bed........... 781 271-0731
Ellen 20A Railroad Av Bed........... 781 271-0735
Ellen 20 Railroad Av Bed............. 781 271-0766
**ATTALLA Ashraf**
 20 So Braittle So Terrace Arlington. 781 648-3879
ATTALLAH I 81 Webster Arl........... 781 641-0149
**ATTANUCCI John**
 204 Maschists Av Arl.................. 781 862-8511
ATTIA Sarah 506 Parker Nee......... 617 641-9590
Sarah 506 Parker Nee.................. 617 641-9677
ATTIAS Marc & Dale Halloran
 15 Haven Rd Wel....................... 781 237-2964
ATTISANI David A & Andrea C
 27 Roberts Rd Wel..................... 781 235-2901
ATTRIDGE Paul H & Polly
 59 Flowers Nee.......................... 781 444-6745
ATTWOOD Peter & Michelle
 24 Bowdoin Arl.......................... 781 643-5212
ATUHAIRE Betty 47 Central Waltham. 781 899-6164

ATWATER Jeffrey S
 611 Watertown New................... 617 796
Jeffrey S 611 Watertown Nee....... 781 861
ATWELL Michael 105 Watuan Pk Nee. 781 894
Paul Nee................................... 617 965
ATWOOD B Nee........................... 617 969
Cathy & John
 46 Longfellow Rd Wel................. 781 235
Deborah 17 Howard Rd Bel.......... 781 489
Gwendolyn 207 Concord Rd Lchs.. 781 259
K 50 Plainfield Nee...................... 617 244
L M 60 Pleasant Arl...................... 781 648
N 103 Maple Nee......................... 781 894
P & B 51 Cedar Rd Wes................ 781 893
Robt W 10 Russell Sq Lex............. 781 862
ATZL J M & B B
 1415 Maschists Av Nee.............. 781 863
ATZMONY A 33 Lenglen Rd Nee..... 617 916
Brian & Margaret 33 Lenglen Rd Nee. 617 928
AU A 315 Meadowbrook Rd Nee..... 617 332
M 23 Winter Nee......................... 617 795
Stephen B 5 Scott Rd Lex............. 781 274
AUB Ellen 293 Nahanton Nee........ 617 244
AUBERT John M & Jeanne M
 Nee........................................ 781 893
Michael 15 Humboldt Wal............. 781 894
Richard C dr 167 Parsons Av Wal.. 781 647
AUBIN M Nee.............................. 781 444
Patricia A 70 Lewn on Rd Wal....... 617 926
AUBREY H R 12 Hilltop Av Lex....... 781 862
Sarah 64 Spring Av Arl................. 781 641
AUBRY Richard J Dr
 24 Berkshire Rd Nee.................. 781 449
AUBUCHON M 54 William Nee....... 617 965
AUBURN Albert 865 Central Av Nee. 781 453
AUBUT Michelle 113 Sycamore Bel. 617 484
AUCHINCLOSS Ella
 131 Suffolk Rd Nee.................... 617 277
Ella 131 Suffolk Rd Nee............... 617 277
Hugh Dr 51 Hampstea Rd Nee...... 617 720
Thos G & Ella 131 Suffolk Rd Nee. 617 734
AUCHTERLONIE Stephen
 219 Arsenal Wal........................ 617 926
AUCIELLO VDA A 15 Wheaton Rd Arl. 781 646
AUCION Michael 20 Armings Rd Wal. 781 899
Timothy 75 Harnden Av Wal.......... 781 237
AUCLAIR Greg
 15 Wimbledon Cir Newton.......... 617 795
Greg 15 Wimbledon Cir Newton..... 617 795
M & K 76 Parmenter Rd Wal.......... 781 893
AUCOIN Albert 12 Appleton Wal..... 781 894
Albert 39 Hammond Wal............... 781 891
Albert 101 Prospect Wal.............. 781 893
Albert & Annette
 30 Middlesex Cir Wal.................. 781 893
Arthur & Denise
 7 Mt Pleasant Wal..................... 781 893
Bertha 77 Myrtle Wal................... 617 332
Chas 49 Farlow Rd Nee............... 617 332
Dana & Jennifer 26 Flood Wal....... 781 899
Darrin 55 Dix Wal........................ 781 647
Deborah 24 Berkeley Wal............. 617 924
Diane 21 Manson Rd Nee............. 781 444
Edward 37 Hammond Wal............. 781 894
Edward 32 Indiana Terr Nee......... 617 969
Edward & Janice 5 Gregory Wal.... 781 899
Edw T 56 Halcyon Rd Nee............ 617 244
Eugene G & Mabel M
 14 Milner Wal........................... 781 891
Gerard 5 Summit Wal................... 781 893
Glenn 20 Clinton Wal.................... 781 899
Ian 84 Shade Lex......................... 781 862
J 38 Horace Wal.......................... 781 647
J Ernest 134 Lisbon Pond Rd Wal.. 781 894
J Gerard 55 Chestnut Wal............ 781 893
J M 174 Moody Wal...................... 781 893
J W 47 Bacon Wal........................ 781 899
Jae 92 Barbara Rd Wal................ 781 373
Joe 92 Barbara Rd Wal................ 781 861
John Levi 13 Mt Pleant Wal.......... 781 893
Jos Mrs 567 Main Wal.................. 781 647
Jos A 146 Pleasant Wal............... 781 899
Jos A 15 Sheridan Rd Wal............ 781 899
Jos P & Janet
 19 Chamberlain Terr Wal........... 781 899
Kathleen 5 Gregory Wal.............. 781 788
L M 15 Harvard Rd Wal................ 781 899
L P 11 Benefit Wal....................... 781 893
Leona 95 Winthrop Wal................ 781 373
Lloyd & Jean 8 Sheridan Rd Wal... 781 899
Lorraine A 174 Moody Wal........... 781 894
M T 174 Moody Wal..................... 781 899
Michael 20 Jennings Rd Wal......... 781 899
Michael G 20 Jennings Rd Wal...... 781 893
Milton 93 Hardwick Av Wal.......... 781 894
P 28 Allen Rd Wal....................... 781 891
Pamela & Vernon 509 Main Wal.... 781 899
Paul & Vedna
 6 Sheridan Rd Wal.................... 781 894
Richard A 25 Flood Wal............... 781 899
Richard A 25 Flood Wal............... 781 893
Richard A Jr 11 Prospect Wal....... 781 891
ATWOOD Robert & Lorraine
 14 Hiawatha Av Wal................... 781 894