# EXHIBIT 10

EFiled: Jun 14 2004 6:29PM EDT
Filing ID 3729803

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| MILFORD POWER COMPANY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PDC MILFORD POWER, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, by and through its undersigned attorneys, hereby alleges as follows:

### SUMMARY OF THE ACTION

By this action, plaintiff Milford Power Company, LLC ("Milford" or the "Company") seeks a declaration that defendant PDC Milford Power, LLC ("PDC" or "Defendant") has withdrawn as a member of the Company. The claim is based upon Articles 11.2 and 11.9 of the Amended and Restated Limited Liability Company Agreement of Milford Power Company LLC (the "Amended LLC Agreement") and the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 et seq.

### PARTIES

1. Plaintiff Milford Power Company is a Delaware limited liability company in good standing under the laws of the State of Delaware. A certificate from the Office of the Secretary of State of the State of Delaware evidencing Milford's good standing is attached hereto as Exhibit 1.

2. Defendant PDC Milford Power, LLC is a limited liability company organized under the laws of the Commonwealth of Massachusetts. At the time of execution of

the Amended LLC Agreement, PDC held a five percent membership interest in Milford.

## FACTUAL BACKGROUND

3.     The interests of the members of the Company are governed by the Amended LLC Agreement dated March 25, 1999 (attached hereto as Exhibit 2).

4.     The LLC Agreement provides, *inter alia*, for the automatic and immediate withdrawal of members upon the occurrence of certain specified triggering events.  Specifically, Article 11.2 provides:

> Automatic Withdrawal of a Member – A member *shall be deemed to have withdrawn* from the Company and *shall be treated as a Withdrawn Member* under this Agreement *automatically* upon the occurrence of any of the following events: (a) *Immediately* if any Member shall (i) *voluntarily file with a Bankruptcy Court a petition seeking an order for relief under the [f]ederal bankruptcy laws*, ... [or] (iii) *file a petition seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction.*

(Emphasis added).

5.     The language of Article 11.2 tracks the language of Section 18-304 of the Delaware Limited Liability Company Act ("LLC Act"), which provides that

> A person ceases to be a member of a limited liability company upon the happening of any of the following events:  (1) Unless otherwise provided in a limited liability company agreement, or with the written consent of all members, a member ... (b) [f]iles a voluntary petition in bankruptcy [or] ... (d) [f]iles a petition or answer seeking for the member any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law, or regulation[.][1]

6.     Among other things, Article 11.9 of the Amended LLC Agreement sets forth the consequences that result from "Withdrawn Member" status.  Article 11.9 provides, in relevant part, that

---

[1]     Section 18-101 of the LLC Act defines "Bankruptcy" as "an event that causes a person to cease to be a member as provided in § 18-304 of this title."

    (a) Subject to the provisions of Article XI, a Member … shall have the right to withdraw from the Company[.] … The Withdrawing Member shall assign its rights and interests in the Company to the remaining Members or their designees and the Withdrawing Member waives any and all rights that it might otherwise have had pursuant to the [LLC] Act arising from its withdrawal from the Company. *The Withdrawing Member hereby irrevocably appoints the Company as its attorney-in-fact, with full authority in its place and stead and its name or otherwise, to take any action and to execute any interest which the Company may deem necessary or advisable to accomplish such assignment of the Withdrawing Member's rights and interests in the Company to the remaining Members or their designees.* …

(Emphasis added).

    7.    On February 27, 2004, PDC filed a voluntary petition in bankruptcy, under Chapter 11 of the United States Bankruptcy Code, with the United States Bankruptcy Court, District of Massachusetts (the "Massachusetts Bankruptcy Court"), Case No. 04-11521 (the "Bankruptcy Petition"). A copy of the Bankruptcy Petition is attached hereto as Exhibit 3.

    8.    On April 26, 2004, the Massachusetts Bankruptcy Court entered an order dismissing the Bankruptcy Petition. A copy of the dismissal order is attached hereto as Exhibit 4.

    9.    On June 2, 2004, the Massachusetts Bankruptcy Court issued an order officially closing the case. A copy of the notice of closure is attached hereto as Exhibit 5.

    10.    By the terms of Section 11.2 of the Amended LLC Agreement and Section 18-304 of the LLC Act, PDC's filing of the Bankruptcy Petition caused its immediate and automatic withdrawal from the Company. That withdrawal, in turn, has triggered the provisions of Article 11.9(a) appointing Milford Power as PDC's attorney-in-fact for purposes of taking any action or to execute any interest which the Company may deem necessary or advisable to accomplish assignment of PDC's rights and interests in the Company to the remaining Members or their designees.

11.    Pursuant to Article 15.4 of the Amended LLC Agreement, this Court has jurisdiction over the claims asserted herein. That Article also provides that the Amended LLC Agreement is to be interpreted and governed by the laws of the State of Delaware.

12.    Plaintiff has no adequate remedy at law.

## CAUSE OF ACTION

13.    Plaintiff repeats and realleges each of the paragraphs set forth above.

14.    As a result of its voluntary filing under Chapter 11 of the United States Bankruptcy Code, PDC is a "Withdrawn Member," as defined in the Amended LLC Agreement, and no longer entitled to the rights and privileges accorded Members under the Amended LLC Agreement of the Company.  PDC's uncertain status vis-à-vis the Company has unnecessarily clouded Milford's ownership structure and has materially adversely affected the ability to conduct the Company's operations in the normal course of business.

15.    In addition, as provided by Article 11.9 of the Amended LLC Agreement, PDC has irrevocably appointed the Company its attorney-in-fact to take such actions as are necessary to effectuate the assignment of PDC's interest to the other members of the Company, or their designee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

(a)    Declaring that PDC is a Withdrawn Member pursuant to Article 11.2 of the Amended LLC Agreement and Section 18-304 of the LLC Act as a result of its voluntary filing of the Bankruptcy Petition;

(b)    Declaring that pursuant to Article 11.9(a) of the Amended LLC

Agreement, PDC has irrevocably appointed the Company its attorney-in-fact to take such actions as are necessary to effectuate the assignment of PDC's former membership interest to the other Members of the Company, or their designees;

(c)    Declaring that pursuant to Section 11.9(b) of the Amended LLC Agreement, the Company shall retain all contributions made to it by the Withdrawing Member;

(d)    Declaring that PDC otherwise fulfill all duties and responsibilities consistent with its status under the Amended LLC Agreement as a Withdrawing Member; and

(e)    Awarding Plaintiff such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Thomas R. Hunt, Jr. (#466)
Andrew H. Lippstone (#4117)
1201 N. Market Street
Wilmington, Delaware  19899-1347
(302) 658-9200
  Attorneys for Plaintiff Milford Power Co., LLC

June 14, 2004

412565

EFiled: Jun 14 2004 6:29PM EDT
Filing ID 3729803

# EXHIBIT 1

# Delaware

PAGE  1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "MILFORD POWER COMPANY, LLC" IS DULY
FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD
STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS
OFFICE SHOW, AS OF THE SEVENTH DAY OF JUNE, A.D. 2004.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE
BEEN PAID TO DATE.



Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

2970331  8300

040420939

AUTHENTICATION: 3156194

DATE: 06-07-04

# EXHIBIT 2

EXECUTION COPY

THE OWNERSHIP INTERESTS EVIDENCED HEREBY (OR BY CERTIFICATES, IF ANY ARE ISSUED) HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES EXCHANGE ACT OF 1933 (15 U.S.C. ɔ77a *et seq.*), AS AMENDED (THE "1933 ACT"), OR UNDER THE SECURITIES LAWS OF ANY STATE. SAID INTERESTS MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED AT ANY TIME EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS CONTAINED IN THIS AGREEMENT AND PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE 1933 ACT AND ANY APPLICABLE STATE SECURITIES LAW OR AN EXEMPTION THEREFROM. FURTHER, THE SALE OR OTHER DISPOSITION OF THE OWNERSHIP INTERESTS EVIDENCED HEREBY ARE RESTRICTED, AS SET FORTH IN THIS AGREEMENT AND THE COMPANY HAS THE RIGHT TO REQUIRE AN OPINION OF COUNSEL, IN FORM AND SUBSTANCE SATISFACTORY TO IT, THAT SUCH TRANSFER CAN BE LAWFULLY MADE WITHOUT REGISTRATION OR OTHER COMPLIANCE WITH SUCH STATUTES AND OTHER RULES AND REGULATIONS THEREUNDER.

AMENDED AND RESTATED

LIMITED LIABILITY COMPANY AGREEMENT

OF MILFORD POWER COMPANY, LLC

Dated as of March 25, 1999

By and Among

EL PASO MILFORD POWER I COMPANY

EL PASO MILFORD POWER II COMPANY

AND

PDC MILFORD POWER LLC

TABLE OF CONTENTS

ARTICLE I  DEFINITIONS AND INTERPRETATIONS ................................................ -1-
    1.1    Definitions ........................................................................................ -1-
    1.2    Interpretations .................................................................................. -1-

ARTICLE II  FORMATION ...................................................................................... -1-
    2.1    Formation ......................................................................................... -1-
          (a)    Organization ........................................................................ -1-
          (b)    Member's Rights and Liabilities............................................ -1-
          (c)    Qualification in Other Jurisdictions ...................................... -2-
    2.2    Name ................................................................................................ -2-
    2.3    Offices............................................................................................. -2-
    2.4    Term................................................................................................. -2-
    2.5    Authorized Number of Units of Membership Interest ......................... -2-

ARTICLE III  PURPOSES AND POWERS OF THE COMPANY ................................ -3-
    3.1    Purposes of the Company .................................................................. -3-
    3.2    Powers of the Company ..................................................................... -3-
    3.3    Other Business Opportunities ............................................................ -3-
    3.4    Affiliate Transactions ....................................................................... -4-
                                  -4-

ARTICLE IV  MEMBERSHIP ................................................................................... -4-
    4.1    Initial Members ................................................................................. -4-
    4.2    Additional Members .......................................................................... -4-
    4.3    Withdrawal ....................................................................................... -4-
    4.4    No State-Law Partnership .................................................................. -4-
    4.5    Meetings of Members ........................................................................ -4-
          (a)    Quorum Requirements........................................................... -4-
          (b)    Location of Meetings of Members ......................................... -4-
          (c)    Adjournment of Meetings ..................................................... -5-
          (d)    Meeting of Members ............................................................ -5-
          (e)    Notice of Meetings of Members ............................................ -5-
          (f)    Record Date ......................................................................... -5-
    4.6    Voting List ........................................................................................ -5-
    4.7    Proxies ............................................................................................. -5-
    4.8    Conduct of Meetings ......................................................................... -6-
    4.9    Action by Written Consent or Telephone Conference ......................... -6-
          (a)    Written Consent.................................................................... -6-
          (b)    Record Date ......................................................................... -6-
          (c)    Documents ........................................................................... -7-
          (d)    Meetings of Members by Telephone...................................... -7-
    4.10    Preemptive Rights ............................................................................ -7-

Berkshire.doc
BUSDOCS:728102.1

i

ARTICLE V  MANAGEMENT OF COMPANY ........................................................ -7-
    5.1   Management by Members ............................................................... -7-
    5.2   Member Decisions ........................................................................ -7-
          (a)    Actions Requiring Unanimous Consent ................................... -7-
          (b)    Actions Requiring Super-Majority in Interest Consent ............... -8-
          (c)    Actions Requiring Majority in Interest Consent ...................... -10-
    5.3   Committees ............................................................................... -10-
          (a)    Construction Committee ................................................... -11-
          (b)    Operations Committee ..................................................... -11-
          (c)    Commercial Committee .................................................... -11-
    5.4   Member Management Agreements .................................................. -11-
    5.5   Management by Officers .............................................................. -11-
    5.6   Fuel Manager ........................................................................... -12-
    5.7   Power Marketer......................................................................... -12-

ARTICLE VI  CAPITAL CONTRIBUTIONS ..................................................... -12-
    6.1   Capital Account ........................................................................ -13-
    6.2   Capital Contributions................................................................. -13-
          (a)    Capital Contributions for the Construction of the Plant ............ -13-
          (b)    Additional Capital Contributions ........................................ -13-
    6.3   Ownership Interest ..................................................................... -14-
          (a)    Initial Ownership Interest ................................................. -14-
          (b)    Revision of Ownership Interests Following the Flip Point ......... -14-
          (c)    Flip Point .................................................................... -14-
    6.4   Consequences of Default in the Payment of Capital Contributions ......... -15-
          (a)    Mandatory Capital Contributions....................................... -15-
          (b)    Additional Capital Contributions ....................................... -15-
    6.5   Return of Capital ...................................................................... -16-

ARTICLE VII  ALLOCATIONS AND DISTRIBUTIONS................................... -16-
    7.1   Cash Distribution ...................................................................... -16-
    7.2   Allocations of Profits and Losses.................................................. -16-
    7.3   Curative Amendment .................................................................. -18-
    7.4   Section 704(c) .......................................................................... -18-
    7.5   Transfers ................................................................................. -18-
    7.6   Withholdings ............................................................................ -18-

ARTICLE VIII  ACCOUNTING AND TAXATION.............................................. -19-
    8.1   Fiscal Year............................................................................... -19-
    8.2   Location of Records; Inspection .................................................... -19-
    8.3   Books of Account....................................................................... -19-
    8.4   Financial Statements and Reports ................................................. -20-
    8.5   Taxation ................................................................................. -20-
    8.6   Tax Returns and Audits .............................................................. -21-
    8.7   Other Reports .......................................................................... -21-
    8.8   Inspection of Records ................................................................. -22-
    8.9   Deposit and Withdrawal of Funds ................................................. -22-

8.10    Record Retention ................................................................... -22-
8.11    Company Level Tax Audits ...................................................... -22-

ARTICLE IX    TRANSFER OR PLEDGE OF OWNERSHIP INTERESTS ........................ -24-
9.1    Transfers or Pledges Generally ............................................... -24-
9.2    Right of First Offer .............................................................. -24-
9.3    Permitted Transfers ............................................................. -24-
9.4    Requirements Applicable to All Dispositions and Admissions .......................... -26-
       (a)    Ratification of this Agreement ................................... -26-
       (b)    Securities Law Opinion .......................................... -26-
       (c)    Restrictions on Sale of Interests in a Member .................. -26-
9.5    Prohibited Transfers Null and Void ......................................... -26-
9.6    PUHCA Regulation ............................................................. -27-

ARTICLE X    OWNERSHIP INTERESTS ............................................................ -27-
10.1    Certificates Representing Ownership Interests ........................... -27-
10.2    Certificate Transfer Book and Members of Record ...................... -27-
10.3    Member's Change of Name or Address ..................................... -28-
10.4    Transfer of Ownership Interests ........................................... -28-
10.5    Lost, Stolen or Destroyed Certificates .................................... -28-

ARTICLE XI    DISSOLUTION AND TERMINATION ............................................. -28-
11.1    Automatic Dissolution ........................................................ -28-
11.2    Automatic Withdrawal of Member .......................................... -29-
11.3    Damages ......................................................................... -29-
11.4    Date of Dissolution ........................................................... -29-
11.5    Control After Dissolution .................................................... -30-
11.6    Dissolution and Winding Up ................................................ -30-
11.7    Liquidation ..................................................................... -30-
11.8    Purchase Right Upon Dissolution .......................................... -31-
11.9    Voluntary Withdrawal Rights ............................................... -31-
       (a)    Right to Withdraw ................................................ -31-
       (b)    Reimbursement Rights ........................................... -31-
       (c)    Indemnification of Withdrawing Member ...................... -32-

ARTICLE XII    LIMITATION OF LIABILITY AND INDEMNIFICATION ....................... -32-
12.1    Limitation of Liability ....................................................... -32-
12.2    Right to Indemnification ..................................................... -32-
12.3    Cross-Indemnification ........................................................ -32-
12.4    Consequential Damages ....................................................... -32-
12.5    Non-Recourse to Members .................................................... -33-

ARTICLE XIII    REPRESENTATIONS ............................................................. -33-
13.1    Representations of the Members ............................................ -33-
       (a)    Due Organization ................................................. -33-
       (b)    Authorization ..................................................... -33-
       (c)    Effect of this Agreement ......................................... -33-

|   |   |   |   |
|---|---|---|---|
| (d) | Litigation | -34- |
| (e) | Regulation | -34- |

**ARTICLE XIV  CONFIDENTIALITY OF COMPANY AFFAIRS** .................................... -34-
| 14.1 | Disclosure of Confidential Information | -34- |
| 14.2 | Use | -34- |
| 14.3 | Procedures | -34- |
| 14.4 | Survival | -35- |
| 14.5 | Remedies | -35- |

**ARTICLE XV  MISCELLANEOUS** ................................................................. -35-
| 15.1 | Entirety of Agreement | -35- |
| 15.2 | Notices | -35- |
| 15.3 | Further Assurances | -36- |
| 15.4 | APPLICABLE LAW AND CHOICE OF FORUM | -37- |
| 15.5 | Counterparts | -37- |
| 15.6 | Laws and Regulatory Bodies | -37- |
| 15.7 | Force Majeure | -37- |
| 15.8 | Notice of Litigation | -37- |
| 15.9 | Severability | -37- |
| 15.10 | Third-Party Beneficiaries | -37- |
| 15.11 | Remedies | -37- |
| 15.12 | Non-Waiver of Rights | -37- |

**EXHIBIT A** .............................................................................................. -1-

**ARTICLE 1  DEFINITIONS AND INTERPRETATIONS** ...................................... -1-
| 1.1 | Definitions | -1- |
| 1.2 | Interpretations | -4- |

**EXHIBIT B - Member Management Agreements** .............................................. -1-

**EXHIBIT C – Form of Certificate** ................................................................ -1-

AMENDED AND RESTATED
LIMITED LIABILITY COMPANY AGREEMENT
OF
MILFORD POWER COMPANY, LLC

This Amended and Restated Limited Liability Company Agreement of MILFORD POWER COMPANY, LLC ("Agreement") is effective this    day of March, 1999 by and among the Members (as defined below).

WHEREAS, the Members filed the Certificate of Formation and formed Milford Power Company, LLC as a Delaware limited liability company on December 11, 1998, pursuant to the terms of a Limited Liability Agreement dated on the same date (the "Original LLC Agreement");

WHEREAS, PDC – El Paso Milford LLC filed its Articles of Organization with the Secretary of State of Connecticut on January 26, 1998, pursuant to which PDC – El Paso Milford LLC was formed, as a Connecticut limited liability company;

WHEREAS, Milford Power Company LLC filed a Certificate of Merger on December 11, 1998, whereby PDC – El Paso Milford LLC merged with and into Milford Power Company, LLC and the initial members of PDC – El Paso Milford LLC withdrew; and

WHEREAS, the Members desire to amend and restate the Original LLC Agreement and to set forth in this Agreement all of the terms and conditions applicable to the Company and the rights and obligations of the Members.

NOW, THEREFORE, in consideration of the premises and the mutual promises, and in consideration of the representations, warranties, and covenants contained in this Agreement, the Members agree as follows:

ARTICLE I
DEFINITIONS AND INTERPRETATIONS

1.1    Definitions - Unless otherwise provided to the contrary in this Agreement, capitalized terms in this Agreement shall have the meanings set forth in Section 1.1 of Exhibit A.

1.2    Interpretations - Unless expressly provided to the contrary in this Agreement, this Agreement shall be interpreted in accordance with the provisions set forth in Section 1.2 of Exhibit A.

ARTICLE II
FORMATION

2.1    Formation

    (a)    Organization - The Company was originally formed and organized as a Delaware limited liability company on December 11, 1998 by the filing by an authorized representative of the Company of a Certificate of Formation with the Secretary of the State of Delaware

under the name "Milford Power Company, LLC."

(b)  Member's Rights and Liabilities - The rights, privileges, liabilities and obligations of the Members shall be as provided in this Agreement to the extent permitted under the Act. it being understood that the Members intend to govern all of their rights and obligations in accordance with the terms set forth in this Agreement.

(c)  Qualification in Other Jurisdictions - Prior to transacting business in Connecticut or any jurisdiction other than the State of Delaware, the Company shall qualify to do business in Connecticut and any such other jurisdiction if such a procedure is required and provided by statute or regulation in such other jurisdiction. The Members (or where appropriate, an officer of the Company) shall execute and deliver such certificates and documents and perform such acts consistent with the terms of this Agreement as may be necessary to comply with the requirements of the assumed or fictitious name statutes and any other applicable law for the qualification and operation of a limited liability company in each jurisdiction in which the Company will conduct business.

