UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PDC MILFORD POWER LLC, | ) | REQUEST FOR ORAL ARGUMENT |
| Plaintiff, | ) | |
| v. | ) | |
| MILFORD HOLDINGS, LLC, KBC BANK N.V., AUSTRALIA AND NEW ZEALAND BANKING GROUP LIMITED, BNP PARIBAS, NIB CAPITAL BANK N.V., TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, WestLB AG, SUMITOMO MITSUI BANKING CORPORATION, TRUST COMPANY OF THE WEST and EXPORT DEVELOPMENT CANADA, | ) | Civil Action No. 04 10857 NG |
| Defendants. | ) | |

### KBC BANK N.V.'s MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(1), 12(b)(2) and 12(b)(6) MOTIONS TO DISMISS

### INTRODUCTION

Defendant KBC Bank N.V. ("KBC") submits this Memorandum of Law in

Support of Its Rule 12(b)(1), Rule 12(b)(2) and 12(b)(6) Motions to Dismiss.

### SUMMARY OF ARGUMENT

The Rule 12(b)(1) motion to dismiss should be granted because the Court lacks

subject matter jurisdiction. Although Plaintiff PDC Milford Power LLC ("Plaintiff")

conclusarily alleges that the Court possesses subject matter jurisdiction over this matter

pursuant to 28 U.S.C. § 1332 (Compl., ¶ 12), Plaintiff is a citizen of New York and

Massachusetts and two of the Defendants are also citizens of New York and Massachusetts. Where limited liability companies are parties to a lawsuit, the controlling legal principle is that the limited liability company is a citizen of every state in which any of its members ("First Tier Members") are citizens and, if its members are themselves limited liability companies, it is a citizen of every state in which the members of its members ("Second Tier Members") are citizens. If its Second Tier Members are themselves limited liability companies, the limited liability company is a citizen of every state in which the members of the Second Tier Member ("Third Tier Members") are citizens. Applying this principle here, Plaintiff is a citizen of New York and Massachusetts because it has Second Tier Members who are citizens of Massachusetts and New York. Two of the defendants are New York and Massachusetts citizens. Defendant Teachers Insurance and Annuity Association of America ("Teachers") is a New York citizen because it is a New York corporation with its principal place of business in New York. Defendant Milford Holdings, LLC ("MH LLC") is a New York and Massachusetts citizen because it has a Second Tier Member who is a citizen of New York and a Third Tier Member who is a citizen of Massachusetts.

The Rule 12(b)(2) motion to dismiss should be granted because the court does not possess personal jurisdiction over KBC. There is no long-arm jurisdiction because none of the long-arm provisions are applicable. There is no specific jurisdiction because Plaintiff's claims do not arise out of any contact KBC has had with Massachusetts. There is no general jurisdiction because KBC has no offices, employees or property in Massachusetts, and it does not systematically and continuously participate in loans to entities located in Massachusetts.

The Rule 12(b)(6) motion to dismiss should be granted because Plaintiff's Complaint fails to state a claim upon which relief may be granted against KBC. Specifically, the breach of fiduciary duty claims (Counts I, II and VI) fail to state a claim upon which relief may be granted because, *inter alia*, there is no fiduciary duty owing from KBC (or the other Lender Defendants) to Plaintiff. Counts III and V (breach of contract and implied covenant of good faith and fair dealing) fail to state a claim upon which relief may be granted because, *inter alia*, KBC (and the other Lender Defendants, as defined hereinafter) are not parties to the contract on which the claims are based. Count IV (lender liability) fails to state a claim upon which relief may be granted because, *inter alia*, (1) Plaintiff is not the borrower and therefore lacks standing to bring a lender liability claim, and (2) Plaintiff fails to allege the essential elements of a tortious interference claim. Count VIII (Accord and Satisfaction) fails to state a claim upon which relief may be granted because, *inter alia*, (1) accord and satisfaction is an affirmative defense, and (2) accord and satisfaction requires a plaintiff to plead that there has been a compromise between plaintiff and defendant, and no such compromise has been pled. Lastly, the equitable subordination claim (Count VII) fails to state a claim upon which relief may be granted because, *inter alia*, (1) relief under Section 510(c) of the United States Bankruptcy Code, 11 U.S.C. § § 101 (*et seq.*) (the "Bankruptcy Code") is only available in a bankruptcy case, and (2) Section 510(c) does not in any event permit Defendants' claim to be subordinated to Plaintiff's equity interest.

## PROCEDURAL HISTORY

Plaintiff filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy

Court") on February 27, 2004.  (Affidavit of Danielle Krause ("Krause Aff."), ¶ 2(a); Ex. 1 -- Docket Entry No. 1.)  As an adjunct to its chapter 11 case, Plaintiff also filed an adversary proceeding against KBC, Australia and New Zealand Banking Group Limited ("ANZ"), BNP Paribas ("BNP"), NIB Capital Bank N.V. ("NIB"), Teachers Insurance and Annuity Association of America ("Teachers"), WestLB AG ("West"), Sumitomo Mitsui Banking Corporation ("Sumitomo"), Trust Company of the West ("West") and Export Development Canada ("EDC") (collectively the "Lender Defendants") and MH LLC in the Bankruptcy Court.  (Krause Aff., ¶ 2(a); Ex. 1 -- Docket Entry No. 13.)  On April 26, 2004, the Bankruptcy Court dismissed Plaintiff's bankruptcy filing.  On June 2, 2004, the Bankruptcy Court officially closed the chapter 11 case.  (Krause Aff., ¶ 2(a); Ex. 1 -- Docket Entry No. 44.)

On June 14, 2004 MPC filed a declaratory judgment action against Plaintiff seeking a declaration that Plaintiff had forfeited its membership interest in MPC by virtue of violating the limited liability company agreement governing the rights of the members of MPC.  (Krause Aff., ¶ 2(j); Ex. 10.)  On June 15, 2004, KBC commenced an action in the Supreme Court of New York to foreclose on Plaintiff's membership interests, if any, in MPC.  Plaintiff has not filed a responsive pleading.[1]

## FACTUAL BACKGROUND

I.    **The Parties**.

    A.    The Plaintiff and Its Members

---

[1] On June 7, 2004, KBC's counsel wrote to Plaintiff's counsel and represented that KBC would not, prior to June 30, 2004, conclude a foreclosure sale of Plaintiff's membership interest, if any, in MPC, but confirmed earlier discussions that KBC had and/or would before June 30, 2004 take any and all actions required before a foreclosure sale could be conducted, including filing a foreclosure action.  (Krause Aff., ¶ 2(b); Ex. 2.)

Plaintiff is a limited liability company organized under the laws of the Commonwealth of Massachusetts. (Compl., ¶ 1.) Plaintiff's Complaint is devoid of any allegation concerning the citizenship of its members. However, the extrinsic evidence establishes that Plaintiff is a citizen of Massachusetts and New York. During the examination of Plaintiff taken pursuant to Section 341 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2003(b)(1) (the "Section 341 Examination") in connection with the now-dismissed bankruptcy case, Plaintiff's counsel (Jay Theise of Rubin & Rudman LLP) stated that Plaintiff has two First Tier Members – Michael Armitage and Power Development LLC. (Krause Aff., ¶ 2(c); Ex. 3 at p. 6.)[2] Mr. Theise further stated on the record during the Section 341 Examination that First Tier Member Power Development LLC itself had twelve members, including Michael Zarin, two Zarin Family Trusts, Thomas Atkins ("Atkins"), and the DeTore Family Trust. (Krause Aff., ¶ 2(c); Ex. 3 at pp. 9-12.) Michael Zarin ("Zarin"), the Zarin Family Trusts, Thomas Atkins, and the DeTore Family Trust are Second Tier Members of Plaintiff.