2.2  Name - The name of the Company shall be MILFORD POWER COMPANY, LLC and all Company business shall be conducted in that name or such other names that comply with applicable law as the Members may select from time to time.

2.3  Offices - The office of the Company required by the Act to be in the State of Delaware shall be the office of the initial registered agent named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Members may designate from time to time in the manner provided by law. The registered agent of the Company in the State of Delaware shall be the initial registered agent named in the Certificate of Formation or such other Person(s) as the Members may designate from time to time in the manner provided by law. The principal place of business of the Company shall be at 300 Bic Drive, Milford, Connecticut or such other location as the Members shall designate from time to time. The Company shall maintain its books and records at the principal place of business of the Member Manager assigned responsibility for maintaining such books and records in accordance with the Member Management Agreements in accordance with Section 5.4. The Company may have such other offices as the Members may designate from time to time. Written notice of any change in the Company's principal place of business and the designation of any other offices of the Company shall be given to each Member.

2.4  Term - The Company commenced on December 11, 1998 and shall continue in existence until December 31, 2048, unless the Company is dissolved earlier in accordance with this Agreement or the Act.

2.5  Authorized Number of Units of Membership Interest - Subject to Section 6.4(b)(iii), the aggregate number of Units of Membership Interest that the Company is authorized to issue is 100. The following Units of Membership Interest that the Company issued at the time of the original formation of the Company and on the date of this Agreement are as follows:

| Member | Units of Membership Interest |
|---|---|
| El Paso I | 5 |
| El Paso II | 90 |
| PDC | 5 |

2

Each holder of a Unit of Membership Interest shall have the right to cast one vote for each percentage of Ownership Interest held by such holder on all matters upon which Members of the Company are entitled to vote.

## ARTICLE III
## PURPOSES AND POWERS OF THE COMPANY

3.1    Purposes of the Company - The purposes for which the Company is organized are:

(a)    to develop, design, construct, own, operate, maintain and manage a natural gas-fired combined cycle electric generation facility having a nominal capacity of approximately five hundred forty (540) megawatts to be located in Milford, Connecticut; and

(b)    to engage in such other lawful activities as may be related, incident or ancillary thereto for which limited liability companies may be organized under the Act, including, without limitation:

(i)    any actions or transactions relating to the generation and sale of electric power from the Plant;

(ii)    any actions or transactions relating to the purchase or other acquisition, sale or other disposition, of natural gas and other fuels as fuel supplies for the Plant;

(iii)    any actions or transactions relating to the design, engineering, procurement and construction of the Plant;

(iv)    any actions or transactions relating to the operation and maintenance of the Plant;

(v)    any actions or transactions relating to the financing of the costs of developing, constructing, owning and operating the Plant;

(vi)    any actions or transactions relating to the purchase, sale, development, maintenance, pledge or other disposition of any real, personal, moveable, immovable, or mixed properties or interests incidental to the Company's businesses;

(vii)    any transactions involving forward contracts, energy commodity futures and price swaps, collars or other derivative instruments incident to the foregoing businesses, and

(viii)    any other business or activity that now or hereafter may be necessary, incidental, proper, advisable, or convenient as determined by the Super-Majority in Interest of the Members to accomplish the purposes set forth above that is not prohibited by the law of the jurisdiction in which the Company engages in that business or activity; provided that the Company shall not engage in any business or activity that would cause the Company to be a "public utility company" or a "holding company" as such terms are used in the PUHCA.

3.2 <u>Powers of the Company</u> - The purposes of the Company set forth in Section 3.1 may be accomplished by taking any action permitted under the Act that is customary or directly related to the business of the Company. The Company shall possess and may exercise all powers and privileges necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the Company.

3.3 <u>Other Business Opportunities</u>  - The Members may engage, directly or indirectly, without the consent of any other Member or the Company, in other business ventures of any nature or description, independently or with others, including without limitation, businesses that may be competitive with or the same as or similar to the business of the Company. Each of the Members waives any rights it might otherwise have to share or participate in such other interests, businesses, opportunities, or ventures and in all income or profits that may be derived therefrom.

3.4 <u>Affiliate Transactions</u> - The Company will not enter into any agreement or arrangement with any Member or Affiliate, unless (a) there has been a full disclosure of the terms of such agreement or arrangement and the affiliation of the Members and (b) the terms of such agreement or arrangement are substantially equivalent to the terms that are available on an arms-length basis. The Members and the Company expressly agree that, with respect to the Member Management Agreements, the Fuel Purchase Agreement, the Power Marketing Agreement, the Fuel Subordination Agreement and any other agreements or documents contemplated by the Financing Agreements (i) the Members have complied with the disclosure requirements set forth in (a) above and (ii) the terms of such agreements comply with the standard set forth in (b) above.

### ARTICLE IV
### MEMBERSHIP

4.1 <u>Initial Members</u>  - The Members of the Company are El Paso I, El Paso II and PDC, each of which was admitted to the Company as a Member effective on the date of the filing of the Certificate of Formation. The name and principal office address of each initial Member is set forth in Section 15.2.

4.2 <u>Additional Members</u> - Additional parties may be admitted to the Company as Members and Units of Membership Interest may be issued to those parties and to existing Members on such terms and conditions as may be determined upon approval by all of the Members. In the case of an assignee of a Membership Interest, such assignee shall be admitted as a Member only upon the consent of all the Members in accordance with the provisions of Article IX; provided, however, that any assignment of a Membership Interest (including any associated Ownership Interest) shall be subject to the restrictions set forth in Article IX.

4.3 <u>Withdrawal</u> - Except as provided in Section 11.9, no Member has the right or power to resign or withdraw from the Company as a Member.

4.4 <u>No State-Law Partnership</u> - Except for federal and state tax purposes, the Members do not intend the Company to be a partnership, limited partnership or joint venture. No Member shall be a partner or joint venturer of any other Member solely on account of this Agreement and the transactions contemplated hereby, for any purpose other than federal and state tax purposes.

4.5 <u>Meetings of Members</u> - The following procedures and rules will apply with regard to the

meetings of the Members:

(a)  Quorum Requirements - A quorum shall be present at a meeting of Members if the holders of a Majority in Interest are represented at the meeting in person or by proxy. With respect to any matter, other than a matter for which the affirmative vote of the holders of a specified percentage of Members entitled to vote is required by this Agreement, the affirmative vote of a Majority in Interest at a meeting of Members at which a quorum is present shall be the act of the Members. With respect to any matter for which the affirmative vote of the holders of a specified percentage of Members is required by this Agreement, if the holders of at least such required specified percentage of Members is not present, then another meeting can be resumed on such matters no sooner than three (3) days from the date of the adjournment of the initial meeting. Upon resumption of the meeting on such matters, such matters may be transacted by the required percentage of Ownership Interests of those Members present or represented at the resumed meeting.

(b)  Location of Meetings of Members - All meetings of the Members shall be held at the principal place of business of the Company or at such other place within or without the State of Connecticut as shall be specified or fixed in the notices or waivers of notice thereof.

(c)  Adjournment of Meetings - Notwithstanding the other provisions of this Agreement, the Chairman of the Company or the holders of a Majority in Interest of the Members shall have the power to adjourn such meeting from time to time. If any meeting that is adjourned is resumed within a three (3) day period, then all of the Members shall be given notice of the time and place of the resumption of such meeting. Upon the resumption of such adjourned meeting, any business may be transacted that might have been transacted at the meeting as originally called.

(d)  Meetings of Members - The Members shall hold a Members meeting at least once each calendar Year. In addition, special meetings of the Members for any proper purpose or purposes may be called at any time by the holders of at least five percent (5%) of Ownership Interests prior to the Flip Point and at least ten percent (10%) of the Ownership Interests on and after the Flip Point. If not otherwise stated in or fixed in accordance with the remaining provisions of this Agreement, the record date for determining Members entitled to call a special meeting is the date of the notice of that meeting.

(e)  Notice of Meetings of Members - Written or printed notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting, either personally or by mail by a nationally recognized overnight delivery service, by or at the direction of the Members or Person calling the meeting, to each Member entitled to vote at such meeting. Attendance by a Member at any meeting of the Company shall be deemed to constitute a waiver of notice unless such attendance is specifically for the purpose of objecting to the lack of notice and such objection is clearly stated by such Member or its representative.

(f)  Record Date - The date of the notice of a meeting of Members shall be the record date for

BUSDOCS:728102.1

5

the determination of the Members entitled to notice of or to vote at such meeting, including any adjournment thereof.

4.6    Voting List - At least ten (10) days before each meeting of the Members, the Chairman shall make a complete list of the Members entitled to vote at such meeting or any adjournment thereof, arranged in alphabetical order, with the address of and the Units of Membership Interests (and associated Ownership Interests) held by each. For ten (10) days prior to such meeting, the list shall be kept on file at the registered office or principal place of business of the Company and shall be subject to inspection by any Member at any time during normal business hours and shall be produced in writing upon the request of any Member. The list shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any Member during the whole time of the meeting. The original membership records shall be prima-facie evidence as to who are the Members entitled to examine such list or transfer records or to vote at any meeting of Members. Failure to comply with the requirements of this Section shall not affect the validity of any action taken at the meeting.

4.7    Proxies - A Member may vote either in person or by proxy executed in writing by the Member. A telegram, telex, cablegram or similar transmission by the Member, or a photographic, photostatic, facsimile or similar reproduction of a writing executed by the Member shall be treated as an execution in writing for purposes of this Section 4.7. Proxies for use at any meeting of Members shall be filed with the Members, before or at the time of the meeting or execution of the written consent, as the case may be. All proxies shall be received and taken charge of and all ballots shall be received and canvassed by the Members, who shall decide all questions touching upon the qualification of voters, the validity of the proxies, and the acceptance or rejection of votes. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable and the proxy is coupled with an interest. Should a proxy designate two or more Persons to act as proxies, unless that instrument shall provide to the contrary, a majority of such Persons present at any meeting at which their powers are to be exercised shall have and may exercise all the powers of voting or giving consents thereby conferred, or if only one be present, then such powers may be exercised by that one; or, if an even number attend and a majority do not agree on any particular issue, the Company shall not be required to recognize such proxy with respect to such issue if such proxy does not specify how the Ownership Interests that are the subject of such proxy are to be voted with respect to such issue.

4.8    Conduct of Meetings - All meetings of the Members shall be presided over by the Chairman of the Company. The nominee of the Member with the largest Ownership Interest shall be designated as the Chairman for so long as it owns the largest Ownership Interest in the Company. The Chairman of any meeting of Members shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him in order; provided that the Chairman shall conduct meetings of the Members in accordance with such rules of procedure as shall be agreed upon by the Members attending such meetings. The Chairman shall not have any additional vote by virtue of his capacity as Chairman.

4.9    Action by Written Consent or Telephone Conference

   (a)    Written Consent - Any action required by or permitted to be taken at any annual or

6

special meeting of Members or otherwise in accordance with the provisions of this Agreement may be taken without a meeting, without prior notice, and without a vote if the holders of not less than the minimum Ownership Interests that would be necessary to take the action consent in writing; provided, however, that all actions contemplated by Sections 5.2(a) and (b) must be presented to all of the Members with the same period of notice as is required pursuant to Section 4.5(e). A telegram, telex, cablegram or similar transmission by a Member, shall be regarded as a signed consent by the Member for purposes of this Section 4.9(a). Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent to the actions shall be given to the Members that did not provide their consent.

(b)   Record Date - The record date for determining Members entitled to consent to an action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Members.

(c)   Documents - If any action by Members is taken by written consent, then any documents filed with the Secretary of State of Delaware as a result of the taking of the action shall state. in lieu of any statement required by the Act concerning any vote of Members, that written notice required by the Act has been given.

(d)   Meetings of Members by Telephone - Members may participate in and hold a meeting by means of conference telephone or similar communications equipment by means of which all Persons participating in the meeting can simultaneously hear or otherwise communicate with each other. Participation in such a meeting shall constitute attendance and presence in person at such meeting. except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened and such objection is clearly stated.

4.10   Preemptive Rights - Except as set forth in Section 6.4(b)(iii) of this Agreement, the Members shall not have a preemptive right to acquire additional, unissued or treasury Units of Membership Interest of the Company or securities of the Company, convertible into or carrying a right to subscribe to acquire Units of Membership Interest.

## ARTICLE V
## MANAGEMENT OF COMPANY

5.1   Management by Members - The business and affairs of the Company shall be managed by the Members in accordance with the terms of this Agreement. Subject to the provisions of Section 5.2, the Members shall have authority to make all decisions with respect to the overall management. supervision and control of, and the determination of all matters relating to, the development. construction, ownership and operation of the Plant, except where such decision-making power may be delegated in a writing entered into in accordance with the terms of this Agreement to (a) committees in accordance with Section 5.3, (b) El Paso II and Power Development Company, LLC pursuant to a Member Management Agreement and a Service Agreement, respectively, in accordance with Section 5.4, (c) any officers that may be appointed in accordance with Section 5.5, (d) the Fuel Manager pursuant to the Fuel Purchase Agreement in accordance with Section 5.6, (e) the Power Marketer pursuant to the Power Marketing Agreement in accordance with Section 5.7, or (f) any other body or representative by the vote of the Members.

5.2    <u>Member Decisions</u> - All matters requiring the approval or consent of the Members shall require the level of votes by the Members as set forth below:

    (a)    <u>Actions Requiring Unanimous Consent</u> - A Member, committee, management personnel or any other agent, representative or employee of the Company shall not have the power or authority, and may not cause the Company, to do any of the following without obtaining the unanimous approval of the Members:

        (i)    sell, lease, exchange or otherwise dispose of all or substantially all of the Company's property and assets in a single transaction or series of related transactions;

        (ii)    except as described in Section 2.1, cause the Company to be a party to (A) a merger or consolidation, or (B) an exchange or acquisition of the type described in Section 18-209 of the Act;

        (iii)    except as expressly provided in this Agreement, amend or restate the Certificate of Formation or this Agreement;

        (iv)    change, or authorize a transaction, agreement or action of the Company that is unrelated to, the scope or nature of the Company's business purpose as set forth in Section 3.1;

        (v)    cause the Company to repurchase Units of Membership Interest or, except as set forth herein, issue additional Units of Membership Interest;

        (vi)    cause the Company to accept the resignation of a Member;

        (vii)    cause the Company to make an assignment for the benefit of creditors of the Company, file a voluntary petition in bankruptcy, appoint a receiver for the Company or agree to voluntarily dissolve the Company;

        (viii)    cause the Company to enter into the Financing Agreements with the Lenders or any refinancing of such agreements that would have an adverse impact on the net present value of the future cash flows of the Company or any of its Members, discounted at 12% per annum or any other material adverse impact to the Company or any of its Members;

        (ix)    cause the Company to provide a notice to proceed under the EPC Contract;

        (x)    change the location of the principal place of business of the Company to a place outside of the United States; or

        (xi)    any other action that requires the consent of all the Members by the express terms of this Agreement.

    (b)    <u>Actions Requiring Super-Majority in Interest Consent</u> - The approval by a Super-Majority in Interest of the Members or the representatives of the committee to which such

8

BUSDOCS:728102.1

matters may be delegated shall be required before any of the following acts involving the Company may be taken:

(i)     entering into, or amending, modifying, or terminating, an agreement involving aggregate consideration (including assumed actual and contingent liabilities) or receipts, or delivery or receipt of goods or services having a value, in excess of $2,000,000 per year (other than the Member Management Agreements, Fuel Purchase Agreement or Power Marketing Agreement);

(ii)    approving, adopting and amending written Company operating procedures (the "Operating Policy"), which Operating Policy shall be approved and adopted within forty-five (45) days of the execution of this Agreement, addressing, among other areas, procedures for the execution and approval of agreements binding the Company (including specific authority level of Members, officers, and Company employees), that may be used in connection with its businesses, procedures for the execution and approval of agreements between the Company and Members, Affiliates, officers, and/or Company employees, tax recording and accounting procedures, retention and audit policies;

(iii)   approving a capital budget (the "Capital Budget") for each Fiscal Year, which shall not be exceeded without the express consent of a Super-Majority in Interest of the Construction Committee (except with respect to capital expenditures of less than the greater of $2,000,000 or 5% of an individual line item contained in the Capital Budget or as otherwise provided in the Financing Agreements);

(iv)    making any capital expenditure in excess of $2,000,000, unless such expenditure is reflected in a capital budget for the current Fiscal Year that has been approved by the Members;

(v)     approving and amending an annual business plan for the Company;

(vi)    approving an operating budget for costs other than fuel costs (the "Operating Budget") for each Fiscal Year, which shall not be exceeded without the express consent of a Super-Majority in Interest of the Operations Committee (except with respect to operating expenditures of less than the greater of $1,000,000 or 5% of the an individual line item contained in the Operating Budget or as otherwise provided in the Financing Agreements);

(vii)   providing for the indemnification of any Officer, employee, agent or any other Person except as specifically provided in this Agreement or in the Member Management Agreement with El Paso II or the Service Agreement with Power Development Company, LLC;

(viii)  revaluing any property or asset, where such revaluation is for an amount in excess of $2,000,000;

(ix)    taking action that will result in any Company property being burdened by a lien or other encumbrance in excess of $2,000,000, other than the lien under Fuel Subordination Agreement;

(x)    entering into, amending or terminating any contract or commitment to acquire or transfer any asset, the fair market value or aggregate consideration (including assumed actual and contingent liabilities) of which exceeds $2,000,000;

(xi)    approving the distribution of Company property to Members in accordance with Article VII;

(xii)    executing or otherwise entering into, or amending, modifying, or terminating, any agreement with a Member, officer or employee of the Company, an Affiliate of a Member, or a person related by blood or marriage to an Officer or employee of the Company, involving aggregate consideration (including assumed actual and contingent liabilities) or fair market value or actual or contingent liability in excess of $500,000, except that this Section 5.1(c)(xii) shall not apply to the Member Management Agreements, Fuel Purchase Agreement or the Power Marketing Agreement;

(xiii)    (A) filing any claim or lawsuit against any third party in an amount claimed in excess of $500,000, or (B) settling any claim or lawsuit where the fair market value of the settlement amount exceeds $500,000;

(xiv)    incurring any Company indebtedness for borrowed money in excess of $2,000,000;

(xv)    authorizing the acquisition by the Company of the assets of another entity as a going concern in an amount in excess of $2,000,000;

(xvi)    subject to any requirements of the Lenders under the Financing Agreements, establishing any reserves of the Company in excess of $4,000,000;

(xvii)    causing the Company to change its name; or

(xviii)    establishing any committee pursuant to Section 5.2, subject to the limitations set forth herein, or delegating any authority to any such committee.

(c)    <u>Majority in Interest</u> - The approval by a Majority in Interest of the Members or the representatives of the committee to which such matters may be delegated shall be required for all other matters not set forth in Sections 5.2(a) and (b) above.

5.3    <u>Committees</u> - The Members hereby establish (a) a Construction Committee to provide oversight over the construction of the Plant, (b) an Operations Committee to provide oversight over the operations of the Plant, (c) a Commercial Committee to provide oversight over the key commercial issues and contracts affecting the Company. The Members may, by unanimous consent, establish other committees after the date of execution of this Agreement. Unless otherwise agreed to by the Members, each such committee shall be comprised of one representative of each Member ("Committee Representative"), designated by such Member by written notice to each other Member. Each Member shall have the right to designate one or more alternate Committee Representatives to act in the place of the designated Committee Representative, if such Member's designated Committee Representative is or becomes

10

unavailable to act on behalf of such Member. Any Member may at any time, by written notice to each other Member, remove its Committee Representative or alternate and designate a new Committee Representative or alternate. The term "Committee Representative," as used in this Agreement, includes an alternate Committee Representative if the designated Committee Representative is unavailable to act on behalf of a Member. Each Committee Representative may vote in person or by proxy. Each Committee Representative shall be fully empowered to act on behalf of the Member he, she or it represents with respect to all matters brought before the Committee affecting the Company, its business or affairs. Unless otherwise agreed to by all of the Members, a Committee Representative shall either be an officer, director, employee of a Member or its Affiliates. Each Committee shall meet upon the request of any representative serving on such Committee and upon the request of any Member. The provisions of Sections 4.5, 4.6, 4.7, 4.8 and 4.9 shall apply with regard to the meetings and votes of the Committee Representatives as if such Committee Representatives were Members and as if each duly convened meeting of a Committee at which a quorum is present were a meeting of the Members with respect to the subject matter delegated to such Committee.