Second Tier Member Michael Zarin appears to be a New York citizen. Martindale Hubbell reports that a Michael Zarin is a lawyer serving as President of Wellfleet Investment, LLC, located in Great Neck, New York. (Krause Aff., ¶ 2(d); Ex. 4) There is also a residential listing in the Nassau County, New York White Pages for Michael Zarin in Great Neck, New York. (Krause Aff., ¶ 2(e); Ex. 5.) Mr. Theise further stated on the record during the Section 341 examination that two of Power

---

[2] Because KBC is challenging this Court's subject matter jurisdiction, it may introduce extrinsic evidence in connection with the motion to dismiss. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Heinrich v. Sweet, 44 F. Supp. 2d 408, 412 (D. Mass. 1999); Fitzpatrick v. U.S., 726 F. Supp. 975, 978 (D. Del. 1989).

Development LLC's members are Zarin Family Trusts. (Krause Aff., ¶ 2(c); Ex. 3, at pp. 11-12.) To the extent that Michael Zarin is a New York citizen and is the Trustee of the Zarin Family Trusts, the Zarin Family Trusts would also be citizens of New York for purposes of diversity jurisdiction.[3]

Second Tier Members Thomas Atkins and the DeTore Family Trust appear to be Massachusetts citizens. Martindale-Hubbell reports that a Thomas Atkins is a lawyer (not admitted in Massachusetts) with an address in Lincoln, Massachusetts. (Krause Aff., ¶ 2(h); Ex. 8.) There is also a residential listing in the West Suburban Boston Area White Pages for a Thomas Atkins. (Krause Aff., ¶ 2(i); Ex. 9.) Plaintiff's counsel in the failed bankruptcy proceeding -- Mr. Theise -- further stated in a brief filed in that bankruptcy proceeding that a partner at the Boston law firm of Rubin & Rudman LLP was the Co-Trustee of a Family Trust. (Krause Aff., ¶ 2(k); Ex. 11.)

B.     The Defendants and Their Members

Significant to this motion, two of the defendants are also New York and Massachusetts citizens for purposes of diversity jurisdiction. Teachers, one of the Lender Defendants, is a New York citizen because it is a New York corporation with its principal place of business in New York. (Compl., ¶ 7; Affidavit of Livia L. Maghiar ("Maghiar Aff."), ¶ 2 and Ex. A.) Defendant MH LLC is both a New York and Massachusetts citizen. One of Defendant MH LLC's First Tier Members is CTG&P, LLC ("CTG&P").[4]

---

[3] See Bay Networks, Inc. v. Rouzbeh Yassini-Ford, 1999 WL 172809, at *2 (D. Mass. March 25, 1999) ("When a genuine trustee sues on behalf of persons whose interests he represents, only the trustee's citizenship is taken into account in determining whether diversity exists.").

[4] Maghiar Aff., ¶ 3(a); Ex. B at p. II-1.

CTG&P's sole member is Teachers. (Maghiar Aff., ¶ 3(b); Ex. C at p. 5.) Second Tier

Member Teachers is a New York corporation with its principal place of business in New

York. ( Maghiar Aff., ¶ 2 and Ex. A; Compl. ¶ 7.) Another one of Defendant MH LLC's

First Tier Members is CPV Milford Management, LLC ("CPV").[5] (Affidavit of Susan

Silver ("Silver Aff."), ¶ 11(a); Ex. A at p. II-1.) CPV's sole member is CPV Milford

E&L, LLC. ( Affidavit of Gary Lambert ("Lambert Aff."), ¶ 3.) One of Second Tier

Member CPV Milford E&L, LLC's members is Gary Lambert. (Lambert Affidavit, ¶ 4.)

Third Tier Member Gary Lambert is a Massachusetts citizen. ( Lambert Aff., ¶ 6.)

## II.    Milford Power Company LLC and Its Members.

Prior to its bankruptcy filing, Plaintiff was one of the members of MPC. (Compl.,

¶ 1.) MPC is a Delaware limited liability company that was established to build and

operate a power generation facility in Milford, Connecticut. (Compl., ¶ ¶ 13, 15.)

Originally, MPC's other members were El Paso Milford Power I Company, LLC and El

Paso Merchant Energy North America Company (collectively, "El Paso"). (Compl., ¶

13.) In 1999, El Paso and Plaintiff (in their capacity as members of MPC) entered into a

Limited Liability Agreement (referred to by Plaintiff in its Complaint as the "Project

Company Agreement"). (Compl., ¶ 17.)[6]

## III.    Credit Agreement and Default.

---

[5] CPV is Defendant MH LLC's Class B and managing member. (Silver Aff., ¶ 11(a); Ex. A at p. II-1.)

[6] A copy of the Project Company Agreement is attached as Exhibit B to the Silver Affidavit. The Project Company Agreement contains Delaware choice of law and venue provisions. (Silver Aff., Ex. B at p. 37.)

On March 25, 1999, Lender Defendants entered into a Credit Agreement with MPC. (Silver Aff., ¶ 11(c); Ex. C.) Plaintiff is not a party to the Credit Agreement. The Credit Agreement contains a New York choice of law provision and all parties submitted to the jurisdiction of New York courts in connection with claims pertaining to the Credit Agreement. (Silver Aff., ¶ 11(c); Ex. C, at p. 180 § 11.07.) As security for the Credit Agreement, MPC's members -- El Paso and Plaintiff -- pledged their respective membership interests in MPC to the Lender Defendants pursuant to a Pledge Agreement ("Pledge Agreement"). (Compl., ¶ 16; Silver Aff., ¶ 11(d); Ex. D, at pp. 3-4 § 2.)[7]

After the Lender Defendants sent notices of default to MPC in 2003, El Paso transferred to MH LLC its 95% membership interest in MPC. (Compl., ¶¶ 19, 29.) Plaintiff consented to the transfer of El Paso's membership interest in MPC. (Compl., ¶ 29.)