    (a)    <u>Construction Committee</u> - The Construction Committee shall provide oversight and direction to the Member designated responsibilities as owners' engineer under the Member Management Agreement pursuant to Section 5.4 and to the EPC Contractor associated with the construction activities of the Company. This shall include the review and approval of matters submitted by the relevant Member to the committee, including the review and approval of (i) construction budgets, (ii) final engineering design and specifications for said facilities, unless otherwise previously approved by the Members, (iii) the bids for and the contracts with third party suppliers, contractors and subcontractors, (iv) establishment of procedures for the testing, start up and commissioning of the Plant and (v) execution of an agreements associated with the acquisition of the necessary rights-of-way or land for the Plant.

    (b)    <u>Operations Committee</u> - The Operations Committee shall provide oversight and direction to the O&M Operator associated with the operation, maintenance and repair of the Plant. This shall include the review and approval of matters submitted by the O&M Operator to the committee, including the review and approval of (i) operations budgets, and (ii) any repair of the Plant, unless otherwise previously approved by the Members; and

    (c)    <u>Commercial Committee</u> - The Commercial Committee shall provide oversight and direction to the Fuel Manager and the Power Marketer associated with the key commercial issues and contracts affecting the Company. The Commercial Committee shall, from time to time, provide written guidance and authorization to the Fuel Supplier and the Power Marketer as to the general plan to sell and transport natural gas supplies to the Company and to purchase the electric output of the Plant from the Company. The Commercial Committee shall prescribe general contract guidelines and terms for routine contracts not involving long term commitments or serious financial exposure.

5.4    <u>Member Management and Service Agreements</u> - The Company has entered into a Member Management Agreement with El Paso II and a Service Agreement with Power Development Company, LLC that are attached as Exhibit B to this Agreement.

5.5    <u>Management by Officers</u> - The Members may establish such management positions of the Company as they shall deem appropriate from time to time. Any officers so designated shall

have such authority and perform such duties as provided in this Agreement or as the Members may. from time to time, delegate to them. The initial officer of the Company shall consist of a general manager. Unless delegated otherwise by the Members and subject to the control of the Members and the Members in accordance with the Member Management Agreement and the contractor under the Service Agreement, the general manager shall have the responsibility for the general supervision of the employees of the Company, the general direction of the operational affairs of the Company (including without limitation the direction of the O&M Contractor) and the responsibility for the day-to-day affairs, business, administration and operations of the Company (including without limitation the discretionary authority to take any action or enter into any transaction, agreement or arrangement on behalf of the Company to be taken or entered into in the ordinary course of business of the Company, except to the extent that such action or transaction is of the type that would otherwise require the approval of the Members, the Committees. the Members pursuant to the Member Management Agreements, the Fuel Manager, the Power Marketer, or any other body or representative established by the Members in accordance with this Agreement. The general manager may sign and execute in the name of the Company (a) all contracts or other instruments authorized by the Members, the Members pursuant to the Member Management Agreements or delegated representatives in accordance with this Agreement or (b) all contracts or instruments in the usual and regular course of business, except in cases when the signing and execution thereof shall be expressly delegated or permitted by the Members or by this Agreement to some other representative. In addition, the general manager shall perform all duties incident to the office of the chief executive officer of a Company and such other duties as from time to time may be assigned to him by the Members. The Members may establish such other officer positions and when establishing such other positions, the Members will expressly state what authority is delegated to such officers. The salaries or other compensation of the officers shall be fixed from time to time by the Members.

5.6    Fuel Marketer - The Company and El Paso Gas Marketing Company ("EPGM") have entered into on the date of execution of this Agreement a Fuel Purchase Agreement, pursuant to which EPGM shall sell natural gas and fuel oil as a source of fuel for the Plant.

5.7    Power Marketer - The Company and El Paso Power Services Company ("EPPS") have entered into on the date of execution of this Agreement a Power Marketing Agreement, pursuant to which EPPS shall manage the purchase, sale and transmission of the electrical output of the Plant (or any futures contract or derivative contract relating to electricity).

## ARTICLE VI
## CAPITAL CONTRIBUTIONS

6.1    Capital Accounts - A "Capital Account" shall be established for each Member, which shall, for avoidance of doubt, be used to allocate distributions to the Members in accordance with Section 704(b) of the Code. In this regard, a Member's Capital Account shall be adjusted and maintained in the following manner:

(a)    To each Member's Capital Account there shall be credited the amount of cash and the value as determined by all of the Members of any asset contributed to the Company by such Member, such Member's distributive share of Profits, any items in the nature of income or gain which are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b) of this

12

Agreement, and the amount of any Company liabilities assumed by such Member or which are secured by any asset of the Company distributed to such Member.

(b) To each Member's Capital Account there shall be debited the amount of cash and the value as determined by all of the Members of any Company asset distributed to such Member pursuant to any provision of this Agreement, such Member's distributive share of Losses, any items in the nature of expenses or losses which are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b), and the amount of any liabilities of such Member assumed by the Company or which are secured by any asset contributed by such Member to the Company.

(c) In the event that all or a portion of a Membership Interest in the Company is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent that it relates to the transferred interest in the Company.

(d) In determining the amount of any liability for purposes of this definition of Capital Accounts, there shall be taken into account Section 752(c) of the Code and any other applicable provisions of the Code and regulations.

Solely for accounting and financial reporting purposes, the Capital Accounts shall be maintained in accordance with GAAP and in accordance with Section 704(b) of the Code.

6.2    Capital Contributions - The Members shall make or be deemed to have made the following Capital Contributions to the Company:

(a) Capital Contributions for the Construction of the Plant - Pursuant to the Financing Agreements. the Lenders will provide the Company (a) an equity bridge loan of $78.75 million ("Equity Bridge Loan") and a non-recourse construction loan of $271.25 million. Such loans will convert into a $271.25 million term non-recourse loan at commencement of commercial operations of the Plant and El Paso II (and any successor to its interest in accordance with this Agreement) will make cash capital contributions to the Company as are required from time to time pursuant to the Financing Agreements to repay the Equity Bridge Loan; provided that El Paso II or its successors shall not be obligated to contribute in excess of $78.75 million or such higher amount as the Parties may mutually agree associated with its equity contribution required by the Financing Agreements ("Equity Contribution") and neither PDC nor El Paso I shall be obligated to contribute any capital to the Company pursuant to this subsection (a). The Capital Accounts of El Paso II or its successors shall be credited with the full amount of any cash contributions made in accordance with this Section 6.2(a).

(b) Additional Capital Contributions - If the Members, pursuant to Section 5.2, determine that additional capital is required following the contribution of the Equity Contribution and the available funds are drawn under the Financing Agreements which are necessary to either (i) complete the construction of the Plant and to place it into commercial operation in excess of the amounts provided in Section 6.2(a), or (ii) repair, perform a major overhaul, replace facilities of the Plant or other capital costs following the placement of the Plant into commercial operation, then the Members shall use commercially reasonable efforts to finance such additional capital requirements from

13

third party sources. To the extent that there is a shortfall in the funds available from such third party sources (with such shortfall referred to as the "Additional Capital Contributions"), then the Chairman in accordance with the determination of the Members pursuant to Section 5.2 shall give written notice to the Members stating: (i) the aggregate amount of the Additional Capital Contributions that are required, (ii) the purpose or purposes for which such Additional Capital Contributions are proposed to be used, (iii) the portion of such Additional Capital Contribution that are required to be contributed by each Member based upon each Member's Ownership Interest, and (iv) the date on which the Additional Capital Contribution must be made, which shall be not less than the earlier of (A) ninety (90) days from the giving of such notice or (B) the date the expenditure associated with the Additional Capital Contribution must be incurred to avoid an adverse impact on the Project.

6.3    Ownership Interests - Subject to the provisions of this Agreement, the interests of the Members in the profits, gains and losses of the Company ("Ownership Interests") shall be as follows:

(a)    Initial Ownership Interests - The initial Ownership Interests of the Members in the Company shall be as follows:

| El Paso I | 5% |
| El Paso II | 90% |
| PDC | 5% |

(b)    Revision of Ownership Interests Following the Flip Point - From and after the occurrence of the Flip Point, the Ownership Interests of the Members shall be as follows:

| El Paso I | 60% |
| El Paso II | 10% |
| PDC | 30% |

(c)    Flip Point - The Flip Point shall occur at the point which the Discounted Distributions and Allocations equals the Discounted Contributions. For purposes of this section, "Discounted Distributions and Allocations" shall mean the discounted sum of (i) distributions made to El Paso II and its successors pursuant to Section 7.1 or Section 11.7, less (ii) allocations of Profit made to El Paso II and its successors pursuant to Section 7.2(a) (including any amounts that are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b) and specifically excluding any Profit exempt from taxes) multiplied by the Corporate Tax Rate, plus (iii) allocations of Losses made to El Paso II and its successors pursuant to Section 7.2(b) (including any amounts that are specially allocated pursuant to Sections 7.2, 7.3 or 8.5(b)) multiplied by the Corporate Tax Rate, with such amounts discounted at a rate of fifteen percent (15%) per annum from the date such amounts are distributed or allocated in accordance with this Agreement back to the date of the initial Capital Contribution by El Paso II or its successors. For avoidance of doubt, "Discounted Distributions and Allocations" shall include distributions and allocations associated with the sale or liquidation of the Company or sale of all or substantially all of the assets of the Company, including without limitation, liquidations pursuant to Section 11.7, up to that portion of such proceeds from such sale or liquidation of the Company or all or substantially all of the assets of the Company that cause the Flip Point to occur. In addition, for purposes of this section, "Discounted Distributions and Allocations" shall

14

also mean distributions and allocations associated with the simultaneous sale of all of the Membership Interests or Ownership Interests in the Company, where the sale of all of such Membership Interests or Ownership Interests are sold at the same per unit price and the sale of such Membership Interests or Ownership Interests is the substantial equivalent of the sale of the Company or all or substantially all of the assets of the Company. For purposes of this section, "Discounted Contributions" shall mean the discounted sum of all of the Capital Contributions made by El Paso II and its successors to the Company, with such contributions being discounted at a rate of fifteen percent (15%) per annum from the date such amounts are contributed back to the date of the initial Capital Contribution. The occurrence of the Flip Point shall not result in any adjustment to the Member's Capital Accounts or entitle any Member to the then existing Capital Account balance of any other Member. For avoidance of doubt, if at the Conversion Date there remains any Project Savings (as those terms are defined in the Financing Agreements), then the Capital Contributions required to be made by El Paso II to the Company shall be reduced in an amount equal to the Project Savings, which are available to be distributed to the Company pursuant to the Financing Agreements. The sum of (a) the Capital Contributions actually made by El Paso II (after taking into consideration the reduction in its capital contributions pursuant to the preceding sentence) and (b) any contingent equity contribution obligations of El Paso II or its Affiliates under the Financing Agreements that have been paid on or before the Flip Date shall be used in the calculation of the Flip Date pursuant to this Section 6.3(e).

6.4    Consequences of Default in the Payment of Capital Contributions

(a)    Mandatory Capital Contribution - If El Paso II or its successors shall default in the performance of its obligations to make Capital Contributions to the Company, including all or any portion of the Equity Contribution, as and when required by Section 6.2(b) (a "Defaulting Member"), then at the expiration of ten (10) days after written notice of such default is sent by the Company or any Nondefaulting Member and such notice is received by the Defaulting Member (with copies of such notice to all other Members), if the default is not cured, then the Nondefaulting Members shall have the right, but not the obligation to exercise their rights pursuant to Article XI of this Agreement. From and after such termination, the Defaulting Members shall have no further rights under this Agreement, except that the Non-defaulting Member shall pay the Defaulting Member any unreimbursed development costs incurred by such Defaulting Member that may be recovered from Lenders under the Financing Agreements, any subsequent financial arrangements or from available cash flows received from the Company or any of the Nondefaulting Members from the operation of the Plant in accordance with the terms of the Joint Development Agreement. The right of the Nondefaulting Members to exercise their rights pursuant to Article XI of this Agreement in accordance with this section shall be the sole and exclusive remedy for the failure of the Defaulting Member to make Capital Contributions to the Company as and when required by Section 6.2(a).

(b)    Additional Capital Contributions - If a Member fails to provide when due the whole or any part of its share of the Additional Capital Contributions ("Unpaid Contribution") in accordance with Section 6.2(b) (a "Non-Contributing Member"), then the sole remedy of the Company and each other Member (a "Contributing Member") shall be as follows:

(i)    the Company shall immediately give notice (a "Contribution Notice") to each

Non-Contributing Member of the failure to pay its Unpaid Contribution in accordance with Section 6.2(b);

(ii)    within five (5) days of receipt of a Contribution Notice each Non-Contributing Member shall provide written notice to the Company and each Contributing Member stating whether it intends to pay the Unpaid Contribution. If there is more than one Non-Contributing Member, each Non-Contributing Member shall provide written notice of whether it intends to pay the portion of the Unpaid Contribution equal to the amount of the Unpaid Contribution times a fraction, the numerator of which is the Ownership Interest of the Non-Contributing Member and the denominator of which is the Ownership Interest of all of the Non-Contributing Members in the same manner and form as was required with respect to the relevant Unpaid Amount.

(iii)   if the Non-Contributing Member (A) does not provide written notice that it intends to pay the Unpaid Contribution, (B) provides written notice that it does not intend to pay the Unpaid Contribution or (C) fails to contribute the Unpaid Amount when due, then each Contributing Member shall have the right, but not the obligation, to pay (on a pro rata basis based upon their relative Ownership Interests) all or part of the Unpaid Contribution of the Non-Contributing Member. The Company shall issue additional Units of Membership Interest to the Contributing Members making such additional capital contributions such that the Ownership Interests of each of the Members shall be adjusted in proportion to the aggregate Capital Accounts of all Members after such additional Capital Contributions have been made. In the event that compliance with this Section 6.4(b)(iii) requires the Company to issue Units of Membership Interest in excess of that which the Company is expressly authorized to issue under the terms of this Agreement, the number of Units of Membership Interest shall automatically be amended and increased, without further action by or notice to any party, to the number necessary to allow the Units of Membership Interest of the Contributing Members making such additional Capital Contributions to be increased in accordance with this Section 6.4(b)(iii).

6.5    Return of Capital - No Member shall have any personal liability for the repayment of the Capital Contributions of any other Member. No Member shall be entitled to the withdrawal or return of its Capital Contributions except to the extent, if any, that distributions made pursuant to this Agreement or upon the dissolution of the Company may be considered as such by operation of law, and then only to the extent provided for in this Agreement. Except as otherwise expressly set forth in this Agreement, no Member shall have priority over any other Member either as to the return of capital or as to profits, losses or distributions or be entitled to receive any interest on its Capital Contributions or to receive or demand any property from the Company other than cash.

## ARTICLE VII
## ALLOCATIONS AND DISTRIBUTIONS

7.1    Cash Distribution - Subject to Sections 18-607 and 18-804 of the Act, the Company shall distribute to the Members its available cash on hand (including without limitation available cash from a sale of property of the Company, proceeds available from refinancings and proceeds from

the issuance of additional Membership Interests) after payment of all expenses and liabilities of the Company then due and payable to third parties and after establishment of such reserves as provided for under the Financing Agreements or as the Members shall otherwise determine (the "Available Cash") within forty-five (45) days of the end of each calendar quarter. Subject to the review and approval of the Members, the Tax Matters Member (defined in Section 8.11) shall determine whether such distributions represent profits, or return of Capital Contributions and shall advise in writing each Member of such determination. The Available Cash shall be distributed to the Members in proportion to their respective Ownership Interests.

7.2    <u>Allocations of Profits and Losses</u> - Subject to any special allocations required by IRS Regulations Sections 1.704-2(b), 1.704-2(i), and 1.704-2(j)(2)(ii), relating to deductions and gains attributable to Nonrecourse Deductions and Partner Nonrecourse Deductions (as those terms are defined in such Regulations), the Company's items of income, gain, loss, deduction and credit shall be allocated among the Members in each taxable year (or portion thereof) in the same ratio in which Profits and Losses are allocated as provided below:

(a)    Profits for any taxable year (or portion thereof) shall be allocated in the same ratio as the Members are entitled to distributions from the Company under Section 7.1 of this Agreement.

(b)    Losses for any taxable year (or portion thereof) shall be allocated among the Members in proportion to their respective Ownership Interests for such taxable year (or portion thereof).

(c)    As used in this Agreement, "Profits" and "Losses" mean, for each taxable year or other period, an amount equal to the Company's taxable income or loss for such year or period, determined in accordance with Section 703(a) of the Code (for this purpose, all items of income, gain, loss and deduction required to be stated separately pursuant to Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(i)    Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits and Losses shall be added to such income or loss for the purpose of determining the Members' Capital Accounts;

(ii)   Any expenditures of the Company described in Section 705(a)(2)(B) of the Code (or treated as such expenditures pursuant to IRS Regulations Section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Profits and Losses shall be subtracted from such income or loss for the purpose of determining the Members' Capital Accounts;

(iii)  In the event that the Gross Asset Value of any Company asset is adjusted as required by the terms of the definition of Gross Asset Value of this Agreement, the amount of such adjusted Gross Asset Value shall be taken into account in accordance with IRS Regulation Section 1.704-2(b) for the purpose of determining the Members' Capital Accounts;

(iv)   Gain or loss resulting from the disposition of Company assets with respect to which gain or loss is recognized for federal income tax purposes shall be

BUSDOCS:728102.1                                            17

computed by reference to the Gross Asset Value of the property disposed of in accordance with IRS Regulation Section 1.704-1(b) for the purpose of determining the Members' Capital Accounts, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(v) In lieu of the depreciation, amortization or other cost recovery deductions taken into account in computing such taxable income or loss, for the purpose of determining the Members' Capital Accounts there shall be taken into account Depreciation for such taxable year or other period, computed in accordance with the definition of Depreciation in this Agreement; and

(vi) Notwithstanding any other provision of this definition of Profits and Losses, any items which are specially allocated pursuant to Sections 7.4 or 8.5(b) shall not be taken into account in computing Profits and Losses but shall be taken into account in computing the Members' Capital Accounts.

(d) As used in this Agreement, "Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(i) The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by the contributing Member and the other Members;

(ii) The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by all of the Members, as of the following times: (a) the acquisition of any additional interest in the Company in exchange for more than a de minimis Capital Contribution, (b) the distribution by the Company to a Member of more than a de minimis amount of Company assets as consideration for an interest in the Company, and (c) the liquidation of the Company within the meaning of IRS Regulation Section 1.704-1(b)(2)(ii)(g); provided, however, that adjustments pursuant to Clauses (a) and (b) of this Section shall be made only with the consent of all the Members;

(iii) The Gross Asset Value of any Company asset distributed to any Member shall be the gross fair market value of such asset on the date of distribution, as determined by the Company; and

(iv) The Gross Asset Value of Company assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Sections 734(b) or 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to IRS Regulations Section 1.704-1(b)(2)(iv)(m) and Section 6.1.

As used in this Agreement, "Depreciation" means, for each taxable year, or other period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to any asset for such year or other period, except that if the Gross Asset Value of an asset differs form its adjusted basis for federal income tax purposes as the beginning of such year or other period, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax

18

depreciation. amortization, or other cost recovery deduction for such year or other period bears to such beginning adjusted basis; provided, however, that if the federal income tax depreciation, amortization, or other cost recovery deduction for such year or other period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Company.

7.3    Curative Amendment - Notwithstanding any other provision of this Agreement, the allocations in this Agreement shall effect an allocation for federal income tax purposes in a manner consistent with Section 704(b) of the Code and the regulations promulgated thereunder. If for any reason the allocations conflict with the regulations under Section 704(b) of the Code, the Tax Matters Member may amend these provisions to the extent necessary to reflect allocations consistent with the regulations as long as they do not alter any policies approved pursuant to Section 5.2(b)(ii), the Member's Ownership Interests or interests in cash distributions as established in this Agreement.

7.4    Section 704(c) - In accordance with Section 704(c) of the Code and the regulations promulgated thereunder and IRS Regulation Section 1.704-1(b)(i), income, gain, loss and deductions with respect to any property with a Gross Asset Value which differs from its adjusted basis, shall, solely for tax purposes (and not for purposes of determining Capital Accounts under Section 6.1), be allocated among the Members so as to take account of any variation between the adjusted basis to the Company and its Gross Asset Value. The Members agree to use the traditional method with curative allocations under IRS Regulation Section 1.704-3(c) for this purpose.