## THIS COURT LACKS SUBJECT MATTER JURISDICTION

I. **A Limited Liability Company's Citizenship Must Be Determined Through a Multi-Tiered Analysis that Considers the Citizenship of Its First Tier, Second Tier and Third Tier Members.**

For a federal district court to possess subject matter jurisdiction pursuant to 28 U.S.C. § 1332, no plaintiff can be a citizen of any state in which any defendant also is a citizen. 28 U.S.C. § 1332; Bank One, Texas v. Montel, 964 F.2d 48, 49 (1st Cir. 1992). For purposes of diversity jurisdiction, a limited liability company is a citizen of every state in which any of its members is a citizen. JMTR Enterprises, LLC v. Duchin, 42 F. Supp. 2d 87, 94 (D. Mass. 1999) (limited liability companies "are taken to be citizens of

---

[7] The Pledge Agreement contains New York choice of law and venue provisions, and the parties submitted to jurisdiction in New York. (Silver Aff., ¶ 11(d); Ex. D at pp. 27-29.)

the state or states of which their members are citizens."). See also Ketterson v. Wolf, 2001 WL 940909, at *3 (D. Del. Aug. 14, 2001) ("[A] limited liability company is a citizen of the states of which its individual members are citizens."); U.S.A. Seafood, L.L.C. v. Koo, 1998 WL 765160, at *1 (N.D.N.Y. Oct. 30, 1998). See generally Tilzer v. Davis, Bethune & Jones LLC, 2004 WL 825289, at *1 (D. Kan. April 15, 2004) ("Indeed, every Circuit Court of Appeals that has addressed this issue [Second, Sixth, Seventh and Eighth] has concluded that a limited liability company is a citizen of every state of which any member is a citizen."); VMD 0320 ALI-ABA 1, *18 (March 20, 2003) ("There is a growing body of case law (two circuit courts of appeals decisions and over 30 district court decisions) adhering to the rule that the citizenship of a LLC is determined by the citizenship of each of its members for purposes of diversity jurisdiction."); 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.57(8) (3d ed. 2003) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members.").

Attributing the citizenship of limited liability company's members to the limited liability company is grounded in the holding by the United States Supreme Court in Carden v. Arkoma Associates, 494 U.S. 185 (1990). In Carden, the Court was confronted with the question of how to determine the citizenship of a limited partnership. The Court noted that in the absence of specific legislation to the contrary, an artificial entity is a citizen of every state in which its members are located. Id. at 195. Accordingly, the Court held that a limited partnership was a citizen of every state in which its general or limited partners were citizens. Courts are in agreement that Carden directly controls the question of how to determine the citizenship of a limited liability company. See

Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998) ("Given the resemblance between an LLC and a limited partnership, and what seems to have crystalized as a principle that members of associations are citizens for diversity purposes unless Congress provides otherwise, we conclude that the citizenship of an LLC for purposes of the diversity jurisdiction is a citizenship of its members.") See also JBG/JER Shady Grove, LLC v. Eastman Kodak Co., 127 F. Supp. 2d 700, 701 (D. Md. 2001) (treating an LLC as a partnership for diversity purposes); JMTR, 42 F. Supp. 2d at 94 ("as . . . noted in Cosgrove, a limited liability company 'is like a limited partnership'").

When a Plaintiff and/or Defendant limited liability company has a First Tier Member which is itself a limited liability company, the Plaintiff and/or Defendant limited liability company is a citizen of any state in which the members of the Second Tier Members are citizens. Similarly, if the Second Tier Member is a limited liability company or limited partnership, the Plaintiff and/or Defendant limited liability company is a citizen of any state in which the Third Tier Members are citizens. Carden and JMTR respectively hold that any limited partnerships or limited liability companies (and not just limited partnerships and limited liability companies that are named parties to a lawsuit) are citizens of any state in which their limited partners or members are citizens. See 13 No. 2 Fed. Litigator 40, 41 ("It is difficult to avoid the conclusion that Carden does not require the citizenship of all members of a limited partnership, whether single-tier, double-tier or multi-tier, to be considered in determining whether citizenship is complete."). There certainly is no precedent for employing a different standard to determine the citizenship of a Plaintiff and/or Defendant limited liability company and a First or Second Tier Member which is a limited liability company. Indeed, failing to

attribute the citizenship of Second Tier Members to the Plaintiff and/or Defendant limited liability company would make it impossible to determine the citizenship of a Plaintiff and/or Defendant limited liability company because the court would be unable to determine the citizenship of the First Tier Members.

Following the clear holding in Carden, courts unanimously apply a multi-tier analysis to determine the citizenship of multi-tiered limited liability partnerships, and attribute the citizenship of Second and Third Tier members to the limited liability company. See Cerberus Partners, L.P. v. Gadsby Hannah, 976 F. Supp. 119, 123 (D.R.I. 1997). See also Watkins v. Terminix Int'l Co. L.P., 976 F. Supp. 1397, 1398 (D. Kan. 1997) ("Under Carden, the Court must look to the citizenship of all partners, including partners in a limited partnership which is itself a limited partner of the litigant."); Richardson v. Edward D. Jones & Co., 744 F. Supp. 1023, 1025 (D. Colo. 1990). See generally 13 No. 2 Fed. Litigator 40, 41.

Predictably, the few courts which have addressed the issue of how to determine the citizenship of a multi-tiered limited liability company have held that a limited liability company is a citizen of any state in which its multi-tiered members are citizens. See, e.g., Mutual Assignment and Indemnification Co. v. Lind-Waldock & Co., LLC, 364 F.3d 858, 861 (7th Cir. 2004) ("Lind-Waldcock is a limited liability company, which means that it is a citizen of every state of which any member is a citizen; this may need to be traced through multiple levels if any of its members is itself a partnership or LLC."); Boyd Machine & Repair Co., Inv. v. Freedman, 2003 WL 21919214, at *1 fn. 2 (N.D. Ind. Mar. 7, 2003) ("[T]he non-corporate parties are admonished that their citizenship must be 'traced through however many layers of partners and members [and trustees]

there may be.'") (quoting <u>Meyerson v. Showboat Marina Casino Partnership</u>, 312 F.3d

318, 320 (7th Cir. 2002).

**II.     Plaintiff Is Required to Plead the Citizenship of Its First, Second and Third Tier Members as a Prerequisite to Establishing Diversity Jurisdiction.**

When a plaintiff alleges that a court possesses subject matter jurisdiction pursuant

to 28 U.S.C. § 1332, and one or more of the parties is a limited liability company or a

limited partnership, the plaintiff must allege the citizenship of each limited partner or

member.  <u>See</u>, <u>e.g.</u>, <u>London Clubs Int'l, P.L.C. v. Sommer</u>, 2001 WL 1175105, at *1

(S.D.N.Y. Oct. 4, 2001) (dismissing plaintiff's complaint for lack of a subject matter

jurisdiction because the action was filed a second time "with defective jurisdictional

allegations"); <u>Barnes v. Farmland National Beef Packing Company, L.P.</u>, 169 F. Supp. 2d

1235, 1237 (D. Kan 2001) (granting motion to dismiss for lack of subject matter

jurisdiction and noting "[t]he plaintiff's complaint fails to allege whether there are any

partners, general or limited, whose Missouri's citizenship would destroy diversity

jurisdiction"); <u>Reed Elsevier, Inc. v. The Credit Index L.L.C.</u>, 2001 WL 1478683, at *2

(S.D. Ohio Sept. 24, 2001) (dismissing complaint when plaintiff did not identify

citizenship of members of limited liability company defendants, but permitting plaintiff

thirty days to refile the complaint to include proper allegations of citizenship).

**III.    Because the Plaintiff Has Failed to Plead the Citizenship of Its Members and Because There Is an Overlap in the Citizenship of the Plaintiff and Defendant Based on the Multi-tiered Diversity Analysis, the Motion to Dismiss for Lack of Subject Matter Jurisdiction Should Be Granted.**

KBC's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction

should be granted for two separate reasons.  <u>First</u>, Plaintiff has not properly alleged the

citizenship of the members of the parties that are limited liability companies.