7.5    Transfers - The allocation of items of income, gain, loss, deduction and credit attributable to a Membership Interest that is assigned during the taxable year will be done in accordance with Section 706(d) of the Code. If more than one method is permitted, the Tax Matters Member shall choose the method of allocation, taking into account the desire to match income and deductions and ease of administration. For this purpose, the transferor of a Membership Interest shall be treated as owning the transferred Membership Interest through the effective date of the transfer and shall be allocated all items of Company income, gain, loss, deduction and credit arising through the effective date of the transfer that are attributable to the transferred Membership Interest. A transferee of a Membership Interest shall succeed to a pro rata portion of the Capital Account of the transferor relating to the Membership Interest so transferred and any special allocations pursuant to Section 8.5(b) attributable to the Membership Interest transferred.

7.6    Withholdings - All amounts withheld pursuant to the Code or any provision of any state, local or foreign tax law with respect to any payment, distribution or allocation to the Company or the Members shall be treated as amounts paid or distributed, as the case may be, to the Members with respect to which such amounts were withheld pursuant to this Section 7.6 for all purposes of this Agreement. The Company is authorized to withhold from payments and distributions, or with respect to allocations to the Members, and to pay over to any federal, state and local government or any foreign government, any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law or any foreign law, and shall allocated any such amounts to the Members with respect to which such amounts were withheld.

## ARTICLE VIII
## ACCOUNTING AND TAXATION

8.1      <u>Fiscal Year</u> - The Fiscal Year of the Company shall be the calendar year. The first Fiscal Year of the Company commenced on December 11, 1998 and shall end on December 31, 1998.

8.2      <u>Location of Records; Inspection</u> - The books, records and accounts for the Company shall be kept and maintained at the principal office of the Member who is responsible for maintaining such books and records pursuant to the Member Management Agreement in accordance with Section 5.4 or at such other place as the Members may determine by a Super-Majority in Interest of the Members. Each Member, at its own expense, shall have the right and power to examine and inspect, or cause to be examined and inspected, at any and all reasonable times, the books, records and accounts of the Company and any tax returns prepared for the Company prior to the filing of such returns.

8.3      <u>Books of Account</u> - The books of account for the Company shall be (a) maintained by a Member pursuant to the Member Management Agreement entered into pursuant to Section 5.4 on an accrual basis in accordance with GAAP and (b) audited annually by a certified public accountant, which shall be PricewaterhouseCoopers or other public accounting firm acceptable to the Lenders for so long as the Company is indebted to Lenders pursuant to the Financing Agreements and, thereafter, such other public accounting firm agreed to by a vote of the Super-Majority in Interest of the Members. A copy of the annual audit shall be provided to all Members. An individual Member may request the auditor to provide it any additional reports that such Member may want generated for its own account and at its own cost.

8.4      <u>Financial Statements and Reports</u> - As soon as practicable following the end of each Fiscal Year and in any event within the time specified below or such other times as may be required by the Lenders, the Company shall cause the Member with responsibilities pursuant to the Member Management Agreements pursuant to Section 5.4, to prepare and deliver to each Member:

      (a)    Within forty-five (45) days following the end of each calendar quarter in each Fiscal Year, a report containing information regarding changes to the Capital Accounts of each Member during such Fiscal Year, including (i) the amount of Capital Contributions credited to each Member's Capital Account during such quarter, (ii) any distributions received by a Member during such quarter, and (iii) any items, such as income or loss from the Company's activities, allocated to each Member's Capital Account during such quarter;

      (b)    Within sixty (60) days following the end of such Fiscal Year (or such later time as the Members shall permit), a report containing information regarding changes to the Capital Account of each Member during such Fiscal Year, including (i) the amount of Capital Contributions credited to each Member's Capital Account during such Fiscal Year, (ii) any distributions received by a Member during such Fiscal Year under this Agreement, and (iii) any items, such as income or loss from the Company's activities, allocated to each Member's Capital Account during such Fiscal Year under this Agreement; and

      (c)    Such other reports and information reasonably requested by any Member having a Ownership Interest of 5% or more for the period prior to the Flip Point or 10% or more for the period on and after the Flip Point.

8.5      <u>Taxation</u>

BUSDOCS:728102.1

(a)     The Parties intend that the Company shall be treated as a partnership for federal, state and local income and other tax purposes. The Members agree to cooperate in the taking of all action, including the amendment of this Agreement and the execution of other documents, if required, to qualify for and receive such tax treatment. The Company shall make elections for income tax purposes and other taxes computed with respect to income which shall maximize and accelerate deductions, credits and losses and minimize and defer income and gains, unless otherwise determined by the Members, except those specifically reserved by the Code or applicable regulations to be made by the individual Members. The Company shall use discounted cash flow analysis, using the prime rate as published by The Chase Manhattan Bank N.A. as the discount rate in selecting the most appropriate tax election strategy or such other methodology as approved by a Super-Majority in Interest of the Members.

(b)     If for any Fiscal Year of the Company the allocation of any loss or deduction (net of any item of income or gain) to any Member would cause or increase a negative balance in such Member's Adjusted Capital Account as of the end of such Fiscal Year (a "Deficit Member") after taking into account the provisions of this Section 8.5(b), only the amount of such loss or deduction that reduces the balance to zero shall be allocated to such Deficit Member and the remaining loss or deduction shall be allocated to the other Members whose Adjusted Capital Accounts has a positive balance remaining at such time (the "Positive Member"). After any such allocation, any items of Company income or gain that would otherwise be allocated to the Deficit Member under this Agreement, other than pursuant to the succeeding sentence, shall be allocated instead to each Positive Member up to an amount equal to the Company loss or deduction allocated to each Positive Member (or which has been reflected in the Capital Account of a transferee Member) under the preceding sentence; provided, however, that no allocation of income or gain shall be made under this sentence if the effect of such allocation would be to cause the Adjusted Capital Account of a Deficit Member to be less than zero. If, after taking into account the allocation in the first sentence of this Section 8.5(b), the Adjusted Capital Account balance of a Deficit Member remains less than zero at the end of a Fiscal Year, a pro rata portion of each item of Company income or gain otherwise allocable to each Positive Member for such Fiscal Year (or if there is no such income or gain otherwise allocable to the Positive Member for such Fiscal Year, all such income or gain so allocable in the succeeding Fiscal Year or Years) under this Agreement shall be allocated to the Deficit Member in an amount necessary to cause its Adjusted Capital Account balance to equal zero; provided that no allocation under this sentence shall have the effect of causing any Positive Member's Adjusted Capital Account to be less than zero. After any such allocation, any items of Company income or gain that would otherwise be allocated to a Deficit Member for any Fiscal Year under this Agreement shall be allocated instead to each Positive Member until the amount of income or gain so allocated equals the amount of income or gain previously allocated to such Deficit Member under the preceding sentence of this Section 8.5(b); provided, however, that no allocation of gain shall be made under this sentence if the effect of such allocation would be to cause the Adjusted Capital Account of a Deficit Member to be less than zero. The provisions of this Section 8.5(b) are intended to constitute a "qualified income offset" within the meaning of IRS Regulation Sections 1.704-1(b)(2)(ii)(d).

(c)     Each Member shall be responsible for the discharge of its own income taxes and shall indemnify each other Member against and hold them harmless from any and all loss, cost

or liability arising therefrom.

8.6    <u>Tax Returns</u> - The Tax Matters Member shall prepare and file such federal and state partnership income tax returns and reports as may be required to report the operations of the Company. The Tax Matters Member shall use its best efforts in the preparation and filing of such returns; provided, however, that in so doing it shall incur no liability to any Member with regard to such returns in the absence of fraud, gross negligence or willful misconduct. The Tax Matters Member may, in addition to its own tax and accounting staffs and those of its affiliates, employ outside consultants to prepare such returns, the cost of which shall be borne by the Members in proportion to their Ownership Interests. The other Members shall cooperate with the Tax Matters Member in furnishing information necessary to prepare such returns and the Tax Matters Member shall provide the other Members with preliminary copies of such returns for review and approval in advance of their due date (as extended). A copy of all federal and state partnership income tax returns prepared and filed by the Tax Matters Member shall be provided to all Members.

8.7    <u>Other Reports</u> - The Member designated such responsibility pursuant to the Member Management Agreement entered into in accordance with Section 5.4 shall prepare and file all reports prescribed by any other commission or governmental agency having jurisdiction over the business or properties of the Company, the costs of which shall be paid by the Company.

8.8    <u>Inspection of Records</u> - Each Member shall have the right, individually at its own cost and expense, to audit the books and records of the Company; provided, however, the Members agree to coordinate any outside audits so that there will be no more than one such audit in any given Fiscal Year. Additionally, in the event that a governmental or regulatory authority having jurisdiction over a Member requires that such Member audit the Company's books, such Member shall be allowed to audit the Company's books to the extent required by such governmental or regulatory authority. In addition to the above, each Member shall have the right to inspect and copy at its own cost and expense, the books and records of the Company upon reasonable notice, during normal business hours.

8.9    <u>Deposit and Withdrawal of Funds</u> - Funds of the Company not needed, in the opinion of the Members, for the operation of the Company shall be deposited in a segregated account or accounts in the name of the Company that are maintained in one or more national or state banks or other depositories as shall be designated from time to time by the Company. Such funds may be withdrawn by properly authorized representatives as designated from time to time of the Members or pursuant to the Member Management Agreement entered into pursuant to Section 5.4. The Members shall not commingle funds of the Company with any other funds of the Members.

8.10    <u>Record Retention</u> - The Company shall cause all records that are required under this Agreement or under any other agreement entered into pursuant to this Agreement to be retained by the Company for such period of time as required by law, but in no event for less than seven (7) years.

8.11    <u>Company Level Tax Audits</u> - El Paso II is designated as the "Tax Matters Member" which shall have the same meaning as the "Tax Matters Partner" as defined in Section 6231(a)(7) of the Code. The general duties of the Tax Matters Member shall be to inform the other Members of all matters which shall come to its attention in its capacity as Tax Matters Member by giving the other Members notice thereof within 10 days after becoming so informed. In general, the Tax Matters Member shall not take any action contemplated by Sections 6221 through 6233 of the

22

Code unless it has first given the other Members notice of the contemplated action and received the unanimous consent of the Members to such contemplated action. This provision is not intended to authorize the Tax Matters Member to take any action which is left to the determination of an individual Member under Sections 6221 through 6223 of the Code. More specifically, the duties of the Tax Matters Member and all of the Members individually shall include, without limitation, the items enumerated in Sections 8.11(a) through 8.11(h) below:

(a)  The Members shall furnish the Tax Matters Member with such information including, without limitation, information specified in Section 6230(e) of the Code as it may reasonably request to permit it to provide the Internal Revenue Service with sufficient information to allow proper notice to the Members in accordance with Section 6223 of the Code. The Members shall also furnish to each other copies of all correspondence with the Internal Revenue Service or the Department of the Treasury regarding any aspect of "partnership items", as defined in Code Section 6221(a)(3), or the Company's tax return. The Tax Matters Member shall keep each Member informed of all administrative and judicial proceedings for the adjustment at the Company level of "partnership items" in accordance with Section 6223(g) of the Code.

(b)  The Members shall promptly notify the Tax Matters Member at least ten (10) days in advance of their treatment of any partnership item on their federal income tax return in a manner which is inconsistent with the treatment of that item on the Company's tax return.

(c)  The Tax Matters Member shall not enter into any extension of the period of limitations as provided under Section 6229 of the Code without first giving reasonable advance notice to all other Members of such intended action and obtaining their unanimous consent.

(d)  No Member shall file pursuant to Section 6227 of the Code, a request for an administrative adjustment of partnership items for any Company taxable year without first giving reasonable advance notice to all other Members. If all of the Members agree with the requested adjustment, the Tax Matters Member shall file the request for administrative adjustment on behalf of the Company. If unanimous consent is not obtained within thirty days, or within the period required to timely file the request for administrative adjustment, if shorter, any Member, including the Tax Matters Member, may file a request for administrative adjustment on its own behalf.

(e)  Any Member intending to file a petition under Code Sections 6226 and 6228, or other sections of the Code with respect to any partnership item, or other tax matters involving the Company, shall give reasonable advance notice to the other Members of such intention and the nature of the contemplated proceeding. In the case where the Tax Matters Member is the Member intending to file such petition, such notice shall be given within a reasonable time to allow the other Members to participate in the choosing of the forum in which such petition shall be filed. If the Members do not agree on the appropriate forum, then the appropriate forum shall be decided by a Majority in Interest of the Members. Each Member shall have a vote in accordance with its Ownership Interest. If a majority cannot agree, the Tax Matters Member shall choose the forum. If any Member intends to seek review of any court decision rendered as a result of a proceeding instituted under this Section 8.11(e), such Member shall notify all of the other Members of such intended action.

BUSDOCS:728102.1                                23

(f)     The Tax Matters Member shall not enter into settlement negotiations with respect to the tax treatment of partnership items without first giving reasonable advance notice of such intended action (including any proposal for settlement) to the other Members. The Tax Matters Member shall not bind any other Member to a settlement agreement without obtaining the written concurrence of any such Member who would be bound by such agreement. Unless prohibited, any other Member who enters into a settlement agreement with the Internal Revenue Service or the Secretary of the Treasury with respect to any partnership items shall notify the other Members of such settlement agreement within ninety days from the date of settlement.

(g)     The Tax Matters Member shall have the right to engage legal counsel, certified public accountants, or other assistance without the prior written consent of a majority of the Members with respect to Company level tax audits and contests. Any reasonable item of expense with respect to such matters, including but not limited to fees and expenses for legal counsel, certified public accountants, and other experts which the Tax Matters Member incurs in connection with any Company level audit, assessment, litigation, or other proceedings regarding any "partnership item," shall be borne by the Company.

(h)     The provisions of this Section 8.11, including but not limited to the obligation to pay fees and expenses contained in Section 8.11(g), shall survive the termination of the Company and the termination of any Membership Interest and shall remain binding for a period of time necessary to resolve with the Internal Revenue Service or the Department of Treasury any and all matters regarding the federal income taxation of the Company for the applicable tax year.

(i)     The provisions of this Section 8.11 shall extend to other taxes measured by or computed with respect to income to the extent rules similar to Code Sections 6221 through 6223 are applicable to such taxes (including state and local taxes).

## ARTICLE IX
## TRANSFER OR PLEDGE OF OWNERSHIP INTERESTS

9.1     Transfers or Pledges Generally - Subject to Sections 9.2, 9.3 and 9.4 and any applicable provisions in the Financing Agreements, a Member may not sell, assign, pledge, hypothecate or otherwise transfer all or any part of its Units of Membership Interest or its interest this Agreement to any third party (including, without limitation, an assignment by operation of law), without the prior written consent of the other Members, which shall not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary in this Agreement, it is expressly agreed that any Member may withhold its consent in its sole discretion with regard to any proposed sale, assignment or transfer of another Member's Unit of Membership Interest where the transferring Member proposes to sell, assign or transfer less than a ten percent (10%) Ownership Interest, except in the case of PDC prior to the Flip Point, less than all of its Units of Membership Interest.

9.2     Right of First Offer

(a)     Any Member (the "Transferring Member") that proposes to sell, transfer or assign all or part of its Membership Interest (the portion to be sold or otherwise disposed of referred to

24

BUSDOCS:728102.1

as the "Transferred Interest") shall provide written notice of such proposal to the other Member(s) (a "Notice of Proposed Transfer") specifying the Transferred Interest sought to be sold or otherwise transferred. Subject to Section 9.4, the Member(s), other than the Transferring Member, shall have a right, exercisable within 30 days of receipt of such written notice, to offer to purchase the Transferred Interest at a price specified in a written offer or its cash equivalent if the price offered is other than cash or a promissory note from such Member to the Transferring Member. Upon the earlier to occur of the expiration of such 30-day period or receipt of offers (or written notices electing not to make an offer) from all other Member(s), the Transferring Member shall notify each other Member whether any offers have been received, and if such offers have been received, the highest price offered by any Member that is acceptable to the Transferring Member. Each Member shall then have the right, exercisable within ten days of receipt of such notice by giving written notice to the Transferring Member and other Members, to participate in the highest offer on a pro rata basis (determined by dividing each such Member's Ownership Interest by the sum of the Ownership Interests of all of the Members desiring to participate in the highest offer).

(b)   In the event that one or more Members offers to purchase the entire Transferred Interest in accordance with the provisions of this Section 9.2, the Transferring Member shall be entitled, at its discretion, within the sixty (60) day period following the date of such last offer(s), to either (i) accept such offer(s) in accordance with the terms thereof, (ii) sell or convey the Transferred Interest to one or more third parties (subject to the other provisions of this Article IX) at a price in cash or its cash equivalent if the price offered is other than cash or a promissory note that is greater than the allocable price offered by the Members or (iii) subject to its right to reinstitute the procedures of this Section 9.2 at a later time, withdraw the Notice of Proposed Transfer and continue to hold the Transferred Interest. Any sale to a Member shall be promptly effectuated in accordance with the provisions of this Section 9.2(b). The closing of such purchase of the Transferred Interest shall occur at the principal place of business of the Company, or such other location mutually agreed by the Transferring Member and the transferee(s), on or before the sixtieth (60th) day after the acceptance of such offer (or if later, the fifth (5th) business day following the receipt of any applicable governmental authorizations). At the closing, (i) the Transferring Member shall execute and deliver to the transferee(s) (A) an assignment of the Transferred Interest, in form and substance reasonably acceptable to the transferee(s), containing a general warranty of title as to such Transferred Interest (including that such Transferred Interest is free and clear of all encumbrances, other than any lien in favor of the Lender under the Financing Agreements) and (B) and other instruments reasonably requested by the transferee(s) to give effect to the purchase and (ii) the transferee(s) shall deliver to the Transferring Member in immediately available funds the purchase price provided for in Section 9.2(a).

(c)   If the other Members do not offer to purchase the entire Transferred Interest after compliance with the procedures specified in Section 9.2(a) and Section 9.4, the Transferring Member, after obtaining the written consent of the other Member(s) in accordance with Section 9.4, shall be free to sell all (but not less than all) of the Transferred Interest to a third party for a purchase price in cash equal to or greater than the allocable price offered by the other Members in accordance with Section 9.2. If the Transferring Member does not consummate the sale of the Transferred Interest to the third party within sixty (60) days of the date on which the Transferring Member became

25

BUSDOCS:728102.1

entitled to do so (whether upon the other Members' failure to offer to purchase the entire Transferred Interest within 30 days of receipt of a Notice of Proposed Transfer or upon receipt of the last offer by the other Members), such sale shall once again be subject to the procedures set forth in this Section 9.2.

(d)    It is the intent of the Members that the procedures set forth in this Section 9.2 shall also apply to the issuance, sale or other transfer of the stock or other interest in any entity that, directly or indirectly, owns any Units of Membership Interest if such Units of Membership Interest comprise all or substantially all of the assets of such entity. In furtherance of such intent, the Members covenant to take whatever action may be necessary to cause this restriction to be incorporated into their respective constituent documents so as to be enforceable under applicable law and the Members agree that the transfer of shares in such an entity will constitute a transfer of the Units of Membership Interest for which the provisions of this Section shall apply. Notwithstanding any of the provisions of Sections 9.1 and 9.2 above, with regard to (i) transfers of stock or interests in PDC between existing members of PDC or their Affiliates as of the date of this Agreement or (ii) transfers of stock or interests in PDC to third parties that are not competitors of the Company or any of the other Members, PDC shall not be required to obtain the consent of the Members; provided that with regard to (ii) above, PDC shall be required to comply with the duty of first offer set forth in this Section 9.2

9.3    Permitted Transfers - Nothing in Sections 9.1 and 9.2 shall prevent, no consents or approvals of the other Members are required and no rights of first offers apply with regard to the following assignments or transfers:

(a)    an assignment by a Member of its Membership Interest in the Company to an Affiliate of such Member without the other Member's consent, provided that (i) the ultimate parent company of the assigning Member shall continue to own and control 50% or more of the outstanding securities of such Affiliate and (ii) the assigning Member remains personally obligated for its duties and obligations hereunder;

(b)    an assignment, pledge or other transfer creating a security interest to Lenders under the Financing Agreements or, to the extent not in conflict with the Financing Agreements, to any other financial institution or bona fide lender (and any transfer made in foreclosure or other enforcement of such security interest and admission in this Agreement) in all or any portion of a Member's right, title or interest in the Company for the purpose of securing indebtedness for borrowed money by the Company (and not to such Member); and

(c)    an assignment, sale or other transfer of up to 70% of the Membership Interest in the Company owned by El Paso I and/or El Paso II to a third party, subject to any required approvals of the Lenders pursuant to the Financing Agreements.