Specifically, Plaintiff pleads that it is a limited liability company organized under the laws of the Commonwealth of Massachusetts, but it does not identify the citizenship of any of its members. Plaintiff's failure to identify the citizenship of its own members (which it obviously knows) is grounds in and of itself to dismiss the case for lack of subject matter jurisdiction. Even the failure to plead the citizenship of the members of Defendant MH LLC is grounds for dismissal. See, e.g., London Club Int'l v. Sommer, 2001 WL 1175105 * 1 (S.D.N.Y. Oct. 4, 2001) (dismissing plaintiff's complaint when it fails to identify citizenship of members of defendant limited liability company).

Second, extrinsic evidence clearly establishes that there is no diversity jurisdiction because Plaintiff is a citizen of New York and Massachusetts and two of the Defendants are also citizens of Massachusetts and New York. The Section 341 Examination establishes that Plaintiff has two First Tier Members -- Michael Armitage (owning a 1% interest) and Power Development LLC (owning a 99% interest). (Krause Aff., ¶ 2(c); Ex. 3 at p. 6.) Among Power Development LLC's members are Michael Zarin, Thomas Atkins and the DeTore Family Trust. (Id. at pp. 10-11.)[8] Second Tier Member Zarin was a citizen of New York when the Complaint was filed: he is listed in Martindale Hubbell as a lawyer who is President of a business located in Great Neck, New York and he is listed in the Nassau County, New York White Pages as having a residence in Great Neck, New York. (Krause Aff., ¶ ¶ 2(d),(e); Exs. 4,5.) Second Tier Member Atkins was a citizen of Massachusetts when the Complaint was filed: he is listed in Martindale-

---

[8] Bank of New England, N.A. v. Triteck Communications, Inc., 143 F.R.D. 13, 16 (D. Mass. 1992) (citizenship for diversity purposes is determined at the time the complaint is filed).

Hubbell as a lawyer with an address in Lincoln, Massachusetts and he is listed in the

Concord Area White Pages as having a residence in Lincoln, Massachusetts. (Krause

Aff., ¶¶ 2(h), (k); Exs. 8,9.) Because Plaintiff has Second Tier Members who are citizens

of New York and Massachusetts, Plaintiff is a citizen of both New York and

Massachusetts for purposes of diversity jurisdiction. See, e.g., JMTR, 42 F. Supp. 2d at

93 (a limited liability company is a citizen of every state in which its members are

located). See also Mutual Assignment, 364 F.3d at 861 (multi-tiered analysis applies to

limited liability companies); Cerberus Partners, 976 F. Supp. at 123 (courts apply a multi-

tier analysis to determine citizenship of limited partnerships).[9]

      Two of the defendants are also New York citizens. Defendant Teachers is a New

York citizen because it is a New York corporation. (Compl, ¶ 7; Maghiar Aff., ¶ 2; Ex.

A.) See also Media Duplication Services Ltd. v. HDG Software, Inc., 928 F.2d 1228,

1236 (1st Cir. 1991) (noting that a corporation for diversity purposes is a citizen of its

principal place of business and of the state in which it is incorporated). Defendant MH

LLC is also a New York citizen because one of its members is CTG&P. (See Maghiar

Aff., ¶ 3(a); Ex B at p. II-1 --establishing that CTG&P is a member of MH LLC and that

CTG&P's sole member is Teachers). Second Tier Member Teachers is a citizen of New

York because it is a New York corporation with its principal place of business in New

York. (Compl., ¶ 7; Maghiar Aff., ¶ 2; Ex. A.) Defendant MH LLC is also a citizen of

---

[9] In addition, and as noted above, there are apparently other members -- Zarin and
DeTore Family Trust -- of Power Development LLC which would appear to be citizens
of New York and Massachusetts for determining whether diversity jurisdiction exists in
this case. (See pp. 6-7.). Upon information and belief, Michael Armitage, a member of
Plaintiff, is also a citizen of Massachusetts.

Massachusetts because First Tier Member CPV has as its sole member CPV Milford

E&L, LLC. (Lambert Aff., ¶ 3.) One of Second Tier Member Milford E&L, LLC's

members is Gary Lambert. (Lambert Aff., ¶ 4.) Third Tier Member Gary Lambert is a

Massachusetts citizen. (Lambert Aff., ¶ 6.)

## IV.     There Is No Federal Claim Jurisdiction.

Plaintiff does not even allege in its Rule 8(a) Statement that federal claim

jurisdiction exists in connection with Count VII, and it clearly does not. Indeed, as

discussed below, this Court has no jurisdiction to hear Count VII and it is further

inappropriate to assert the claim because an equitable subordination claim cannot be

brought outside of the bankruptcy context. [10]

First, federal district courts either have, or do not have, subject matter jurisdiction

over bankruptcy issues pursuant to the provisions of 28 U.S.C. § 1334. See In re

Middlesex Power Equipment & Marine, Inc., 292 F.3d 61, 67 (1st Cir. 2002) ("The

federal courts' jurisdiction over bankruptcy cases is governed by 28 U.S.C. § 1334.").

Courts have held that they have no subject matter jurisdiction over bankruptcy matters

when no bankruptcy case is pending. See In re Morgan, 182 B.R. 4 (Bankr. S.D.N.Y.

1995) ("There is not now, nor has there been, a proper bankruptcy case by this debtor

before this Court. Without a case, there can be no jurisdiction. 28 U.S.C. § 1334

(2000)."). See also Sterling Consulting Corp. v. United States, 245 F.3d 1161, 1166

---

[10] It appears likely that Plaintiff inadvertently included Count VII in its filing in this
Action. Plaintiff had previously filed an adversary proceeding in the United States
Bankruptcy Court for the District of Massachusetts containing virtually identical claims
as are plead in this case. It appears that Plaintiff may have failed to omit this claim when
refiling in federal district court.

(10th Cir. 2001) ("[T]he district court does not have jurisdiction to provide the requested relief pursuant to 1334(b) because the action neither arose in, nor was related to, a bankruptcy action in the district court."); <u>Ingrassia Trusts v. Edwards</u>, 1994 WL 90092 (N.D. Cal. March 3, 1994). Regardless of the source of the court's jurisdiction, the district court has no jurisdiction to afford relief provided by the bankruptcy laws in the absence of a bankruptcy case, or at least in the absence of continuing jurisdiction following the issuance of the conformation order.[11]  There is no bankruptcy estate here. Plaintiff is not a debtor under Title 11.