9.4    Requirements Applicable to All Dispositions and Admissions - In addition to the requirements set forth in Sections 9.1 and 9.2, the following documents must be delivered to the Members and must be satisfactory, in form and substance, to a Majority in Interest of the Members:

(a)    Ratification of this Agreement - An instrument, executed by the Transferring Member and its assignee, containing the assignee's ratification of this Agreement and its confirmation that the representations and warranties contained in this Agreement with

26

respect to the Transferring Member are also true and correct with respect to it;

(b)  Securities Law Opinion - Unless the Units of Membership Interest (or portion thereof) subject to the sale or transfer are registered under the Securities Act and any applicable state securities law, a favorable opinion of the Company's legal counsel, or of other legal counsel acceptable to a Majority in Interest of the Members, to the effect that the sale or transfer (and admission, if applicable) is being made pursuant to a valid exemption from registration under those laws and in accordance with those laws;

(c)  Restrictions on Sale of Interests in a Member - The Company must receive a favorable opinion of the Company's legal counsel or legal counsel acceptable to a Majority in Interest of the Members, to the effect that the sale or transfer would not re⋅⋅⋅⋅ ⋅⋅ the Company's being considered to have been terminated within the meaning of Code Section 708.

Such transfer, disposition or admission of the new Member, if applicable, shall not be effective unless such requirements are complied with; provided, however, that the Members, acting unanimously and in their sole discretion, may waive any of such requirements.

9.5  Prohibited Transfers Null and Void - Any transfer by a Member of its Membership Interest in the Company in violation of the terms of this Agreement shall not be recognized and shall be deemed null and void. Any purported sale or transfer of a Membership Interest that is not permitted pursuant to the provisions of this Agreement shall be null and void and of no force or effect whatever; provided that, if the Company is required to recognize such disposition or transfer, the Units so transferred shall be strictly limited to the transferor's rights to allocations and distributions as provided by this Agreement with respect to the transferred Units, which allocations and distributions may be applied (without limiting any other legal or equitable rights of the Company) to satisfy any debts, obligations, or liabilities for damages that the transferor or transferee may have to the Company. Nothing in this Agreement shall limit any right or remedy that the other Member may have against such Member for an unauthorized transfer.

9.6  PUHCA REGULATION - IF THE COMPANY IS OR BECOMES SUBJECT TO ADDITIONAL, MORE ONEROUS REGULATORY REQUIREMENTS UNDER PUHCA AS A RESULT OF ANY MEMBER'S INTEREST IN THE COMPANY THAT HAS A MATERIAL ADVERSE EFFECT ON THE COMPANY, THEN (A) SUCH MEMBER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE COMPANY AND EACH OTHER MEMBER FROM AND AGAINST ANY AND ALL COSTS, LOSSES, DAMAGES OR LIABILITIES INCURRED BY THE COMPANY OR THE OTHER MEMBERS RESULTING FROM SUCH REGULATION (EXCLUDING ANY CONSEQUENTIAL OR OTHER DAMAGES SPECIFIED IN SECTION 12.4), and (b) the Company may, by a majority vote of the Members (excluding the vote of the Person who caused or whose Affiliate caused the imposition of such regulation) require such Member to divest its Units of Membership Interest if such divestiture is deemed necessary to avoid such regulatory requirements. Such divestiture shall be subject to the remaining provisions of this Article.

## ARTICLE X
## MEMBERSHIP INTERESTS

10.1  Issuance of LLC Interest Certificates - The Company shall issue one (1) certificate (each, an

27

BUSDOCS:728102.1

"LLC Interest Certificate") substantially in the form attached as Exhibit C, in the name of each Member certifying that the Member named therein is a Member of the Company pursuant to this Agreement. The LLC Interest Certificate shall also include as a part thereof, a form of assignment sufficient, subject to the terms of this Agreement, to effectuate a disposition of such Member's LLC Interest to an assignee. Each LLC Interest Certificate shall bear a legend in substantially the following form: "This certifies that, subject to adjustments as set forth in the Amended and Restated Limited Liability Company Agreement of Milford Power Company, LLC, dated as of _____ __, 1999, as amended, modified and supplemented from time to time (the "LLC Agreement"), _____ is the owner of a fully paid and non-assessable LLC Interest in the Company consisting of a ____% Membership Interest in connection therewith and certain other rights in the Company, all as set forth in the LLC Agreement. This LLC Interest Certificate, including the rights attendant thereto, shall be a security governed by Article 8 of the Uniform Commercial Code in any jurisdiction (a) that has adopted revisions to Article 8 of the Uniform Commercial Code substantially consistent with the 1994 revisions to Article 8 adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and (b) the laws of which may be applicable, from time to time, to the issues of perfection, the effect of perfection or non-perfection and the priority of a security interest in membership interests of the Company."

10.2   Certificate Transfer Book and Members of Record - The clerk of the Company (or, if none, the Chairman) shall maintain or cause to be maintained, among other records, a Unit transfer book containing certificates evidencing the Units of Membership Interest, the stubs in which shall set forth the names and addresses of the holders of all issued Units of Membership Interest of the Company, the number of Units of Membership Interest held by each such holder, the number of certificates representing such Membership Interest, the Ownership Interest held pursuant to each Member's Units of Membership Interest, the date of issue of such certificates, and whether or not such Membership Interest derives from original issue or transfer. The names and addresses of Members as they appear on the Unit transfer book shall be the official list of Members of record of the Company for all purposes except as otherwise provided in this Agreement. The Company shall keep record of Members at its registered office or principal place of business, or at the office of its transfer agent or registrar. The Company shall be entitled to treat the holder of record of any Units of Membership Interest as the owner thereof for all purposes, and shall not be bound to recognize any equitable or other claim to, or interest in, such Units of Membership Interest or any rights deriving from such Units of Membership Interest on the part of any other Person, including, but without limitation, a purchaser, assignee, or transferee, unless and until such other Person becomes the holder of record of such Units of Membership Interest, whether or not the Company shall have either actual or constructive notice of the interest of such other Person.

10.3   Member's Change of Name or Address - Each Member shall promptly notify the Members of the Company, at its principal business office, by written notice sent by certified mail, return receipt requested, of any change in name or address of the Member from that as it appears upon the official list of Members of record of the Company. The secretary of the Company (or, if none, the Chairman) shall enter such changes into all affected Company records, including, but not limited to, the official list of Members of record.

10.4   Transfer of Membership Interests - Units of Membership Interests represented by any certificate of the Company are transferable only on the books of the Company by the holder of record thereof or by his duly authorized attorney or legal representative upon surrender of the certificate for such Units of Membership Interest, properly endorsed or assigned. The Members may make

28

such rules and regulations concerning the issue, transfer, registration and replacement of certificates as they deem desirable or necessary. Subject to compliance with the other provisions of this Agreement, Members may transfer their respective Ownership Interest independent of their other rights and interests represented by their Units of Membership Interest.

10.5    Lost, Stolen or Destroyed Certificates - The Company may issue a new certificate for Units of Membership Interest in the place of any certificate previously issued and alleged to have been lost, stolen or destroyed, but the Members may require the owner of such lost, stolen or destroyed certificate, or his legal representative, to furnish an affidavit as to such loss, theft, or destruction and to give a bond in such form and substance, and with such surety or sureties, with fixed or open penalty, as the board may direct, in order to indemnify the Company and its transfer agents and registrars, if any, against any claim that may be made on account of the alleged loss, their or destruction of such certificate.

## ARTICLE XI
## DISSOLUTION AND TERMINATION

11.1    Automatic Dissolution - The Company shall be automatically dissolved upon the occurrence of any of the following:

(a)    Immediately at the termination date specified in Section 2.4 or as otherwise provided in this Agreement;

(b)    Immediately upon the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act;

(c)    The sale of all or substantially all of the Company's business and assets;

(d)    The unanimous approval of the Members; or

(e)    Any event which shall make it unlawful for the business of the Company to be carried on.

11.2    Automatic Withdrawal of Member - A Member shall be deemed to have withdrawn from the Company and shall be treated as a Withdrawn Member under this Agreement automatically upon the occurrence of any of the following events:

(a)    Immediately if any Member shall (i) voluntarily file with a Bankruptcy Court a petition seeking an order for relief under the Federal bankruptcy laws, (ii) seek, consent to or fail to contest the appointment of a receiver, custodian or trustee for itself or for all or any significant part of its property, (iii) file a petition seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction, (iv) make a general assignment for the benefit of its creditors, or (v) admit in writing its inability to pay its debts as they mature;

(b)    If (i) a petition is filed against any Member seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction and such petition remains pending 60 days after it was filed, (ii) a period of 60 days shall have elapsed after a court of competent jurisdiction

29

enters an order, judgment or decree appointing, without the consent of said Member, a receiver, custodian or a trustee for such Member, or for all or any part of its property, and such order, judgment or decree shall not be discharged or stayed, or (iii) either Member is otherwise adjudicated a bankrupt;

(c)     Immediately if any Member is ordered by the Securities Exchange Commission under the PUHCA to divest such Member's Units of Membership Interest;

(d)     At the election of any Member (an "Electing Member"), by giving written notice thereof to the other Member (the "Nonelecting Member") if (i) the interest of the Nonelecting Member in the Company is seized, attached or otherwise encumbered by a creditor of the Nonelecting Member and the same is not released from seizure or bonded out within 30 days from the date of notice of such seizure or (ii) El Paso II or its successors shall default in the performance of their obligations to make the Equity Contribution to the Company in accordance with Section 6.2(a), in which case El Paso II or its successors shall be deemed to be a Nonelecting Member.

11.3    Damages - The Members each agree not to voluntarily withdraw from the Company, except as permitted by this Agreement, including Section 11.9. If the Company is dissolved as a consequence of any such withdrawal, the Defaulting Member shall be in breach of this Agreement and shall be liable to each other Member for all damages such other Member may incur as a result thereof.

11.4    Date of Dissolution - The dissolution shall be effective on the day specified in Section 11.1 or the day on which notice of dissolution is given, whichever occurs first, but the Company shall not terminate until its affairs have been wound up and its assets distributed as provided in Section 11.6 or the Electing Member acquires the other Units of Membership Interest in the Company as provided in Section 11.2(d).

11.5    Control After Dissolution - The Electing Member, if the Company is dissolved under Section 11.2(d), or the Member not causing the dissolution if the Company is dissolved under Sections 11.2(a), 11.2(b) or 11.2(c) may either:

(a)     proceed with winding up and liquidating as provided in Sections 11.6 and 11.7, or

(b)     acquire the Units of Membership Interest held by the other Member as provided in Section 11.8

In any event, from the date of dissolution to the date of termination, the Member entitled to make the election under this Section (the "Liquidation Member") shall have sole control of the operations and assets of the Company.

11.6    Dissolution and Winding Up - After the date of dissolution contemplated by Section 11.4, and, if applicable, in the event the Liquidation Member elects to proceed with the winding up and liquidation of the Company as provided in Section 11.7, the Company shall not enter into any contract or undertake any business not then subject to contract or which is not related to the winding up of the Company. Upon dissolution and subsequent winding up, a proper accounting shall be made of the Company's assets, liabilities and operations from the date of the last previous accounting to the date of dissolution. The profits and losses realized subsequent to the date of

30

BUSDOCS:728102.1

dissolution shall be allocated in accordance with Article VII and proper adjustments made to the Capital Account of each Member. Profits and losses realized on the sale of any Company asset in the process of winding up shall be allocated as provided in Article VII. Unless otherwise agreed in writing by the Members, all of the assets of the Company shall be sold or otherwise converted into cash. Assets not sold will be valued at their fair market value and gain or loss allocated as provided in Article VII as if they had been sold at their fair market value. The Company will provide each Member a right of first offer to purchase any assets being sold in accordance with this section in amounts proportionate to each Member's Ownership Interest.

11.7    Liquidation - As soon as the actions contemplated by the preceding sections of this Article XI have been completed, the cash and other assets of the Company shall be applied or distributed in the following order of priorities:

(a)    In payment of all liabilities of the Company to creditors including any creditor who may be a Member to the extent otherwise permitted by law. If any liability is contingent, or uncertain in amount, a reserve equal to the maximum amount to which the Company could reasonably be held liable will be established. Upon the satisfaction or other discharge of such contingency, the amount of the reserve not needed, if any, will be distributed in accordance with the balance of this Section;

(b)    In payment of the Capital Accounts of the Members pro rata based on the positive balance, if any, of the Capital Accounts of each Member.

(c)    No Member with a negative balance in its Capital Account shall be liable to the Company or any other Member for the amount of such negative balance upon dissolution and liquidation.

11.8    Purchase Right Upon Dissolution - If an Electing Member elects to acquire the other Member's interest in the Company pursuant to Section 11.5(b), the Electing Member shall give written notice of such election to the other Member within 60 days after the date of dissolution. The purchase price shall be the agreed upon fair market value (as of the date of such notice) of the Company assets less the Company's liabilities multiplied by a fraction, the numerator of which is the Capital Account of the other Member and the denominator of which is the sum of the Capital Accounts of both Members. The Electing Member shall continue the business of the Company until the purchase price has been determined. In the event there is no agreement on such fair market value within 30 days from the date of notice given pursuant to this Section 11.8 (the "Exercise Notice") after good faith negotiations, then each Member shall, within 35 days after delivery of the Exercise Notice, appoint an appraiser of recognized standing and the appraisers so appointed by the Members shall, within 45 days after delivery of the Exercise Notice, appoint a third appraiser of recognized standing and the fair market value of the assets of the Company shall be determined by majority vote of such three appraisers within 30 days after the date such third appraiser was appointed; if any Member shall fail to appoint an appraiser within 35 days after the delivery of the Exercise Notice, the valuation of the appraiser appointed by the other Member shall be deemed the fair market value of the assets of the Company. Upon such determination of the fair market value of the assets, the Electing Member shall purchase all of the interest in the Company owned by the other Member at the price determined in accordance with this Section. As of the date of agreement on such price and terms of payment, such other Member causing the dissolution shall immediately cease to be a Member in the Company and shall have no interest in the assets of the Company, either as a Member or otherwise, except to

31

receive payment of such price.

11.9    Voluntary Withdrawal Rights

(a)    Right to Withdraw - Subject to the provisions of Article XI, a Member (in this Agreement called a "Withdrawing Member") shall have the right to withdraw from the Company at any time after the commencement of commercial operations of the Plant by ten days written notice to the other Members (in this Agreement called a "Withdrawal Notice"). The Withdrawing Member shall assign all its rights and interests in the Company to the remaining Members or their designees and the Withdrawing Member waives any and all rights that it might otherwise have had pursuant to the Act arising from its withdrawal from the Company.    The Withdrawing Member hereby irrevocably appoints the Company its attorney-in-fact, with full authority in its place and stead and its name or otherwise, to take any action and to execute any instrument which the Company may deem necessary or advisable to accomplish such assignment of the Withdrawing Member's rights and interests in the Company to the remaining Members or their designees.    Upon thirty days' prior written notice, the Company may terminate any contracts or agreements with the Withdrawing Member or any of its Affiliates, pursuant to which the Withdrawing Member or its Affiliates provide materials or services to the Company, and the Company shall have no further liability to the Withdrawing Member or its Affiliates under such contracts or agreements, other than the payment of any obligations incurred prior to the date of such termination.

(b)    Reimbursement Rights - In the event of such withdrawal, the Company shall retain all contributions theretofore made by the Withdrawing Member, and such Withdrawing Member shall pay its share of such further obligations and commitments that are due and payable at the time of the giving of the Withdrawal Notice including any obligations attributable to the work performed or actions taken by the Members or any Committee of the Company prior to the date of withdrawal including termination costs.

(c)    Indemnification of Withdrawing Member - The remaining Members shall indemnify and hold harmless the Withdrawing Member:

(i)    For all amounts due and payable in connection with the Company and its business after the date of withdrawal that were not incurred prior to the date of withdrawal; and

(ii)    For all amounts or damages arising out of activities of the non-withdrawing Members or the Company undertaken after the date of withdrawal.

**ARTICLE XII**
**LIMITATION OF LIABILITY AND INDEMNIFICATION**

12.1    Limitation of Liability - Neither the officers of the Company, the Members, nor their respective shareholders, officers, directors, agents, employees and representatives ("Member Representatives") shall be liable, responsible or accountable in damages or otherwise to the Company or to each other for any loss suffered by the other or by the Company arising out of any action or omission by such parties, so long as such action or omission (a) was in good faith, (b)

32

was consistent with the provisions of this Agreement, (c) was, in the reasonable judgment of the party involved, in the best interests of the Company and (d) did not constitute bad faith, gross negligence, fraud or willful misconduct of the party involved; provided that the terms and conditions regarding the liability of EPGM and EPPS and any limitations to such liability in its role as a fuel marketer and power marketer pursuant to Sections 5.6 and 5.7 shall be governed by the terms and conditions set forth in the Fuel Purchase Agreement and the Power Marketing Agreement.

12.2 Right to Indemnification - Subject to the limitations and conditions provided in this Article XII, the Company shall indemnify and hold the Members and the Member Representatives harmless from and against any losses, damages, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by any of them in connection with the activities of the Company, provided that the same did not result from the bad faith, gross negligence, fraud or willful misconduct of the party involved. The Company may purchase and maintain insurance, at its expense, to protect itself, the Members and any Member Representative of the type entitled to be indemnified under this Section 12.2, whether or not the Company would have the power to indemnify such Member Representative against such expense, liability or loss under Section 12.2.

12.3 ~~CROSS-INDEMNIFICATION - EACH MEMBER (FOR PURPOSES OF THIS SECTION, THE "INDEMNITOR") SHALL INDEMNIFY AND HOLD HARMLESS EACH OF THE OTHER MEMBERS (FOR PURPOSES OF THIS SECTION THE "INDEMNITEE") AND THE AFFILIATES, DIRECTORS, OFFICERS, PARTNERS, EMPLOYEES, AGENTS AND REPRESENTATIVES OF THE INDEMNITEE FROM AND AGAINST ANY COSTS, LOSSES, CLAIMS, DAMAGES AND LIABILITIES ARISING OUT OF THE INDEMNITOR'S BREACH OF ANY PROVISIONS OF THIS AGREEMENT.~~

12.4 Consequential Damages - Notwithstanding anything to the contrary in this Agreement, any damages resulting from a breach of this Agreement by a Member shall be limited to actual damages incurred by the Member claiming damages and that no Member shall be liable for claims or causes of action arising under this Agreement for consequential or incidental damages including but not limited to any claims for indirect losses, loss of business opportunity or of lost profits or for punitive or exemplary damages.

12.5 Non-Recourse to Members - Unless otherwise agreed to by the unanimous vote of all Members, no Member shall be liable to any Person (including any third party or to another Member) (a) as the result of any act or omission of another Member or (b) for losses, liabilities or obligations of the Company (except as otherwise expressly agreed to in writing by such Member). Unless otherwise agreed to by the unanimous vote of all Members, no contract, agreement or other instrument shall be executed and delivered by or on behalf of the Company that provides or suggests that the claims of all parties thereto and other beneficiaries thereunder are not limited solely to the assets of the Company and any contract, agreement or other instrument containing such a provisions shall be null and void and shall not constitute a valid obligation of the Company.

## ARTICLE XIII
## REPRESENTATIONS

13.1 Representations of the Members - Each Member represents and warrants to the other:

(a)   Due Organization - Such Member is a corporation, partnership or limited liability

33

BUSDOCS:728102.1

company duly organized, validly existing and in good standing under the laws of the state of its organization and has the requisite power and authority (i) to carry on its business as presently conducted and to own or hold under lease its properties, where the failure to have such power and authority would have a material adverse effect on its ability to perform its obligations under this Agreement, and (ii) to enter into and perform its obligations under this Agreement.

(b)  <u>Authorization</u> - The execution, delivery and performance by such Member of this Agreement have been duly authorized by all necessary action on the part of such Member. This Agreement has been duly authorized, executed and delivered by such Member and is a legal, valid and binding obligation of such Member, enforceable against such Member in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, liquidation, moratorium or similar laws affecting creditors' or lessors' rights generally and the application of general equitable principles may limit the availability of certain remedies.