Second, regardless of whether a district court can ever possess subject matter jurisdiction over a bankruptcy matter in the absence of a bankruptcy case, it clearly cannot entertain a claim under Section 510(c) in the absence of a bankruptcy case and federal claim jurisdiction therefore does not attach. Federal question jurisdiction must be based on a claim which is "substantial." <u>Molina-Crespo v. Califano</u>, 583 F.2d 572, 573 (1st Cir. 1978). A claim is insubstantial, <i>inter alia</i>, when its defects are incurable, that is, when any defect cannot be remedied by an amendment of the pleading. <u>Hess v. Hess</u>, 950 F. Supp. 226, 230 (E.D. Tenn. 1996) ("Summary dismissal on the latter ground [12(b)(1)] is appropriate where, as here, the absence of jurisdiction of the subject matter appears in the face of the complaint, and the jurisdictional defect is obviously not

---

[11] A claim under 11 U.S.C. § 510(c) necessarily is a claim arising under Title 11. Arising under jurisdiction is identified in Section 1334(b). Case law establishes that bankruptcy matters specified in Section 1334(b) presuppose the existence of a bankruptcy estate. <u>See</u> <u>In re Claore Express Co., Inc.</u>, 288 B.R. 167, 169 (D. Mass. 2002) ("As the Supreme Court and numerous circuits have made it abundantly clear, 28 U.S.C. § 1334(b) provides comprehensive jurisdiction to the bankruptcy courts 'so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'") (quotations omitted).

curable."), aff'd, 103 F.3d 129 (6th Cir. 1996). See generally Wright & Miller, Federal

Practice and Procedure, § 1350 at pp. 226-228 (West 1990) ("The burden of proof on a

Rule 12(b)(1) motion is on the party asserting jurisdiction. If jurisdiction is based on a

federal question, the pleader must show that he has alleged a claim under federal law and

that the claim is not frivilous.").

Count VII is clearly an insubstantial and frivolous claim. A claim under 11

U.S.C. § 510(c) can only be brought in a bankruptcy case. See 11 U.S.C. § 510(c) (". . .

the Court may -- (1) under principles of equitable subordination, subordinate for purposes

of distribution all or part of an allowed claim . . . ."). See HBE Leasing Corp. v. Frank,

48 F.3d 623, 634 (2d Cir. 1995) ("Equitable subordination is distinctly a power of federal

bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those

of others.").[12] Not only is this Action not a bankruptcy case, but Plaintiff's bankruptcy

case was dismissed on April 26, 2004, four days before it filed this Action on April 30,

2004. Plaintiff never appealed that dismissal. (Krause Aff., ¶ 2(a).) Moreover, because

a claim under 11 U.S.C. § 510(c) can only be brought in a bankruptcy case, no

---

[12] In re Poughkeepsie Hotel Assoc. Joint Venture, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) ("The notion of equitable subordination, as embodied in Code § 510(c), is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting."); FDIC v. Berry, 1993 WL 277759, at *3 (D. Me. July 12, 1993) ("As far as this Court has been able to determine, the Court of Appeals for the First Circuit has never applied the doctrine of equitable subordination outside the bankruptcy context. The only circumstance of which this Court is aware in which a federal court has applied equitable subordination outside the bankruptcy context is in the exercise of its admiralty jurisdiction, where doing so would serve the policy goals of admiralty law."). See also 80 Nassau Assoc. v. Crossland Fed. Savings Bank (In re 80 Nassau Assoc.), 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) ("The power to subordinate a claim derives from the Bankruptcy Court's general equitable power to adjust equities among creditors in relation to liquidation.").

amendment to Count VII can cure the defect inherent in Count VII.  Accordingly, federal claim jurisdiction cannot be predicated on Count VII.

Indeed, regardless of whether Count VII is frivolous, this Court does not have subject matter jurisdiction because the claim must be brought in Bankruptcy Court.  See New Jersey Steel Corp. v. Bank of New York, 223 B.R. 406, 414 (Bankr. S.D.N.Y. 1998) ("This Court lacks jurisdiction to administer any such claim.  The doctrine of equitable subordination is applicable and limited to a bankruptcy setting.").

Even if the Court determines that it has threshold jurisdiction over Count VII, the Court should refuse to exercise pendant jurisdiction over the remaining state law claims. 28 U.S.C. § 1367 permits, but does not require, a court to exercise supplemental jurisdiction over state law claims.  Alger v. Ganick, O'Brien & Sarin, 35 F. Supp. 2d 148 (D. Mass. 1999).  Supplemental jurisdiction should be declined in a case where state law claims substantially predominate over the federal law claims.  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (noting that a federal court should not exercise pendant jurisdiction over state law claims "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of issues raised, or the comprehensiveness of the remedy sought . . . .").  Courts have consistently held that state law claims predominate when (1) they are more numerous than the federal law claims, (2) they seek remedies not sought by federal law claims, and (3) they require elements of proof substantially in excess of federal law claims.  See, e.g., Occunomix Int'l LLC v. North Ocean Ventures, Inc., 2003 WL 22240660, at *1 (S.D.N.Y. Sept. 30, 2003) (declining supplemental jurisdiction where 12 of 13 claims asserted were state law claims and sole federal claim was only tangentially related); Green v. Zendrian, 916 F.Supp.

493, 498 (D. Md. 1996) (declining supplemental jurisdiction where state law claims involved elements of proof beyond scope of federal claims and would require jury to make complex factual determinations unnecessary for resolution of federal claims); Town of Jeffrie v. Town of Fitzwilliam, 846 F. Supp. 3, 5 (D.N.H. 1994) (declining supplemental jurisdiction when state law claims substantially outnumbered federal law claims, sought more comprehensive remedies, and involved a jury trial rather than a bench trial); Brayall v. Dart Industries, Inc., 1988 WL 72766, at *3-4 (D. Mass. Feb. 3, 1988) (remanding state law claims and refusing to exercise supplemental jurisdiction when there were seven state law claims and one federal law claim, the state law claims predominated with regard to remedies plaintiffs sought, including requested preliminary injunctive relief which was only based on state law claims, and concluding that "this is a classic state law case to which a federal claim has been appended.").

Here, Count VII is a non-jury declaratory judgment claim. Many of the remaining seven state law claims seek monetary damages and preliminary injunctive relief -- relief not sought in Count VII. Additionally, the state law claims involve issues of Delaware law (the breach of contract and breach of fiduciary duty claims) or New York law (Count IV and Count VIII). Significantly, there are already lawsuits pending in Delaware and New York in which Plaintiff's claims would be more logically presented and Plaintiff has consented to the jurisdiction and venue of those courts. (Krause Aff., ¶ 2(j); Ex. 10; Silver Aff., ¶ ¶ 11(c); Ex. C, at p. 180 § 11.07; 11(d); Ex. D, at pp. 304 § 2.)

Lastly, if the Court does not resolve this case on Rule 12(b)(1) grounds, the Court should refuse to exercise supplemental jurisdiction after granting the Rule 12(b)(6) motion pertaining to Count VII. Gibbs, 383 U.S. at 726 ("[I]f the federal claims are

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Camelio v. American Fed'n., 137 F.3d 666, 672 (1st Cir. 1998) ("The balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").

### THIS COURT LACKS PERSONAL JURISDICTION OVER KBC

**I.      Controlling Legal Principles.**

"Determining personal jurisdiction is a two-step process. First, jurisdiction must be found to exist under the Massachusetts long arm statute. Second, the hurdle of constitutional due process requirements must be met. Champion Exposition Services, Inc. v. Hi-Tech Electronic, LLC, 273 F.Supp. 2d 172, 175 (D. Mass. 2003).[13]  When a personal jurisdiction is challenged and no evidentiary hearing is held, the burden falls on the plaintiff, through affidavits and other competent evidence, to make a *prima facie* case for the existence of personal jurisdiction. United States of America v. Swiss American Bank, Ltd., 274 F.3d 610, 618-619 (1st Cir. 2001). Plaintiff simply cannot meet its burden.