(c)  <u>Effect of this Agreement</u> - Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby nor compliance by such Member with any of the provisions of this Agreement, will: (i) conflict with or result in a breach of any provision of the constituent documents of such Member; (ii) require the approval or consent of, or filing of registration with, any foreign, federal, state, local or other governmental or regulatory body or the approval or consent of any other Person the failure of which to make or obtain would have a material adverse effect on the ability of such Member to perform its obligations under this Agreement; (iii) violate any provision of any law or regulation or violate, breach or, with the giving of notice or passage of time, constitute an event of default (or give rise to any right of termination, cancellation or acceleration) under any of the terms, conditions or provisions of any note, bond, mortgage, indenture, license, agreement or other instrument or obligation to which such Member is a party, or by which it may be bound, which violation, breach or default (or right of termination, cancellation or acceleration) would have a material adverse effect on the ability of such Member to perform its obligations under this Agreement and the transactions contemplated hereby, except in the case of (ii) and (iii) as to which requisite waivers or consents have been obtained.

(d)  <u>Litigation</u> - There is no action, suit or proceeding pending or, to the knowledge of such Member, threatened against such Member which, if adversely determined could, individually or in the aggregate, materially and adversely affect the ability of such Member to perform its obligations under this Agreement.

(e)  <u>Regulation</u> - No Member nor any of its Affiliates is subject to regulation under (i) the ICA, as amended, or (ii) the PUHCA, as amended.

<div align="center">

**ARTICLE XIV**
**CONFIDENTIALITY OF COMPANY AFFAIRS**

</div>

14.1  <u>Disclosure of Confidential Information</u> - Except as in this Agreement provided, each Member shall treat, and cause its Affiliates to treat, as confidential, and shall not disclose to any third party not authorized by the Members to receive confidential information, any confidential information

<div align="center">34</div>

of the Company, including information (i) obtained either directly or indirectly from any Member pursuant to this Agreement and designated by such Member as confidential, or (ii) developed or acquired by the Company and designated confidential by the Members unless:

(a) such confidential information was already in the possession of the receiving Member or any of its Affiliates at the time it or they obtained such confidential information under this Agreement;

(b) such confidential information was or is published or otherwise becomes generally available to the public through no fault of the receiving Member or any of its Affiliates;

(c) such confidential information was or is made available to the receiving Member or any of its Affiliates without restriction by any entity which is not bound by, and does not impose, an obligation of confidentiality or use with respect thereto;

(d) such disclosure is required by operation of law or regulation; or

(e) the Members authorize a Member or any of its Affiliates in writing to disclose such confidential information.

14.2 <u>Use</u> - Neither the Company nor a Member shall use any such confidential information provided by another Member for any purpose other than in connection with its activities pursuant to this Agreement, except that confidential information developed or acquired by or on behalf of the Company may be used by any Member or its Affiliates for its own purposes, subject to confidentiality agreements consistent with this Article XIV.

14.3 <u>Procedures</u> - Each Member shall take, and cause its Affiliates to take, such reasonable and prudent steps and precautionary measures as are required to ensure compliance with this Article XIV by such of their employees, officers, agents, Affiliates and other Persons as shall be given access to such confidential information and shall be responsible for compliance by their employees, officers, agents and Affiliates.

14.4 <u>Survival</u> - The obligations of the Members pursuant to this Article XIV shall survive the term of this Agreement for a period of two years.

14.5 <u>Remedies</u> - The Company and each Member agree that no adequate remedy at law exists for a material breach or threatened material breach of any of the provisions of this Article, the continuation of which unremedied will cause the injured Party to suffer irreparable harm. Accordingly, the Company and the Members agree that the injured Party shall be entitled, in addition to other remedies which may be available to it, to immediate injunctive relief from any material breach of any of the provisions of this Article XV and to specific performance of its rights hereunder, as well as to any other remedies available at law or in equity.

## ARTICLE XV
## MISCELLANEOUS

15.1 <u>Entirety of Agreement</u> - Except as set forth in the Fuel Purchase Agreement, the Power Marketing Agreement, the Member Management Agreement, the Service Agreement and the Funding and

35

Settlement Agreement, this Agreement reflects the whole and entire agreement among the Members and their Affiliates with respect to the subject matter in this Agreement and supersedes all previous agreements and understandings among the Members and their Affiliates (including the Joint Development Agreement) and the Articles of Association of PDC – El Paso Milford LLC, and may be amended, restated or supplemented only by the written agreement of all Members.

15.2    <u>Notices</u> - Unless otherwise specifically provided in this Agreement, any written notice or other communication given pursuant to this Agreement shall be sufficiently delivered if delivered personally or mailed or if given by telegram, telex, telecopy or similar means of visual data transmission:

(a)    to each of the Members at the address set forth below or at such other address as may be designated from time to time by the Member by written notice to each other Member and to the Company:

if to El Paso I:

El Paso Milford Power I Company
1001 Louisiana Street
Houston, Texas 77002
Telephone: 713-420-6234
Facsimile: 713-420-5487
Attention: Director of Finance & Planning

if to El Paso II:

El Paso Milford Power II Company
1001 Louisiana Street
Houston, Texas 77002
Telephone: 713-420-6234
Facsimile: 713-420-5487
Attention: Director of Finance & Planning

if to PDC:

PDC Milford Power LLC
c/o Power Development Company, LLC
200 High Street, 5th Floor
Boston, Massachusetts 02110
Telephone: 617-747-9100
Facsimile: 617-747-9101
Attention: Michael J. Armitage
            Kevin P. Joyce

with a copy to:

Rubin and Rudman LLP
50 Rowes Wharf

36

BUSDOCS:728102.1

Boston, Massachusetts 02110
Telephone: 617-330-7000
Facsimile: 617-434-9556
Attention: John A. DeTore, Esq.

and

Eckert Seamans Cherin & Mellott, LLC
1 International Place, 18th Floor
Boston, MA 02110
Telephone: 617-342-6834
Facsimile: 617-342-6899
Attention: Ted Tedschi, Esq.

(b)    to the Company at the principal office of the Company or such other address as may be
designated from time to time by written notice to each of the Members.

If mailed, such notice shall be deemed received five days following the date on which the same is
mailed by registered or certified mail, postage prepaid, properly addressed to the addresses set
forth above. If delivered personally or by telegram, telex, telecopy or similar means of visual
data transmission, then such notice shall be deemed delivered on the first business day of the
recipient following the day on which such notice was transmitted and has been confirmed
received. Any Member may request that copies of notices be given to an Affiliate of such
Member at such address as is designated by such Member by written notice to the other Member
and to the Company; provided, however, that any failure to give such notice shall not affect the
validity of any notice given to the Member or the Company in accordance with this Section 15.2.
Each of the Members agrees to give such designated notice to any such designated Affiliate.

15.3    Further Assurances - Each Member agrees to execute and deliver all such other and additional
instruments and documents and to do such other acts and things as may be reasonably necessary
more fully to effectuate the intent of the Members set forth in this Agreement and carry on the
Company business in accordance with this Agreement.

15.4    APPLICABLE LAW AND CHOICE OF FORUM - THIS AGREEMENT SHALL BE
GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE
STATE OF DELAWARE, EXCEPT THAT ANY CONFLICT OF LAWS RULE OF SUCH
JURISDICTION WHICH WOULD REQUIRE REFERENCE TO THE LAWS OF SOME
OTHER JURISDICTION SHALL BE DISREGARDED. THE PARTIES SUBMIT TO THE
NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THAT STATE AND ANY
COURTS HAVING JURISDICTION TO HEAR APPEALS FROM THOSE COURTS, AGREE
TO ACCEPT SERVICE OF PROCESS BY MAIL IN ACCORDANCE WITH SECTION 15.2
AND ALL OBJECTIONS TO VENUE AND PERSONAL JURISDICTION IN SUCH FORUM
ARE HEREBY EXPRESSLY WAIVED.

15.5    Counterparts - This Agreement is executed in counterparts, each of which shall be deemed an
original, but all of which together shall constitute but one and the same instrument.

15.6    Laws and Regulatory Bodies - This Agreement and the obligations of the Members under this
Agreement are subject to all applicable laws, rules, orders and regulations of governmental

37

authorities and, in the event of conflict, such laws, rules, orders and regulations of governmental authorities shall control.

15.7  Force Majeure - If either Member is rendered unable, wholly or in part, by force majeure to carry out its obligations under this Agreement, other than the obligation to make money payments, the obligations of such Member, so far as they are affected by such force majeure, shall be suspended during the continuance of such force majeure.  The term "force majeure," as used in this Agreement, shall mean an act of God (which does not include a Year 2000 compliance matter), strike, lockout, or other industrial disturbance, act of public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental restraint, unavailability of equipment or supplies and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of such Member.  The requirement that any force majeure shall not be reasonably within the control of such Member shall not require settlement of strikes, lockouts, or other labor difficulty by such Member, contrary to its wishes; and all such difficulties shall be handled entirely at the discretion of such Member.

15.8  Notice of Litigation - Either Member that becomes aware of any litigation pending against the Company shall give timely notice of such to the Company and the other Member.  Additionally, any Member against which any litigation is filed in its capacity as a Member shall give the other Member and the Company timely notice of such litigation.

15.9  Severability - Any provision of this Agreement prohibited by applicable law shall be invalid to the extent of such prohibition and severed from this Agreement unless it is determined by the Members by unanimous vote that such prohibition invalidates the purpose or intent of this Agreement, in which case the Company shall be dissolved and its business and affairs wound up, liquidated and terminated.

15.10  Third-Party Beneficiaries - The representations, warranties, covenants and obligations of the Members are made for the express benefit of the Members, and parties that are not express signatories to this Agreement are not intended to have, nor shall have, the benefit of, or any right to seek enforcement or recovery under, any of such covenants or obligations.

BUSDOCS:728102.1

38

15.11   Remedies - All rights and remedies under this Agreement are cumulative and in addition to other rights or remedies under this Agreement or any applicable law.

15.12   Nonwaiver of Rights - The failure of either Member to enforce any provision of this Agreement or right granted hereby shall not in any way be construed to be a waiver of such provision or right, nor in any way affect the validity of this Agreement or any part thereof, or limit, prevent or impair the right of either Member subsequently to enforce such provisions or exercise such right in accordance with its terms.

IN WITNESS WHEREOF, the Members have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

EL PASO MILFORD POWER I COMPANY

By: _____
Title: Senior Vice President
Randolph L. Wu

EL PASO MILFORD POWER II COMPANY

By: _____
Title: Senior Vice President
Randolph L. Wu

PDC MILFORD POWER, LLC

By: _____
Title: Manager
Michael J. Armitage

379

EFiled:  Jun 14 2004  6:29PM EDT
Filing ID 3729803

# EXHIBIT 3

FILING FEE PAID

(Official Form 1) (12/03)

FEB 27 '04 PM 2:41 USB

| FORM B1 | United States Bankruptcy Court<br>District of Massachusetts | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**PDC Milford Power, LLC, a Massachusetts Limited Liability Company** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. No. / Complete EIN or other Tax I.D. No.<br>(if more than one, state all):    **04-3485191** | Last four digits of Soc. Sec. No. / Complete EIN or other Tax I.D. No.<br>(if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**1900 West Loop South, Suite 770**<br>**Houston, TX 77027** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Harris** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>c/o John DeTorre<br>50 Rowes Wharf 3rd Floor<br>Boston MA 02110 | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Information Regarding the Debtor (Check the Applicable Boxes) |
|---|
| Venue (Check any applicable box)    *the Debtor is a Massachusetts chartered limited liability company.<br>■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br>☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |

| Type of Debtor (Check all boxes that apply) | Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|
| ☐ Individual(s)          ☐ Railroad<br>☐ Corporation         ☐ Stockbroker<br>☐ Partnership          ☐ Commodity Broker<br>■ Other___**Mass. Limited Liability Co.**___  ☐ Clearing Bank | ☐ Chapter 7      ■ Chapter 11      ☐ Chapter 13<br>☐ Chapter 9      ☐ Chapter 12<br>☐ Sec. 304 - Case ancillary to foreign proceeding |

| Nature of Debts (Check one box) | Filing Fee (Check one box) |
|---|---|
| ☐ Consumer/Non-Business      ■ Business | ■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (Applicable to individuals only.)<br>Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3. |

| Chapter 11 Small Business (Check all boxes that apply) |
|---|
| ☐ Debtor is a small business as defined in 11 U.S.C. § 101<br>☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional) |

| Statistical/Administrative Information (Estimates only) | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ■ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Assets | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ |

| Estimated Debts | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ |

FILING FEE PAID

(Official Form 1) (12/03)

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):                    **FORM B1, Page 2**<br>PDC Milford Power, LLC, a Massachusetts Limited<br>Liability Company |
|---|---|

| Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed: - None - | Case Number:                              FEB 10 04 PM 2:41 USB | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>- None - | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

X _Jay F. Theise_____
Signature of Attorney for Debtor(s)

_Jay F. Theise (BBO# 495660)_
Printed Name of Attorney for Debtor(s)

_Rubin and Rudman LLP_
Firm Name

_50 Rowes Wharf_
_Boston, MA 02110_
Address

_617-330-7000_
Telephone Number

_2/27/04_
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _Douglas L. Corbett_____
Signature of Authorized Individual

_Douglas L. Corbett_
Printed Name of Authorized Individual

_Manager_
Title of Authorized Individual

_2/26/04_
Date

---

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____
Signature of Attorney for Debtor(s)         Date

**Exhibit C**

Does the debtor own or have possession of any property that poses a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number (Required by 11 U.S.C.§ 110(c).)

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

Form 4. LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

## United States Bankruptcy Court
### District of Massachusetts

In re  PDC Milford Power, LLC, a Massachusetts
Limited Liability Company

Case No. _____

_____  Debtor

Chapter_____ 11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

       Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| El Paso Energy Corp. 1001 Louisiana Street Houston, TX 77002 | El Paso Energy Corp. 1001 Louisiana Street Houston, TX 77002 | Contract claims for capital contributions advanced to Debtor. | Contingent Unliquidated Disputed | 3,310,055.00 |
| Internal Revenue Service PO Box 9112 JFK Building Boston, MA 02203 | Internal Revenue Service PO Box 9112 JFK Building Boston, MA 02203 | | | Unknown |
| Mass. Depart. of Revenue Bankruptcy Unit PO Box 55484 Boston, MA 02205 | Mass. Depart. of Revenue Bankruptcy Unit PO Box 55484 Boston, MA 02205 | | | Unknown |
| | | | | |
| | | | | |

In re    PDC Milford Power, LLC, a Massachusetts
         Limited Liability Company                                    Case No. _____

_____
                                    Debtor

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP**

I, the Manager of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Creditors Holding 20 Largest Unsecured Claims and that it is true and correct to the best of my information and belief.

Date  2/26/04 _____

Signature _____
Douglas L. Corbett
Manager

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

## United States Bankruptcy Court
### District of Massachusetts

In re  PDC Milford Power, LLC, a Massachusetts
Limited Liability Company

Case No. _____

_____ Debtor

Chapter _____ 11 _____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
| --- | --- | --- | --- | --- | --- |
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 3 | up to 10,000,000.00 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | Unknown | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 2 | | Unknown | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 3,310,055.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 11 | | | |
| | | Total Assets | up to 10,000,000.00 | | |
| | | Total Liabilities | | Unknown | |

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    **PDC Milford Power, LLC, a Massachusetts**                    Case No. _____
         **Limited Liability Company**
_____
                        Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **None.** | | | 0.00 | 0.00 |

| | | |
|---|---|---|
| Sub-Total > | 0.00 | (Total of this page) |
| Total > | 0.00 | |

____**0**____ continuation sheets attached to the Schedule of Real Property          (Report also on Summary of Schedules)

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

In re    **PDC Milford Power, LLC, a Massachusetts**                Case No. _____
         **Limited Liability Company**
         _____
                                    Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | X | | | |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

                                                      Sub-Total >        0.00
                                                   (Total of this page)

__2__ continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

In re    **PDC Milford Power, LLC, a Massachusetts**          Case No. _____
          **Limited Liability Company**
                                   _____
                                          Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | | 5% interest in Milford Power Company, LLC | - | up to 10,000,000.00 |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

                                   Sub-Total > up   10,000,000.00
                                   (Total of this page)    to

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

In re    **PDC Milford Power, LLC, a Massachusetts**    Case No. _____
         **Limited Liability Company**
         _____
                          Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Claims for breach of fiduciary duty and accounting vs. KBC Bank N.V. and other lenders (see attached sheet). | - | Unknown multiple millions of dollars |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | X | | | |

|  | Sub-Total > (Total of this page) | Unknown |
|---|---|---|
|  | Total > | Unknown |
|  | (Report also on Summary of Schedules) | |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Schedule B. Personal Property Attached Sheet 1 of 1

Australia and New Zealand
Banking Group Limited
1177 Avenue of Americas
New York NY 10036-2798

BNP Paribas
c/o KBC Bank N.V.
New York Branch
125 West 55th Street
New York, NY 10019

NIB Capital Bank N.V.
c/o KBC Bank N.V.
New York Branch
125 West 55th Street
New York, NY 10019

Sumitomo Mitsui Banking
Corporation
c/o KBC Bank N.V.
New York Branch
125 West 55th Street
New York, NY 10019

Teachers Insurance and
Annuity Association of
America
730 Third Avenue, 4th Fl
New York NY 10017

Trust Company of the West
200 Park Avenue
22nd Floor
New York NY 10166

WestLB AG
c/o KBC Bank N.V.
New York Branch
125 West 55th Street
New York, NY 10019

The Debtor intends to commence an Adversary Proceeding against the above-named Lenders for
damages as a result of breach of fiduciary duty, an accounting, a discharge of the pledge of the
Debtor's sole asset, a 5% interest in a multimillion dollar power generation facility in southern
Connecticut, and for such other and further relief as is ultimately determined.

Form B6D
(12/03)

In re    **PDC Milford Power, LLC, a Massachusetts**                          Case No. _____
         **Limited Liability Company**
_____
                          Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetical order to the extent practicable. If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | | |
| Account No.<br><br>**Australia and New Zealand Banking Group Limited 1177 Avenue of Americas New York, NY 10036-2798** | | | | | **security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC**<br><br>Value $     Unknown | | X | | Unknown | Unknown |
| Account No.<br><br>**BNP Paribas c/o KBC Bank N.V. New York Branch 125 West 55th Street New York, NY 10019** | | | | | **security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC**<br><br>Value $     Unknown | | X | | Unknown | Unknown |
| Account No.<br><br>**KBC Bank N.V. New York Branch 125 West 55th Street New York, NY 10019** | | | | | **security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC**<br><br>Value $     Unknown | | X | | Unknown | Unknown |
| Account No.<br><br>**NIB Capital Bank N.V. c/o KBC Bank N.V. New York Branch 125 West 55th Street New York, NY 10019** | | | | | **security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC**<br><br>Value $     Unknown | | X | | Unknown | Unknown |

   **1**   continuation sheets attached

Subtotal
(Total of this page)    Unknown

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Form B6D - Cont.
(12/03)

In re     PDC Milford Power, LLC, a Massachusetts          Case No. _____
          Limited Liability Company
          _____
                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No.<br><br>Sumitomo Mitsui Banking Corporation<br>c/o KBC Bank N.V.<br>125 West 55th Street<br>New York, NY 10019 | | | | | security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC<br><br>Value $          Unknown | | | X | Unknown | Unknown |
| Account No.<br><br>Teachers Insurance and Annuity Association of America<br>730 Third Avenue, 4th Fl<br>New York, NY 10017 | | | | | security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC<br><br>Value $          Unknown | | | X | Unknown | Unknown |
| Account No.<br><br>Trust Company of the West<br>200 Park Avenue<br>22nd Floor<br>New York, NY 10166 | | | | | security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC<br><br>Value $          Unknown | | | X | Unknown | Unknown |
| Account No.<br><br>WestLB AG<br>c/o KBC Bank N.V.<br>New York Branch<br>125 West 55th Street<br>New York, NY 10019 | | | | | security interest in plant and PDC Milford Power, LLC's ownership interest in Milford Power Company, LLC<br><br>Value $          Unknown | | | X | Unknown | Unknown |
| Account No.<br><br><br> | | | | | <br><br>Value $ | | | | | |

Sheet ___1___ of ___1___ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | Unknown | |
| Total (Report on Summary of Schedules) | Unknown | |

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6E
(12/03)

In re    **PDC Milford Power, LLC, a Massachusetts**
        **Limited Liability Company**

                                                          Case No. _____

_____
Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Repeat this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,650* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(3).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,650* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**

Claims of individuals up to $2,100* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐ **Alimony, Maintenance, or Support**

Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

■ **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

*Amounts are subject to adjustment on April 1, 2004, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

___1___ continuation sheets attached

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Form B6E - Cont.
(12/03)

In re  **PDC Milford Power, LLC, a Massachusetts**
       **Limited Liability Company**

Case No.: _____

Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
## (Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | TOTAL AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | |
| Internal Revenue Service PO Box 9112 JFK Building Boston, MA 02203 | | | | | | | Unknown | Unknown |
| Account No. | | | | | | | | |
| Mass. Depart. of Revenue Bankruptcy Unit PO Box 55484 Boston, MA 02205 | | | | | | | Unknown | Unknown |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal (Total of this page)     Unknown

Total (Report on Summary of Schedules)     Unknown

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037     Best Case Bankruptcy

Form B6F
(12/03)

In re  **PDC Milford Power, LLC, a Massachusetts**          Case No. _____
       **Limited Liability Company**
       _____
                        Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| **Account No.** <br><br> El Paso Energy Corp. <br> 1001 Louisiana Street <br> Houston, TX 77002 | | - | | | March 2001 - December 2002 <br> Contract claims for capital contributions advanced to Debtor. | X | X | X | 3,310,055.00 |
| **Account No.** | | | | | | | | | |
| **Account No.** | | | | | | | | | |
| **Account No.** | | | | | | | | | |
| **0** continuation sheets attached | | | | | Subtotal <br> (Total of this page) | | | | 3,310,055.00 |
| | | | | | Total <br> (Report on Summary of Schedules) | | | | 3,310,055.00 |

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          S/N:29772-031103   Best Case Bankruptcy

In re    **PDC Milford Power, LLC, a Massachusetts**          Case No. _____
            **Limited Liability Company**

_____
Debtor

# SCHEDULE H. CODEBTORS

     Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. In community property states, a married debtor not filing a joint case should report the name and address of the nondebtor spouse on this schedule. Include all names used by the nondebtor spouse during the six years immediately preceding the commencement of this case.