**II.      There Is No Long-Arm Jurisdiction.**

The only section of the Massachusetts Long-Arm Statute which is even remotely applicable to determining whether there is personal jurisdiction over KBC is Section 3(d). M.G.L. c. 223A, §3(d) (2004). Section 3(d) provides that

---

[13] The First Circuit has suggested that, at least in some circumstances, a court may skip analyzing the claim under the Massachusetts long-arm statute because the scope of the Massachusetts long-arm is co-extensive with federal due process requirements. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A. 290 F.3d 42, 52 (1st Cir. 2002).

> A court may exercise jurisdiction over a person, who acts
> directly or by an agent, as to a cause of action in law or
> equity arising from the person's . . . (d) causing tortious
> injury in this commonwealth . . . if he regularly does or
> solicits business, or engages in any other persistent course
> of conduct, or derives substantial revenue from goods used
> or consumed or services rendered, in this commonwealth.

M.G.L. c. 223A, §3(d) (2004).

Section 3(d), however, clearly does not confer jurisdiction here.  Tortious injury

for purposes of Section 3(d) of the Long-Arm Statute occurs where the alleged tortious

conduct takes place.  See United States v. Swiss American Bank, Ltd., 191 F.3d 30, 37

(1st Cir. 1999) ("A legal injury occasioned by the tort of conversion is deemed to occur

where the actual conversion takes place."); see generally Boyd v. Arizona State Board of

Dental Examiners, 1989 WL 37309, at *8 (D. Mass. April 4, 1989) ("Courts in numerous

other jurisdictions with similar long-arm statutes hold that the situs of a tort injury is the

place where the critical events associated with the dispute took place.")  The First Circuit

has expressly rejected the view that the injury takes place where "the plaintiff feels the

effect of the tortious injury."  United States v. Swiss American Bank, Ltd., 191 F.3d 30,

38 (1st Cir. 1999).

Plaintiff has not alleged that there was any tortious injury occurring in

Massachusetts.  Any acts alleged by KBC necessarily occurred in New York.  Moreover,

even if the place where Plaintiff felt the effects of the alleged tortious injury mattered, the

alleged injury was not felt in Massachusetts.  In its bankruptcy filing, Plaintiff identifies

Texas as its usual place of business, and where its managing member is located.  (See Krause Aff., ¶ 2(f); Ex. 6.)[14]

**III.    The Exercise of Personal Jurisdiction Is Precluded by the Due Process Clause.**

"The due process clause of the United States Constitution requires certain 'minimum contacts' between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with 'traditional notions of fair play and substantial justice.'" Merced v. JLG Industries, Inc., 170 F. Supp. 2d 65, 73 (D. Mass. 2001).  These due process requirements can be met if the court possesses either general or specific jurisdiction over a defendant.  Id.

Specific jurisdiction exists only if a plaintiff's claims arise out of a defendant's contacts within the forum state. United States of America v. Swiss American Bank, 274 F.3d 610, 618 (1st Cir. 2001).  Plaintiff has not alleged that KBC committed any alleged tort (Counts I, II, IV, VI, VII) in Massachusetts, and any alleged acts by KBC necessarily occurred in New York.

The breach of contract claims (Counts III and V) do not arise out of contacts with Massachusetts.  The contract claims pertain to the Project Company Agreement.  KBC is not even a party to the Project Company Agreement.  There is no allegation that any alleged breach took place in Massachusetts.  Moreover, the Project Company Agreement

---

[14] For the reasons noted in Section III below, Plaintiff also cannot meet its burden of showing that KBC "regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in this commonwealth." M.G.L. c. 223A § 3(d) (2004).

itself contains a Delaware choice of law and venue provision. (See Project Company Agreement, Silver Aff., ¶ 11(b), Ex. B at p. 37.)

General jurisdiction exists only when the defendant has engaged in systematic and continuous activity in the state. Daynard v. Ness, 290 F.3d 42, 51 (1st Cir. 2002). KBC has no employees in Massachusetts, and has no offices or property in Massachusetts. Less than 3% of the outstanding loans in which KBC's United States operations has acted as Agent, Co-Agent or Participant have been made to entities located in Massachusetts. (Silver Aff., ¶ 8.) Moreover, those loans were not closed in Massachusetts and were not governed by Massachusetts law. Id. In cases in which foreign banks have had far more contacts, courts have found that there is no general jurisdiction. See, e.g., United States of America v. Swiss American Bank, 274 F.3d 610, 619-620 (1st Cir. 2001). See also Trans-Continental Investment Corp. v. Bank of the Commonwealth, 500 F. Supp. 565, 568 (C.D. Cal. 1980) (no general jurisdiction when court found that loans to borrowers in the forum state comprised less than 4% of the bank's commercial loan portfolio); Stallworth v. First Nat. Bank of Mobil, 592 F. Supp. 1250, 1251 (M.D. La. 1984) (same).

## PLAINTIFF'S CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST LENDER DEFENDANTS

**I.    Counts I, II and VI Fail to State Fiduciary Duty Claims Against Lender Defendants.**

In Counts I, II and VI, Plaintiff has asserted breach of fiduciary duty claims against Lender Defendants. Plaintiff alleges that Lender Defendants owed it a fiduciary duty because (1) Plaintiff is a 5% member in MPC, and (2) Lender Defendants allegedly

own and control MH LLC -- the other member in Plaintiff.[15]  Counts I, II and VI
presuppose that Lender Defendants owe Plaintiff a fiduciary duty simply because they are
alleged members of MH LLC.[16]

Members of a limited liability company do not, as a matter of law, owe a
fiduciary duty to a plaintiff even if (which is not the case here) the limited liability
company of which they are members owes a fiduciary duty to plaintiff.  The liability of
MH LLC's members for acts taken by MH LLC is governed by Delaware law.  See
Glydon v. Conway, 58 Mass. App. Ct. at *3 (2003) ("Since GVO is a Delaware limited
liability company, the Delaware Limited Liability Company Act (Act) Del. Code Ann.
Tit. 6, ¶¶ 18-01 et seq., governs the liability of its members.").  Section 18-303 of the
Delaware Limited Liability Company Act provides that

> [T]he debts, obligations and liabilities of a limited
> liability company, whether arising in contract, tort
> or otherwise, shall be solely the debts, obligations
> and liabilities of the limited liability company, and
> no member or manager of a limited liability
> company shall be obligated personally for any such
> debt, obligation or liability of a limited liability
> company solely by reason of being a member or
> acting as a manager of the limited liability
> company.

---

[15] See Compl., ¶ 46 ("The lender defendants, which combine as 95% shareholders of
MPC through the vehicle of the holding company, MH LLC, owed Plaintiff a duty of
loyalty and good faith and must treat Plaintiff fairly and without oppression."); Compl., ¶
51 ("The lender defendants, which combine as 95% shareholders in MPC through the
vehicle of the holding company, MH LLC, control the management of Plaintiff through
de facto control of CPV Milford LLC."); Compl., ¶ 70 ("The lender defendants hold the
majority of shares in MPC, a small, closely-held limited liability corporation.").

[16] In fact, Lender Defendants are not members of MH LLC (See Silver Aff., ¶ 11(a);
Ex. A at II-1.).  For purpose of the Rule 12(b)(6) analysis only, KBC will assert as true
the allegation that the Lender Defendants are MH LLC's members.