☐   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Power Development Company, LLC** **1900 West Loop South** **Suite 770** **Houston, TX 77027** **Codebtor with the Debtor in connection with the contingent, unliquidated and disputed claim of El Paso Energy Corp. as set forth on Schedule F.** | **El Paso Energy Corp.** **1001 Louisiana Street** **Houston, TX 77002** |

   **0**    continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                      Best Case Bankruptcy

In re     **PDC Milford Power, LLC, a Massachusetts**          Case No. _____
          **Limited Liability Company**
          _____
                                                    Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.

NOTE:   A party listed on this schedule will not receive notice of the filing of this case unless the party is also scheduled in the appropriate
        schedule of creditors.

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| | |

   **0**    continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

## United States Bankruptcy Court
### District of Massachusetts

In re   PDC Milford Power, LLC, a Massachusetts Limited Liability Company          Case No.   _____
                                            Debtor(s)                              Chapter      11

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Manager of the Mass. Limited Liability Co. named as the debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __12__ sheets [total shown on summary page plus 1], and that they are true and correct to the best of my knowledge, information, and belief.

Date   __2/26/04__                         Signature  _Douglas L. Corbett_
                                                       Douglas L. Corbett
                                                       Manager

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

Form 7
(12/03)

# United States Bankruptcy Court
### District of Massachusetts

In re    PDC Milford Power, LLC, a Massachusetts Limited Liability Company     Case No. _____
                            Debtor(s)                    Chapter    11

## STATEMENT OF FINANCIAL AFFAIRS

       This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

       Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

       *"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

       *"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

#### 1. Income from employment or operation of business

None
■

     State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

         AMOUNT            SOURCE (if more than one)

#### 2. Income other than from employment or operation of business

None
■

     State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

         AMOUNT            SOURCE

2

**3. Payments to creditors**

None ■ a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■ b. List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments \***

None ■ a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None ■ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

\* but see attached notice of intended sale of Debtor's sole asset by alleged secured creditors.

Software Copyright (c) 1996-2003 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

PAGE.03          2135210962                                                    FEB 02 2004 18:33

January 30, 2004

Dear Sir:

We will sell all of the right, title and interest of PDC Milford Power LLC ("PDC"), a
Massachusetts Limited Liability Company, in and to the certificates representing its five
(5%) percent membership interest in Milford Power Company, LLC, a Delaware Limited
Liability Company ("Borrower"), together with all options, warrants and rights to
purchase the members' interests in the Borrower and any security certificates
representing all of the right, title and interest in the membership interests of the Borrower
("Security Certificates") or other documents, instruments, or certificates representing the
member's interests in the Borrower, and all of such member's rights under the Amended
and Restated Limited Liability Agreement, dated March 25, 1999, among PDC and
Milford Holdings LLC ("Milford Holdings"), a Delaware Limited Liability Company, as
successor-in-interest to El Paso Milford Power I Company, LLC ("EPMPC"), a Delaware
Limited Liability Company, and El Paso Merchant Energy North America ("EPMENA"),
a Delaware Corporation, as successor in interest by merger to El Paso Milford Power II
Company, and all dividends, distributions, cash, securities, instruments and other
property from time to time paid, payable or otherwise distributed in respect of or in
exchange for all or any part of members' interests in the Borrower and all proceeds
thereof, if any; and all proceeds, products, and accessions of and to any and all of the
foregoing, including, without limitation, "proceeds" as defined in Section 9-102(64) of
the Uniform Commercial Code, if any, including whatever is received upon any sale,
exchange, collection or other disposition of the Pledged Collateral, as defined in the
Pledge Agreement, dated as of March 25, 1999, and any property into which any of the
Pledged Collateral is converted, whether cash or noncash proceeds, and any and all other
amounts paid or payable under or in connection with any of the Pledged Collateral, to the
highest qualified bidder, in public, as follows:

Day and Date: Monday, March 1, 2004

Time: 10:00 a.m.

Place: Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153

You are entitled to an accounting of the unpaid indebtedness secured by the property that
we intend to sell for a charge of $500.00. You may request an accounting by contacting
Claire Goldstein, Esq., at 212-310-8688.

NY1:\1235395\07\QH5R03!.DOC\36032.0003                    2

PAGE.04          713521096Z                                    FEB 02 2004 18:33

Yours faithfully,

KBC BANK N.V., NEW YORK BRANCH,
as Collateral Agent

By: _____ /s/ Susan M. Silver _____
   Name: Susan M. Silver
   Title:  Vice President & Team Leader

By: _____ /s/ Wim Verbraeken _____
   Name: Wim Verbraeken
   Title:   Head of Project Finance The Americas

cc:

El Paso Corporation
100 Louisiana Street
Houston, TX 77002
Attention: Director-Treasury

FEB 02 2004 18:33                                                    713521096Z          PAGE.02

## NOTICE OF DISPOSITION OF COLLATERAL

### BY OVERNIGHT COURIER AND FACSIMILE

TO:      PDC Milford Power LLC                        El Paso Gas Marketing Company
         200 High Street, 5th Floor                   c/o El Paso Energy Corporation
         Boston, Massachusetts 02110                  1001 Louisiana Street
         Attention: Michael Armitage,                 Houston, Texas 77002
           Manager and Kevin Joyce

                                                      Milford Holdings LLC
              -and-                                   c/o CPV Milford Management, LLC
                                                      8403 Colesville Road, Suite 915
         PDC Milford Power LLC                        Silver Spring, Maryland 20910
         c/o PDC, LLC                                 Attention: Douglas F. Egan
         12727 Kimberly Lane, Suite 303
         Houston, Texas 77024
         Attention: Douglas Corbett,
           Vice President and General
           Manager

              -and-

         PDC Milford Power LLC
         c/o Power Development Company
         1900 West Loop South
         Suite 770
         Houston, Texas 77027
         Attention: Mr. Douglas Corbett

         Milford Power Company, LLC
         55 Shelland Street
         Milford, Connecticut 06460
         Attention: General Manager

              -and-

         Milford Power Company, LLC
         200 High Street, 5th Floor
         Boston, Massachusetts 02110
         Attention: Michael Armitage

FROM:    KBC Bank N.V., New York
           Branch, as collateral agent
         125 West 55th Street
         New York, New York 10019

NY1:\1235389303\QR5R031.DOC\56032.0003

3

### 7. Gifts

None ■   List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

### 8. Losses

None ■   List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

### 9. Payments related to debt counseling or bankruptcy

None ■   List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 10. Other transfers

None ■   List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

### 11. Closed financial accounts

None ■   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

### 12. Safe deposit boxes

None ■   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

4

**13. Setoffs**

None
■
List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None
■
List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None
☐
If the debtor has moved within the two years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|
| 12727 Kimberley Lane<br>Houston, TX 77024 | | November 1, 2002 - June 30, 2003 |
| 440 Commercial Street<br>Boston, MA 02109 | | |
| 319 Southbridge Street<br>Auburn, MA 01501 | | |
| 200 High Street, 5th Floor<br>Boston, MA 02210 | | |

**16. Spouses and Former Spouses**

None
■
If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the six-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■
a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

5

None ■ b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■ c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None ☐ a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NO. (EIN) | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Milford Power Company, LLC | 76-0598624 | 55 Shelland Street Milford, CT 06460 | Electricity Production | Currently owned |

None ■ b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None ☐ a. List all bookkeepers and accountants who within the two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|
| Feeley & Driscol, P.C. 200 Portland Street Boston, MA 02114 | 1999 - present |

6

None  b. List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy case have audited the
☐     books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|--------------------------|
| Feeley & Driscol, P.C. | 200 Portland Street<br>Boston, MA 02114 | 1999 - present |

None  c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records
☐     of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|
| Feeley & Driscol, P.C.   . | 200 Portland Street<br>Boston, MA 02114 |

None  d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was
☐     issued within the two years immediately preceding the commencement of this case by the debtor.

| NAME AND ADDRESS | DATE ISSUED |
|------------------|-------------|
| To Creditors listed on Schedule D | |

### 20. Inventories

None  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory,
■     and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY<br>(Specify cost, market or other basis) |
|-------------------|----------------------|--------------------------------|

None  b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.
■

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY<br>RECORDS |
|-------------------|----------------------------------------------------------|

### 21 . Current Partners, Officers, Directors and Shareholders

None  a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.
■

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|------------------|--------------------|-----------------------|

None  b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns,
☐     controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE<br>OF STOCK OWNERSHIP |
|------------------|-------|---------------------------------------------|
| Doug Corbett | Manager | 0% |
| Power Development Company, LLC | | 99% (membership interest) |

### 22 . Former partners, officers, directors and shareholders

None  a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the
■     commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|------|---------|--------------------|

7

Note
■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

### 23 . Withdrawals from a partnership or distributions by a corporation

Note
■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 24. Tax Consolidation Group.

Note
☐    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within the six-year period immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER |
|---|---|
| Power Development Company, LLC | 04-3398338 |

### 25. Pension Funds.

Note
■    If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within the six-year period immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER |
|---|---|

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date    _2/24/04_      Signature _Douglas L. Corbett_

Douglas L. Corbett
Manager

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

Software Copyright (c) 1996-2003 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037      Best Case Bankruptcy

## United States Bankruptcy Court
### District of Massachusetts

In re     PDC Milford Power, LLC, a Massachusetts
          Limited Liability Company

Case No. _____

                                    Debtor

Chapter _____ 11 _____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| Michael Armitage | Membership Interest | 1% | Membership |
| Power Development Company, LLC 1900 West Loop South Suite 770 Houston, TX 77027 | Membership Interest | 99% | Membership |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Manager of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date ___2/24/04___

Signature _____
Douglas L. Corbett
Manager

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

___0___ continuation sheets attached to List of Equity Security Holders

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

# United States Bankruptcy Court
## District of Massachusetts

In re   PDC Milford Power, LLC, a Massachusetts  Limited Liability Company

Debtor(s)

Case No.

Chapter   11

# VERIFICATION OF CREDITOR MATRIX

I, the Manager of the Mass. Limited Liability Co. named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:   2/24/04

Douglas L. Corbett/Manager
Signer/Title

AUSTRALIA AND NEW ZEALAND
BANKING GROUP LIMITED
1177 AVENUE OF AMERICAS
NEW YORK, NY 10036-2798

BNP PARIBAS
C/O KBC BANK N.V.
125 WEST 55TH STREET
NEW YORK, NY 10019

EL PASO ENERGY CORP.
1001 LOUISIANA STREET
HOUSTON, TX 77002

INTERNAL REVENUE SERVICE
PO BOX 9112
JFK BUILDING
BOSTON, MA 02203

KBC BANK N.V.
NEW YORK BRANCH
125 WEST 55TH STREET
NEW YORK, NY 10019

MASS. DEPART. OF REVENUE
BANKRUPTCY UNIT
PO BOX 55484
BOSTON, MA 02205

NIB CAPITAL BANK N.V.
C/O KBC BANK N.V.
125 WEST 55TH STREET
NEW YORK, NY 10019

SUMITOMO MITSUI BANKING CORP.
C/O KBC BANK N.V.
125 WEST 55TH STREET
NEW YORK, NY 10019

TEACHERS INSURANCE AND
ANNUITY ASSOCIATION OF
AMERICA
NEW YORK, NY 10017

TRUST COMPANY OF THE WEST
200 PARK AVENUE
22ND FLOOR
NEW YORK, NY 10166

WESTLB AG
C/O KBC BANK N.V.
125 WEST 55TH STREET
NEW YORK, NY 10019

## CONSENT

The undersigned, being the majority member of PDC Milford Power, LLC, a Massachusetts limited liability company (the "LLC") formed, pursuant to the Certificate of Organization, the Operating Agreement, and the provisions of the Laws of the Commonwealth of Massachusetts, hereby consents to the following actions and adopts the following votes and directs that this writing be placed with the records of such meetings of the LLC and be treated for all purposes as votes taken at meeting:

VOTED:     That Douglas L. Corbett, as Manager, is hereby authorized and empowered to execute and file a petition under Chapter 11 of the United States Bankruptcy Code on behalf of the LLC, and to execute any and all documents necessary to proceed with a Chapter 11 case; and

VOTED:     That Jay F. Theise, Esq. and the law firm of Rubin and Rudman LLP be hereby retained to represent the LLC in all proceedings which may be commenced under or as a result of these votes.

IN WITNESS WHEREOF, the undersigned, being the majority member of the LLC, have hereunto set its hand and seal.

Dated: February 26, 2004

Power Development Company, LLC

**CORPORATE OWNERSHIP STATEMENT**
Federal Rule of Bankruptcy Procedure 1007(a)(1)

Power Development Company, LLC  holds a 99% membership interest in the Debtor.

**United States Bankruptcy Court**
**District of Massachusetts**

FEB 27 '04 PM 2:41 USB

In re  PDC Milford Power, LLC, a Massachusetts Limited Liability Company
_____
Debtor(s)

Case No. _____
Chapter    11    _____

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept fees that may be awarded .............    $   presently unknown

   Prior to the filing of this statement I have received...............................................    $            20,000.00*

   Balance Due....none at this time ..............................................................    $   unknown

2.   The source of the compensation paid to me was:

   ☐ Debtor     ■ Other (specify):     *as a retainer paid by the Debtor's 99% member as is more fully set forth in Debtor's Application to Retain Counsel and the Affidavit of Proposed Counsel to the Debtor.

3.   The source of compensation to be paid to me is:

   ☐ Debtor     ■ Other (specify):

4.   ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.   In return for the above-disclosed fee, and fees to be earned, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a. Analysis of the debtor's financial situation, and rendering legal service for all aspects of the bankruptcy case, including;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed] Anticipated major litigation and other duties as more fully set forth in Debtor's Application to Retain Counsel and Affidavit of Proposed Counsel.

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:     n/a

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:    2 24 04

Jay F. Theise (BBO# 495660)
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
617-330-7000

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT, DISTRICT OF MASSACHUSETTS
Proceeding Memorandum/Order of Court

In re:  PDC Milford Power, LLC                          **Case#:** 04-11521    **Ch:** 11

**MOVANT/APPLICANT/PARTIES:**
    1.  #9 Request for Reconsideration, for Additional Insurmation and a Reservation
of Rights by KBC Bank N.V., New York Branch, as Agent and Collateral Agent,
Regarding Application by Debtor to Retain Counsel
        #34 Response of Debtor to Request for Reconsideration
    2.  #15 Motion of KBC Bank N. V. New York Branch, as Agento and Collateral
Agent, to Dismiss Chapter 11 Case or, in the Alternative, for Relief from the
Automatic Stay to Foreclose on Collateral
        #35 Response of Debtor to Motion of KBC Bank N.V., New York Branch, As Agent
and Collateral Agent, to Dismiss Chapter 11 Case or, In the Alternative, For
Relief From the Automatic Stay to Foreclose on Collateral
    3.  #22 Motion of KBC Bank N. V. New York Branch, as Agent and Collateral Agent
to File Under Seal Supplement to Motion of KBC Bank NV New York Branck, as Agent
and Collateral Agent, to Dismiss Chapter 11 Case or, in the Alternative, for
Relief from Stay
    (Cormier) (Obj. 4/12/2004 by Noon)

**OUTCOME:**

[ ]—By Agreement of the Parties

_____Granted - Approved - Sustained
_____Denied - Denied without prejudice - Withdrawn in open court   Overruled
_____OSC enforced/released

_____Continued to:_____For:_____ _____

_____Formal order/stipulation to be submitted by:_____Date due_____
_____Findings and conclusions dictated at close of hearing incorporated by reference.