Del. C. Ann. Tit., 6, § 18-303.

In nearly identical circumstances to the facts pled in this case, the Massachusetts

Appeals Court has affirmed the Superior Court's dismissal of a breach of fiduciary duty

claim. <u>See</u> <u>Glydon</u>, 58 Mass. App. Ct. at *2 (2003). In <u>Glydon</u>, plaintiff sued Earth and

Ocean Sports, Inc., SSPR, Inc. -- a fellow shareholder of Earth and Ocean Sports, Inc. --

and GVO (SSPR, Inc.'s General Partner) for breach of fiduciary duty. <u>Id.</u> at *1. Plaintiff

also sued Jerry Granthem ("Granthem") and Eyk Vanotterloo ("Vanotterloo") -- the

members of GVO -- claiming that they were liable for GVO's breaches of fiduciary duty.

The Superior Court granted Granthem's and Vanotterloo's Rule 12(b)(6) motion to

dismiss.

On appeal, the Massachusetts Appeals Court held that "the claims against

Granthem and Vanotterloo in their capacity as members of GVO were also properly

dismissed." Citing Delaware Code Title 6, Section 18-303(a), the Appeals Court held

that "[a]lthough GVO itself, as a general partner of the majority shareholder in EOS may

be liable to the Glydons, Granthem and Vanotterloo are shielded from liability as its

members." <u>Id.</u> at *3.

The allegations in <u>Glydon</u> are indistinguishable from the assertions set forth in

Counts I, II and VI. <u>Glydon</u> clearly establishes that a claim for breach of fiduciary duty

brought against a member of a limited liability company fails to state a claim upon which

relief may be granted if it seeks to hold members of the limited liability company

responsible for the breaches of fiduciary duty of the limited liability company, or acts

taken in connection with managing the limited liability company.

Lastly, even if Lender Defendants owed Plaintiff a fiduciary duty, Plaintiff does not allege any specific conduct of either MH LLC or Lender Defendants that constituted a breach of fiduciary duty.  Such allegations are required by both the Delaware Business Judgment Rule and the Project Company Agreement itself.

## II.    The Breach of Contract Claims Fail to State a Claim Upon Which Relief May Be Granted Against KBC (Counts III and V).

In Count III, Plaintiff alleges that MH LLC and KBC have breached the Project Company Agreement between El Paso and Plaintiff.  Although Plaintiff claims that the Project Company Agreement was breached and that El Paso's membership interest is now held by MH LLC (Compl., ¶ 59), Plaintiff has not alleged that Lender Defendants are parties to the Project Company Agreement.

Lender Defendants cannot be liable, as a matter of law, for breach of the Project Company Agreement because Lender Defendants are not parties to the Project Company Agreement.  It is elementary that only a party to a contract can be liable for breach of that contract.[17]  See TruePosition v. Allen Telecom, Inc., 2003 WL 151227, at *2 fn. 2 (D. Del. Jan. 21, 2003) ("[A] non-party to a contract . . . can not breach the contract."); see also Blank v. Mounair, 658 N.Y.S. 2d 88, 88 (N.Y. App. Div. 1997) ("Similarly, the plaintiff's breach of contract claim was properly dismissed inasmuch as the defendant was not a party to the agreement in question.").  Because Lender Defendants are not alleged to be (and are not) parties to the Project Company Agreement, they cannot be

---

[17] Orell v. UMASS Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 67 (D. Mass. 2002) ("In order to state a claim for breach of contract, plaintiff must allege facts sufficient to show that an express or implied binding agreement existed.").

liable for breach of that agreement, as a matter of law.[18]  Even if KBC was a party to the

Project Company Agreement, Count III fails to allege a specific breach, and Count III

should be dismissed for the reasons set forth on in MH LLC's Memorandum of Law in

Support of its Motion to Dismiss.

In Count V, Plaintiff has sued KBC and the Lender Defendants for breach of the

implied covenant of good faith and fair dealing.  Lender Defendants cannot be liable, as a

matter of law, for breach of the implied covenant of good faith and fair dealing because

Lender Defendants are not parties to the Project Company Agreement or any other

relevant contract.[19]  Massachusetts, New York and Delaware courts have made it

abundantly clear that a plaintiff may not maintain an action for breach of the implied

covenant of good faith and fair dealing against a defendant not a party to the relevant

underlying contract.  See Orell, 203 F. Supp. 2d at 68 ("[A] claim for breach of the

covenant of good faith and fair dealing exists only where there is an enforceable contract

between the parties."); Swain v. State Farm Mut. Auto. Ins. Co., 2003 WL 22853415, at

*1 (Del. Super. May 29, 2003) ("[O]ne who is [not] a party to the contract . . . cannot

claim a duty of good faith and fair dealing arising out of that contract."); Four Winds of

Saratoga Inc. v. Blue Cross and Blue Shield of Central New York Inc., 660 N.Y.S. 2d

236, 237 (N.Y. App. Div. 1997) ("There being no contractual relationship, neither can

---

[18] Because the law in Delaware, New York and Massachusetts appear to be in accord with respect to the matters raised herein, KBC has cited to the law of each of their respective state as appropriate.

[19] Plaintiff does not even allege the contract which purportedly gives rise to the implied covenant of good faith and fair dealing claim.

there be any covenant of 'good faith and fair dealing' implied which itself is based on the existence of a legal contractual obligation.").

### III.    The Lender Liability Claim (Count IV) Fails to State A Claim Upon Which Relief May Be Granted Against Lender Defendants.

In Count IV, Plaintiff sues Lender Defendants for lender liability. Plaintiff does not allege that Lender Defendants interfered with any contract Plaintiff had with a third party. Plaintiff apparently contends that it has standing to assert a lender liability claim because it was a member of the borrower. However, courts have held that equity owners of a borrower do not have standing to assert a claim on behalf of the corporate entity. See Taggart & Taggart Seed, Inc. v. First Tennessee Bank Nat. Ass'n, 684 F. Supp. 230, 233-234 (E.D. Ark. 1988) (dismissing lender liability claims brought by shareholders of a borrower for lack of standing), aff'd, 881 F.2d 1080 (8th Cir. 1989); Nagle v. Commercial Credit Business Loans, Inc., 102 F.R.D. 27, 29 (E.D. Penn. 1983) (holding that shareholder of the borrower did not have standing to sue lender). Cf. Municipal Light Co. of Ashburnham v. Commonwealth, 608 N.E. 2d 743, 749 (Mass. App. Ct. 1993) (stockholders have no standing to sue for damage to the corporation); Attick v. Valeria Assoc., L.P., 835 F. Supp. 103, 110 (S.D.N.Y. 1992) (noting that a shareholder lacks standing to assert a claim if the harm was done to the corporation). To the extent that Plaintiff is seeking to bring a derivative claim on behalf of MPC, it has failed to make the other requisite allegations needed to withstand a motion to dismiss. In re Kaufman Mutual Fund Actions, 479 F.2d 257, 263-266 (1st Cir. 1973); Lewis v. Valley, 476 F.Supp. 62, 64 (S.D.N.Y. 1979). Moreover, Plaintiff has alleged that MPC was harmed, yet has failed to name MPC as a party to this Action. See Ross v. Bernhard, 396

U.S. 531, 538-39 (1970) (noting that in a derivative suit "[t]he corporation is a necessary party to the action; without it the case cannot proceed."); ZB Holdings, Inc. v. White, 144 F.R.D. 42, 44-46 (S.D.N.Y. 1992) ("[T]he well established rule [] requires joinder of the corporation on whose behalf a derivative suit is brought.").