_____Taken under advisement:  Brief(s) due_____ From_____

                              Response(s) due_____ From_____

_____Fees allowed in the amount of:_$_____ Expenses of:_$_____

_____No appearance/response by:_____

_____DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:

_____#15  Motion is granted as motion to dismiss. Case
_____is dismissed.

_____#9  Moot

_____

_____

_____

_____

IT IS SO NOTED:                      IT IS SO ORDERED:

_Patricia R. Deasey_                 _William C. Hillman_  Dated: _4/26/04_
Courtroom Deputy                     William C. Hillman, U.S. Bankruptcy Judge

# EXHIBIT 5

**DISMISSED, CLOSED**

# United States Bankruptcy Court
## District of Massachusetts (Boston)
## Bankruptcy Petition #: 04-11521

*Assigned to:* Judge William C. Hillman
Chapter 11
Voluntary
Asset

*Date Filed:* 02/27/2004
*Date Terminated:*
06/02/2004
*Date Dismissed:* 04/26/2004

**PDC Milford Power, LLC,** *a Massachusetts*
*Limited Liability Co.*
1900 West Loop South
Ste. 770
Houston, TX 77027
Tax id: 04-3485191
*Debtor*

represented by **Jay F. Theise**
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000

**Michael J. McGinnis**
1001 Louisiana
Suite N1840A
Houston, TX 77002
(713) 420-3972
Fax : (713) 420-5669

**John Fitzgerald**
Office of the US Trustee
10 Causeway Street
Boston, MA 02222
*Assistant U.S. Trustee*

| Filing Date | # | Docket Text |
|---|---|---|
| 02/27/2004 | 1 | Chapter 11 Voluntary Petition, Disclosure of Attorney Compensation in the amount of $20,000.00, Vote, 20 Largest and Matrix. Receipt Number 510716, Filing Fee in the Amount of $839 Filed by PDC Milford Power, LLC rep by Jay F. Theise. (cw, usbc) (Entered: 02/27/2004) |
| 02/27/2004 | 2 | Order to Update. Exhibit A due 3/15/2004. (cw, usbc) (Entered: 02/27/2004) |
| 02/27/2004 | 3 | Application to Employ Jay F. Theise and Rubin and Rudman LLP as Counsel With Affidavit Filed by Debtor PDC Milford Power, LLC. c/s (caf, ) (Entered: 03/01/2004) |
| 03/02/2004 | | First Meeting of Creditors scheduled on 341(a) meeting to be held on |

LIVE database - Docket Report

| | | |
|---|---|---|
| | | 3/31/2004 at 01:45 PM at Room 1190, US Trustee Office. (mjv, USBC) (Entered: 03/02/2004) |
| 03/09/2004 | 4 | Court's Notice of 341 sent. (admin, ) (Entered: 03/09/2004) |
| 03/10/2004 | 5 | Exhibit A. Filed by Debtor PDC Milford Power, LLC. N/A (caf, ) (Entered: 03/11/2004) |
| 03/11/2004 | 6 | Endorsed Order dated 3/11/2004 Re: 3 Application to Retain Jay F. Theise and Rubin and Rudman LLP as Counsel. Approved. (caf, ) (Entered: 03/11/2004) |
| 03/11/2004 | 7 | BNC Certificate of Mailing - Meeting of Creditors. Service Date 03/11/2004. (Related Doc # 4) (Admin.) (Entered: 03/12/2004) |
| 03/19/2004 | 8 | Notice of Appearance and Request for Notice *with Certificate of Service* by Arthur R. Cormier Jr.. Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 03/19/2004) |
| 03/19/2004 | 9 | Motion to Reconsider (Re: 6 Order on Application to Employ) *and for Additional Disclosure, and Reservation of Rights; with Certificate of Service* Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 03/19/2004) |
| 03/19/2004 | 10 | Exhibit *Proposed Order with Certificate of Service* (Re: 9 Motion to Reconsider). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 03/19/2004) |
| 03/25/2004 | 11 | Hearing Scheduled for 4/14/2004 at 09:30 AM Boston Courtroom 3 - WCH RE: 9 Motion to Reconsider 6 Order on Application to Employ and for Additional Disclosure, and Reservation of Rights; with Certificate of Service Filed by Creditor KBC Bank N.V., New York Branch. Objections due by 4/12/2004 at 12:00 PM. (caf, ) (Entered: 03/25/2004) |
| 03/25/2004 | 12 | Court Certificate of Mailing. RE: 11 Hearing Scheduled for 4/14/2004 at 09:30 AM Boston Courtroom 3 - WCH RE: 9 Motion to Reconsider 6 Order on Application to Employ and for Additional Disclosure, and Reservation of Rights; with Certificate of Service Filed by Creditor KBC Bank N.V., New York Branch. Objections due by 4/12/2004 at 12:00 PM. (caf, ) (Entered: 03/25/2004) |
| 03/30/2004 | 13 | 434 (Injunctive Relief): Complaint by PDC Milford Power, LLC against Milford Holdings, LLC , KBC Bank N.V. , Australia & New Zealand Banking Group Ltd. , BNP Paribas , NIB Capital Bank N.V. , Teachers Insurance and Annuity Assoc. of America , West LB AG , Sumitomo Mitsui Banking Corp. , Trust Company of the West , |

| | | |
|---|---|---|
| | | Export Development Canada . Receipt Number 512172, Fee Amount $150 (kpm, USBC) (Entered: 03/30/2004) |
| 03/30/2004 | 14 | Certificate of Service of Notice of Hearing (Re: 9 Motion to Reconsider). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 03/30/2004) |
| 04/02/2004 | 15 | Motion to Dismiss Case *or, in the Alternative, for Relief from Stay* Filed by Creditor KBC Bank N.V., New York Branch (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 16 | Exhibit D *(1 of 4)* (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Attachments: # 1 Exhibit D (2 of 4)) (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 17 | Exhibit D *(3 of 4)* (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 18 | Exhibit D *(4 of 4)* (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 19 | Exhibit E (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Attachments: # 1 Exhibit F) (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 20 | Exhibit E (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 21 | Exhibit G (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Attachments: # 1 Exhibit H# 2 Exhibit I# 3 Exhibit J# 4 Exhibit K# 5 Exhibit L# 6 Proposed Order) (Cormier, Arthur) (Entered: 04/02/2004) |
| 04/02/2004 | 22 | Motion to Seal Supplement to Motion of KBC Bank N.V., New York Branch, as Agent and Collateral Agent, To Dismiss Ch.11 Case, or, in the Alternative, for Relief from the Automatic Stay to Foreclose on Collateral With Exhibt A And B Attached. Filed by Creditor KBC Bank N.V., New York Branch (caf, ) (Entered: 04/05/2004) |
| 04/06/2004 | 23 | Hearing Scheduled for 4/14/2004 at 09:30 AM Boston Courtroom 3 - WCH Re: 15 Motion to Dismiss Case or, in the Alternative, for Relief from Stay Filed by Creditor KBC Bank N.V., New York Branch AND [22] Motion to Seal Supplement to Motion of KBC Bank N.V., |

|  |  | New York Branch, as Agent and Collateral Agent, To Dismiss Ch.11 Case, or, in the Alternative, for Relief from the Automatic Stay to Foreclose on Collateral With Exhibt A And B Attached. Filed by Creditor KBC Bank N.V., New York Branch. (caf, ) (Entered: 04/06/2004) |
|---|---|---|
| 04/06/2004 | 24 | Court Certificate of Mailing. RE: 23 Hearing Scheduled for 4/14/2004 at 09:30 AM Boston Courtroom 3 - WCH Re: 15 Motion to Dismiss Case or, in the Alternative, for Relief from Stay Filed by Creditor KBC Bank N.V., New York Branch AND [22] Motion to Seal Supplement to Motion of KBC Bank N.V., New York Branch, as Agent and Collateral Agent, To Dismiss Ch.11 Case, or, in the Alternative, for Relief from the Automatic Stay to Foreclose on Collateral With Exhibt A And B Attached. Filed by Creditor KBC Bank N.V., New York Branch. (caf, ) (Entered: 04/06/2004) |
| 04/06/2004 | 25 | Certificate of Service (Re: [22] Motion to Seal, ). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/06/2004) |
| 04/06/2004 | 26 | Certificate of Service (Re: 15 Motion to Dismiss Case). Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/06/2004) |
| 04/06/2004 | 27 | Joint Motion to Set Hearing (Re: 9 Motion to Reconsider, 15 Motion to Dismiss Case, [22] Motion to Seal, ) *with Certificate of Service* Filed by Creditor KBC Bank N.V., New York Branch, Debtor PDC Milford Power, LLC (Cormier, Arthur) (Entered: 04/06/2004) |
| 04/06/2004 | 28 | Motion For Expedited Determination (Re:27 Motion to Set Hearing) *with Certificate of Service* Filed by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/06/2004) |
| 04/08/2004 | 29 | Endorsed Order dated 4/8/2004 re: 28 Motion For Expedited Determination Re:27 Motion to Reschedule Hearing Filed by Creditor KBC Bank N.V., New York Branch. Granted. Hearings rescheduled to 4/26/2004 at 10:30am. (caf, ) (Entered: 04/08/2004) |
| 04/08/2004 | 30 | Endorsed Order dated 4/8/2004 re: 27 Joint Motion Reschedule Hearing Re: 15 Motion to Dismiss Case And [22] Motion to Seal. Filed by Creditor KBC Bank N.V., New York Branch, Debtor PDC Milford Power, LLC. Granted. Hearing rescheduled for 4/26/2004 at 10:30 AM Boston Courtroom 3 - WCH. Attorney Cormier to notify all parties of new date and submit a certificate of service to the court. (caf, ) (Entered: 04/08/2004) |
| 04/08/2004 | 31 | Certificate of Service of Notice of Hearing (Re: 9 Motion to Reconsider, 15 Motion to Dismiss Case, [22] Motion to Seal, ). Filed |

LIVE database - Docket Report

| | | by Creditor KBC Bank N.V., New York Branch (Cormier, Arthur) (Entered: 04/08/2004) |
|---|---|---|
| 04/08/2004 | 34 | Response by Debtor PDC Milford Power, LLC Re: 9 Request Motion for Reconsideration and additional information Re: 6 Order on Application to Employ Filed by Creditor KBC Bank N.V., New York Branch. c/s (caf, ) (Entered: 04/12/2004) |
| 04/10/2004 | 32 | BNC Certificate of Mailing - PDF Document. Service Date 04/10/2004. (Related Doc # 29) (Admin.) (Entered: 04/12/2004) |
| 04/10/2004 | 33 | BNC Certificate of Mailing - PDF Document. Service Date 04/10/2004. (Related Doc # 30) (Admin.) (Entered: 04/12/2004) |
| 04/14/2004 | 35 | Response by Debtor PDC Milford Power, LLC Re: 15 Motion to Dismiss Case or, in the Alternative, for Relief from Stay Filed by Creditor KBC Bank N.V., New York Branch AND [22] Motion to Seal Supplement to Motion of KBC Bank N.V., New York Branch, as Agent and Collateral Agent, To Dismiss Ch.11 Case, or, in the Alternative, for Relief from the Automatic Stay to Foreclose on Collateral. c/s (caf, ) (Entered: 04/15/2004) |
| 04/22/2004 | 36 | Reply *with Certificate of Service* by Creditor KBC Bank N.V., New York Branch Re: 34 Response by Debtor PDC Milford Power, LLC Re: 9 Request Motion for Reconsideration and additional information Re: 6 Order on Application to Employ Filed by Creditor KBC Bank N.V., New York Branch. c/s (caf, ) (Cormier, Arthur) (Entered: 04/22/2004) |
| 04/22/2004 | 37 | Reply *with Certificate of Service* by Creditor KBC Bank N.V., New York Branch Re: 35 Response by Debtor PDC Milford Power, LLC Re: 15 Motion to Dismiss Case or, in the Alternative, for Relief from Stay Filed by Creditor KBC Bank N.V., New York Branch AND [22] Motion to Seal Supplement to Motion of KBC Bank N.V., New York Branch, as Agent and Collateral Agent, To Dismiss Ch.11 Case, or, in the Alternative, for Relief from the Automatic Stay to Foreclose on Collateral. c/s (caf, ) (Cormier, Arthur) (Entered: 04/22/2004) |
| 04/26/2004 | | Hearing Held RE: 30 Order on Motion To Set Hearing re: 15 Motion to Dismiss Case And [22] Motion to Seal. Filed by Creditor KBC Bank N.V., New York Branch, Debtor PDC Milford Power, LLC. (caf, ) (Entered: 04/27/2004) |
| 04/26/2004 | 38 | Order dated 4/26/2004 re: 15 Motion to Dismiss Case or, in the Alternative, for Relief from Stay Filed by Creditor KBC Bank N.V., New York Branch. Granted as to motion to dismiss. Case Dismissed. 9 Request for Reconsideration for Additional Information filed by Creditor KBC Bank N.V., New York Branch. Moot. (caf, ) (Entered: |

| | | 04/27/2004 |
|---|---|---|
| 04/27/2004 | 39 | Notice of Dismissal (caf, ) (Entered: 04/27/2004) |
| 04/27/2004 | 40 | Notice of Appearance and Request for Notice by Michael J. McGinnis. Filed for Debtor PDC Milford Power, LLC c/s (mjt, usbc) (Entered: 04/29/2004) |
| 04/29/2004 | 41 | BNC Certificate of Mailing. Service Date 04/29/2004. (Related Doc # 39) (Admin.) (Entered: 04/30/2004) |
| 04/29/2004 | 42 | BNC Certificate of Mailing - PDF Document. Service Date 04/29/2004. (Related Doc # 38) (Admin.) (Entered: 04/30/2004) |
| 05/25/2004 | 43 | Transcript of Hearing Held 4/26/2004 RE: 9 Motion to Reconsider filed by Creditor KBC Bank N.V., New York Branch, 15 Motion to Dismiss Case filed by Creditor KBC Bank N.V., New York Branch, [22] Motion to Seal, filed by Creditor KBC Bank N.V., New York Branch (mjt, usbc) (Entered: 05/25/2004) |
| 06/02/2004 | | Bankruptcy Case Closed (caf, ) (Entered: 06/02/2004) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/04/2004 11:43:19 | | |
| **PACER Login:** wg0189 | **Client Code:** | 56032.0003-3236 |
| **Description:** Docket Report | **Case Number:** | 04-11521 |
| **Billable Pages:** 4 | **Cost:** | 0.28 |

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(a) Filed Jun 14 2004 6:29PM EDT
OF THE RULES OF THE COURT OF CHANCERY Filing ID 3729803

The information contained herein is for the use by the court
statistical and administrative purposes only.  Nothing stated herein shall
deemed an admission by or binding upon any party.

1.    **Caption of Case:**

Milford Power Co. LLC v. PDC Milford Power, LLC

2.    **Date filed:** June 14, 2004

3.    **Name and Address of counsel for plaintiff:**

Thomas R. Hunt, Jr. (#466)
Andrew H. Lippstone (#4117)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

4.    **Short Statement and nature of claim asserted: Action
      seeking declaration that defendant has withdrawn as a
      member of plaintiff limited liability company.**

5.    **Substantive field of law involved (check one):**

| | | | |
|---|---|---|---|
| ☐ Administrative law | | ☐ Trade secrets/ |
| ☐ Commercial law | | ☐ trade mark/or other |
| ☐ Constitutional law | | ☐ intellectual property |
| ☒ Corporation law | | ☐ Trusts |
| ☐ Guardianship | | ☐ Wills and estates |
| ☐ Labor law | | ☐ Zoning |
| ☐ Real Property | | ☐ Other |

6.    **Related case(s):** n/a

7.    **Basis of court's jurisdiction (including the citation of
      any statute conferring jurisdiction):**

6 Del. C. § 18-101 et seq.; Del. Ct. Ch. R. 57.

8.    **If the complaint seeks preliminary equitable relief, state
      the specific preliminary relief sought:**

n/a

9.    **If the complaint seeks summary or expedited proceedings,
      check here ☐ .**

_____
Signature of Attorney of Record
Thomas R. Hunt, Jr. (#466)
Andrew H. Lippstone (#4117)

# EXHIBIT 11

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| PDC MILFORD POWER, LLC | ) | **Chapter 11** |
| | ) | **Case No. 04-11521 (WCH)** |
| Debtor. | ) | |
| | ) | |

**RESPONSE OF DEBTOR TO REQUEST FOR RECONSIDERATION
AND ADDITIONAL INFORMATION BY KBC BANK N.V., NEW YORK
BRANCH, AS AGENT AND COLLATERAL AGENT REGARDING
APPLICATION BY DEBTOR TO RETAIN COUNSEL**

PDC Milford Power, LLC (the "Debtor") hereby objects to the request of KBC Bank,

N.V., New York Branch, ("KBC Bank") as agent and collateral agent to the lenders, that this

Court reconsider its Order of March 11, 2004 approving the Application of the Debtor to Retain

Counsel (the "Application"). In support thereof, the Debtor states as follows:

**FACTUAL BACKGROUND**

1.      On February 27, 2004, the Debtor filed with this Court its voluntary petition for

relief (the "Petition") under Chapter 11 of the United States Bankruptcy Code (the "Code").

Along with its Petition, the Debtor filed the Application and the Affidavit of Proposed Counsel

to the Debtor (the "Affidavit") with the Court.

2.      Copies of the Petition, Application and Affidavit were filed and served on KBC

Bank and its attorneys, the United States Trustee and the other parties set forth on the relevant

Certificate of Service pursuant to Fed. R. Bankr. P. 2014.

03/08/04 PM 4:35 USB

3. No objection was entered by any party, including the KBC Bank or the United States Trustee.

4. On March 11, 2004 the Court entered an Order, pursuant to section 327 of the Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the employment of Jay F. Theise, Esq., and Rubin and Rudman LLP in the above-referenced case.

5. On March 19, 2004, KBC Bank filed its request for reconsideration of this Court's earlier Order authorizing the employment of Jay F. Theise, Esq. and Rubin and Rudman.

6. KBC Bank alleges that the Application suggests that Rubin and Rudman is an interested party in this matter and further requests additional information that is neither required by the Bankruptcy Code or Rules nor likely to establish grounds for the disqualification of Mr. Theise or Rubin and Rudman.

**RUBIN AND RUDMAN IS DISINTERESTED**

7. The Bankruptcy Code provides that a Debtor may employ any attorney or other professional that does not "hold an interest adverse to the estate, and that are disinterested persons. . . ." 11 U.S.C. §327(a).

8. In the Application, it was disclosed that a partner in Rubin and Rudman is a member of Power Development Company, LLC, the 99% owner of the Debtor. It was further disclosed that Power Development Company, LLC paid the Debtor's retainer and will pay any legal fees incurred by the Debtor in the future.

9. No further disclosure is required by either the Bankruptcy Code or Rules.

10. Notwithstanding the membership interest in Power Development Company, LLC of one partner of Rubin and Rudman, while the partner may arguably be disqualified, the firm

CPROSP'04 P⁻ 4:36 USB

should not be disqualified from the representation of the Debtor.  See In re Timber Creek, Inc.,

187 B.R. 240 (Bankr.W.D.Tenn.1995) (partner was director of debtor and a director and

shareholder of debtor's parent).

11.    Here, the relationship between the Debtor and the Rubin and Rudman partner is

even less pronounced than in In re Timber Creek, Inc., as the partner in this matter is not a

director of the Debtor, and in fact holds no interest in the Debtor.  Further, the partner is not an

insider of the Debtor as that term is defined by the Bankruptcy Code.

12.    Likewise, the representation, as previously approved by this Court, does not run

afoul of this Court's determination in In re Anvar Corp., where the Court ruled that an attorney

was statutorily disqualified where he was a pre-filing creditor of the Debtor, an equity holder and

officer of the debtor.  See In re Anver Corp., 44 B.R. 615, 618-19 (Bankr.D.Mass. 1984).  It

should be noted that in Anvar this Court disqualified counsel sua sponte.  See id. at 617.

However, in the instant case, the Court, upon consideration of the Application, previously

approved the Application and allowed the representation of this Debtor by Mr. Theise and Rubin

and Rudman.

13.    Furthermore, at the meeting of creditors, held on March 31, 2004 pursuant to

section 341 of the Bankruptcy Code, the Debtor made a full and complete disclosure of the

ownership interests in the 99% owner of the Debtor.  The Debtor disclosed that the 99% owner

of the Debtor is owned by a number of entities.  Specifically, a partner in the law firm of Rubin

and Rudman LLP is, with his wife, trustee of a family trust which owns 22% of the Debtor's

99% owner.  An attorney for KBC Bank was in attendance at this meeting.

APR 08 '04 PM 4:36 USB

**WHEREFORE**, for the forgoing reasons the Debtor objects to KBC Bank's request and prays that the Court deny the relief sought by KBC Bank, and provide whatever further and other relief is necessary.

PDC Milford Power, LLC
By its attorney,

Jay F. Thaise, Esq.
BBO #495660
RUBIN AND RUDMAN LLP
50 Rowes Wharf
Boston, MA 02110
Tel: (617) 330-7000
Fax: (617) 439-9556

590742_1                                    4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)



In re:                                    )
                                          )
PDC MILFORD POWER, LLC                    )    **Chapter 11**
                                          )    **Case No. 04-11521 (WCH)**
                      Debtor.             )
                                          )

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served the **Response of Debtor to Request for Reconsideration and Additional Information by KBC Bank N.V., New York Branch, as Agent and Collateral Agent Regarding Application by Debtor to Retain Counsel** in the above-referenced matter by mailing a copy, first class postage prepaid, to those parties on the attached service list.

And by hand delivery to:

Gary L. Donahue, Esq.
United States Trustee
1101 Thomas P. O'Neill Federal Office Building
10 Causeway Street, Room 1184
Boston, MA 02222

Stephen G. DeLisle, BBO #650941
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110-3319
617-330-7000

Dated: April 8, 2004

593235_1

APR 08 '04 PM 4:06 LSB

## SERVICE LIST

Andrew M. Troop, Esq.
WEIL, GOTSHAL & MANGES LLP
100 Federal Street
Boston, Massachusetts 02110

BNP Paribas
c/o KBC Bank N.V.
125 West 55th Street
New York, NY  10019

Internal Revenue Service
Insolvency Groups – Stop 20800
P.O. Box 9112
25 New Sudbury Street
Boston, MA  02203

NIB Capital Bank NV
c/o KBC Bank N.V.
125 West 55th Street
New York, NY  10019

Teachers Insurance and
Annuity Association of America
730 Third Avenue, 4th Floor
New York, NY  10017

Westlb AG
c/o KBC Bank N.V.
125 West 55th Street
New York, NY  10019

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9494
Boston, MA  02205

Australia and New Zealand
Banking Group Limited
1177 Avenue of the Americas
New York, NY  10036

El Paso Energy Corp.
1001 Louisiana Street
Houston, TX 77002

Sumitomo Mitsui Banking Corp.
c/o KBC Bank N.V.
125 West 55th Street
New York, NY  10019

Trust Company of the West
200 Park Avenue
22nd Floor
New York, NY  10166