Plaintiff has also failed to allege any of the elements of an intentional interference with contractual relationship claim. Under New York, Delaware and Massachusetts law, in order to state a claim for tortious interference with contractual relationships, plaintiff must plead (1) that Plaintiff had an existing contract in effect with some other person, (2) that the defendant had knowledge of that contract, (3) that the defendant (with an improper motive or using improper means) induced the other person to breach the contract, and, of course, (4) damages. See Weaver v. Town of Rush, 768 N.Y.S.2d 58, 62 (N.Y. App. Div. 2003); Mill-Bern Assoc., Inc. v. Dallas Semiconductor Corp., 2002 WL 1340853, at *5 (Mass. Super. June 13, 2002); Int'l Business Machines Corp. v. Comdisco, Inc., 1991 WL 269965, at *19 (Del. Super. Dec. 4, 1991). Plaintiff neither alleged that it was a party to any contract which is the subject matter of Count IV, nor alleged any of the other elements. Accordingly, Count IV must be dismissed, as a matter of law.

## IV. Count VII for Equitable Subordination Fails to State a Claim Upon Which Relief May Be Granted

In Count VII, Plaintiff pleads that "[t]he conduct of the Lender defendants requires that their claims and interests be equitably subordinated to those of the plaintiff PDC, pursuant to Title 11, U.S. Code, Section 510." (Compl., ¶ 76.) 11 U.S.C. § 510 provides in relevant part:

> (c) Notwithstanding subsections (a) and (b) of this section, after
> notice and a hearing, the court may -
>
>> (1) under principles of equitable subordination,
>> subordinate for purposes of distribution <u>all or part
>> of an allowed claim to all or part of another allowed
>> claim or all or part of an allowed interest to all or
>> part of another allowed interest</u>[.]

11 U.S.C. § 510(c) (emphasis added).

As noted at pages 16-17, equitable subordination under 11 U.S.C. § 510 can only

be brought in a bankruptcy action. Furthermore, even if a Section 510(c) claim could be

brought outside of bankruptcy, Section 510(c) does not permit debt to be subordinated to

equity, as Plaintiff seeks to do in Count VII. (Compl., ¶ 76.) Section 510(c) only permits

a court to subordinate claims to other claims or interests to other interests. <u>See</u>, <u>e.g.</u>,

<u>Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)</u>, 272 B.R. 74, 104 (Bankr.

S.D.N.Y. 2002) ("The express language of § 510(c) prohibits the subordination of a claim

to an interest."); <u>Acropolis Enterprises, Inc. v. C.R. Amusements, LLC (In re C.R.

Amusements, LLC)</u>, 259 B.R. 523, 529 (Bankr. D.R.I. 2001). Plaintiff clearly agreed

that any return it received from MPC would be subordinated to the repayment of amounts

owed by MPC to the Lender Defendants and Section 510(c) may not be used to upset this

arrangement. <u>See</u> <u>In re C.R. Amusements, LLC</u>, 259 B.R. at 529 (minority shareholders

with full knowledge of secured debt cannot equitably subordinate secured debt to their

equity interests; Section 510(c) simply does not permit it).

Finally, to establish grounds for equitable subordination under Section 510(c) of

the Bankruptcy Code, the party seeking to subordinate a claim must plead that: (i) the

claimant engaged in inequitable conduct; (ii) the misconduct resulted in injury to

creditors of the bankruptcy or conferred an unfair advantage on the claimant; and

(iii) equitable subordination of the claim is not inconsistent with the provisions of the

Bankruptcy Code.  See Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In

re 604 Columbus Realty Trust), 968 F.2d 1332, 1353 (1st Cir. 1992); In re Big Wheel

Holding Co., Inc., 214 B.R. 945, 951 (Bankr. D. Del. 1997).

## V.    The Accord and Satisfaction Claim Fails to State a Claim Upon Which Relief May Be Granted Against Lender Defendants.

In Count VIII, Plaintiff sued Lender Defendants for a claim denominated "Accord

and Satisfaction."  Plaintiff alleges that its obligations under the Pledge Agreement have

been satisfied as a result of a certain Restructuring Agreement between El Paso and the

Lender Defendants (Compl., ¶ 78), but it does not allege that it is a party to that

Restructuring Agreement.  Count VIII must be dismissed for two reasons.

First, accord and satisfaction is a defense; not a cognizable claim.  See Ford v.

Warner-Lambert Co., 1987 WL 9905, at *1 fn.1 (D. Mass. April 8, 1987) (dismissing

accord and satisfaction claim on motion for summary judgment and noting that accord

and satisfaction is an affirmative defense and not a cause of action.).  See also S. Leo

Harmony, Inc. v. Binks Mfg. Co., 597 F. Supp. 1014, 1028 (S.D.N.Y. 1984) (noting that

accord and satisfaction is a defense), aff'd, 762 F.2d 990 (2nd Cir. 1985); Shanghai

Power Co. v. Delaware Trust Co., 1983 WL 21394, at *11 (Del. Ch. Feb. 23, 1983)

(same).

Second, Plaintiff has failed to plead the elements of an accord and satisfaction.

One of the required elements of an accord and satisfaction under Massachusetts law is,

> that subsequent to the arising of that dispute the parties
> entered into an agreement under the terms of which the

> dispute is compromised by the payment by one party of a
> sum in excess of that which he admits he owes and the
> receipt by the other party of a sum less in amount than he
> claims is due him, all for the purpose of settling the dispute.

Rust Engineering Co. v. Lawrence Pumps, Inc., 401 F. Supp. 328, 333 (D. Mass. 1975).

Here, Plaintiff has failed to allege two fundamental requirements of accord and satisfaction. It has not alleged that Plaintiff and Lender Defendants entered into a compromise agreement. Nor has it alleged that it paid an amount in excess of which it claimed that it owed Lender Defendants -- Plaintiff has not even alleged that it has paid any amount to Lender Defendants. See, e.g., Cadle Co. v. Hayes, III, 116 F.3d 957, 962 (1st Cir. 1997) (summary judgment on accord and satisfaction when no evidence of subsequent mutual agreement); Premier Capital, Inc. v. Dolan, 1998 WL 1184186, at *2 (Mass. Super. Ct. Sept. 15, 1998) (dismissing on summary judgment accord and satisfaction defense), aff'd, 52 Mass. App. Ct. 1110 (2001).

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

WHEREFORE, KBC respectfully requests that its Rule 12(b)(1), 12(b)(2) and 12(b)(6) Motions to Dismiss be allowed and that the Court hold oral argument on the motions to dismiss.

KBC BANK N.V.

By its attorneys,

James L. Messenger (BBO #547236)
Andrew Troop (BBO #547179)
WEIL, GOTSHAL & MANGES LLP
100 Federal Street
Boston, Massachusetts 02110
Tel.: (617) 772-8300
Fax: (617) 773-8333

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail -hand on 6/22/04